**Appeal No. 24-1007**

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

►◄◄

_____

ADVANFORT COMPANY

*Plaintiff-Appellant,*

v.

ZAMIL OFFSHORE SERVICES COMPANY and SAUDI PORTS AUTHORITY.

*Defendants-Appellees.*

_____

On Appeal From The United States District Court
For The Eastern District of Virginia

## OPENING BRIEF OF ADVANFORT COMPANY

Clara Brillembourg
FOLEY HOAG LLP
1717 K Street N.W.
Washington, D.C. 20006
Tel. (202) 261-7334

Andrew B. Loewenstein
Roseanna K. Loring
Matthew F. Casassa
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel. (617) 832-1000

Peter A. Sullivan
FOLEY HOAG LLP
1301 Ave. of the Americas
New York, NY 10019
Tel. (212) 812-0310

Stephen Robin
FOLEY HOAG LLP
4643 S. Ulster Street
Denver, CO 80237
Tel. (720) 782-5084

*(signature blocks continue on the following page)*

Benjamin L. Hatch
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
101 West Main Street
Norfolk, VA 23510
Tel. (757) 640-3700

*Attorneys for Plaintiff-Appellant AdvanFort Company*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1007__     Caption: __AdvanFort Company v. Zamil Offshore Services Company, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__AdvanFort Company__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

i

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Peter A. Sullivan                          Date: 3/27/2024

Counsel for: AdvanFort Company

## TABLE OF CONTENTS

Introduction ................................................................. 1

Jurisdictional Statement ............................................. 3

Statement of Issues Presented .................................... 4

Statement of Case ....................................................... 5

    Parties. ..................................................................... 5

    Initial Damage to the Vessel ................................... 7

    The Saudi Litigation. ............................................. 8

    Facts Giving Rise to the U.S. Claims. .................. 13

Summary of Argument ............................................. 15

Standard of Review .................................................. 16

Argument .................................................................. 18

I.    The District Court Abused Its Discretion by Dismissing the Claims for *Forum Non Conveniens* ................................... 18

    A.    *Forum Non Conveniens* Is Not Available to a Defaulted Party. .............................................................. 20

    B.    The Ports Authority's Default Also Precludes Dismissal of the Claims Against Zamil for *Forum Non Conveniens* ........ 24

    C.    Defendants Did Not Establish an Available Forum for All Claims Against All Defendants. ......................................... 26

    D.    Defendants Did Not Establish an Adequate Forum for AdvanFort's Claims ............................................................. 30

        1.    Saudi Arabia Does Not Provide an Adequate Forum for Adjudicating AdvanFort's Claims. .......................... 31

        2.    The District Court's Analysis Was an Abuse of Discretion. ................................................................... 39

    E.    The District Court Abused Its Discretion in Its Weighing of the Public and Private Interest Factors ........................... 48

iii

1.     The District Court Afforded No Deference to AdvanFort's Choice of Forum. ..................................... 49

2.     The District Court Erred in Its Consideration of the Private Factors. .................................................. 55

3.     The District Court Materially Misappraised the Public Interests. ........................................................ 58

II.     The District Court Abused Its Discretion by Denying Limited Discovery Into Disputed Issues of Fact Relevant to *Forum Non Conveniens*. ............................................ 62

Conclusion ...................................................................... 64

Request for Oral Argument .............................................. 65

iv

# TABLE OF AUTHORITIES

## Cases

*Adelson v. Hananel,*
  510 F.3d 43 (1st Cir. 2007).................................................................47, 48

*Ahmed v. Boeing Co.,*
  720 F.2d 224 (1st Cir. 1983)....................................................................44

*Alayan v. Permanent Mission of Saudi Arabia to the United Nations,*
  2021 U.S. Dist. LEXIS 93354 (S.D.N.Y. May 17, 2021) ...............43, 44

*Alpha View Co. Ltd v. Atlas Copco AB,*
  205 F.3d 208 (5th Cir. 2000) ...................................................................27

*Am. Dredging Co. v. Miller,*
  510 U.S. 443 (1994) ..........................................................................21, 55

*Arabian Trading & Chem. Indus. Co. Ltd. v. The B.F. Goodrich Co.,*
  823 F.2d 60 (4th Cir. 1987) .....................................................................62

*Airflow Catalyst Sys. v. Huss Techs. GmbH,*
  No. 11-CV-6012 CJS, 2011 U.S. Dist. LEXIS 127302
  (W.D.N.Y. Nov. 2, 2011) ..........................................................................52

*Associação Brasileira de Medicina de Grupo v. Stryker Corp.,*
  891 F.3d 615 (6th Cir. 2018) ............................................................25, 29

*Azima v. RAK Inv. Auth.,*
  926 F.3d 870 (D.C. Cir. 2019) .................................................................43

*BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition
  Program Admin.,*
  884 F.3d 463 (4th Cir. 2018) ...................................................................18

*Bank Melli Iran v. Pahlavi,*
  58 F.3d 1406 (9th Cir. 1995) ...................................................................37

*Base Metal Trading S.A. v. Russian Aluminum,*
  2002 U.S. Dist. LEXIS 8516 (S.D.N.Y. May 13, 2002) .........................63

*BP Chems. Ltd. v. Jiangsu Sopo Corp (Group) Ltd.,*
  2004 U.S. Dist. LEXIS 27855 (E.D. Mo. Mar. 29, 2004).......................32

*Bridgeway Corp. v. Citibank,*
  201 F.3d 134 (2d Cir. 2000).....................................................................47

*Buckley v. Mukasey*,
  538 F.3d 306 (4th Cir. 2008) ............................................................. 17

*Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico S.A.*,
  528 F. Supp. 1337 (S.D.N.Y. 1982) ....................................................... 37

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ....................................................... 16, 17

*CDM Smith Inc. v. Atasi*,
  594 F. Supp. 3d 246 (D. Mass. 2022) ..................................................... 44

*Centcorp Invs., Ltd. v. Folgueira*,
  2014 U.S. Dist. LEXIS 195396 (S.D. Fla. Sept. 4, 2014) .................... 22

*Chadwick v. Arabian Am. Oil Co.*,
  656 F. Supp. 857 (D. Del. 1987) ........................................................... 62

*Chigurupati v. Daiichi Sankyo Co.*,
  480 F. App'x 672 (3d Cir. 2012) ........................................................... 50

*Chirag v. MT Marida Marguerite Schiffahrts*,
  604 F. App'x 16 (2d Cir. 2015) ........................................................... 17

*Clifton v. Tomb*,
  21 F.2d 893 (4th Cir. 1927) ............................................................... 21

*Cohen v. KEY Safety Sys.*,
  2023 U.S. Dist. LEXIS 45476 (M.D. Fla. Mar. 17, 2023)..................... 24

*Conflict Kinetics, Inc. v. Goldfus*,
  577 F. Supp. 3d 459 (E.D. Va. 2021)..................................................... 42

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ......................................................................... 17

*Deb v. Sirva Inc.*,
  2014 U.S. Dist. LEXIS 77766 (S.D. Ind. June 6, 2014) ....................... 23

*Deb v. Sirva, Inc.*,
  832 F.3d 800 (7th Cir. 2016) ....................................................... 22, 44

*DiFederico v. Marriott Int'l, Inc.*,
  714 F.3d 796 (4th Cir. 2013) ................................................... *passim*

*Dirtt Env't Sols., Inc. v. Falkbuilt Ltd.*,
  65 F.4th 547 (10th Cir. 2023)................................................... *passim*

vi

*dmarcian, Inc. v. dmarcian Eur. BV*,
    60 F.4th 119 (4th Cir. 2022) ................................................. 30

*Doe v. Exxon Mobil Corp.*,
    393 F. Supp. 2d 20 (D.D.C. 2005), *aff'd in part, rev'd in part on other grounds*, 654 F.3d 11 (D.C. Cir. 2011) ................................. 35

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) .............................................. 25

*Dunham v. Hotelera Canco S.A. de C.V.*,
    933 F. Supp. 543 (E.D. Va. 1996) ......................................... 63

*EFCO Corp. v. Aluma Sys. USA, Inc.*,
    268 F.3d 601 (8th Cir. 2001) ............................................... 52

*EFCO Corp. v. Aluma Sys. USA, Inc.*,
    145 F. Supp. 2d 1040 (S.D. Iowa 2000) .................................. 54

*El-Fadl v. Cent. Bank of Jordan*,
    75 F.3d 668 (D.C. Cir. 1996) ......................................... 17, 56

*Emerson Radio Corp. v. Fok*,
    2020 U.S. Dist. LEXIS 182339 (D.N.J. Oct. 1, 2020) .................... 37

*Forsythe v. Saudi Arabian Airlines Corp.*,
    885 F.2d 285 (5th Cir. 1989) ............................................... 43

*Gallagher v. Marriott Int'l, Inc.*,
    2020 U.S. Dist. LEXIS 197014 (D. Md. Oct. 23, 2020) .................. 29

*Galustian v. Peter*,
    591 F.3d 724 (4th Cir. 2010) ....................................... *passim*

*Gines v. D.R. Horton, Inc.*,
    867 F. Supp. 2d 824 (M.D. La. 2013) ...................................... 22

*Goldfarb v. Channel One Russ.*,
    442 F. Supp. 3d 649 (S.D.N.Y. 2020) ..................................... 35

*Gschwind v. Cessna Aircraft Co.*,
    161 F.3d 602 (10th Cir. 1998) ............................................. 26

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ................................................ *passim*

*Hartford Fire Ins. Co. v. Sunteck Transp. Grp., Inc.*,
    2011 U.S. Dist. LEXIS 78137 (E.D. Va. June 29, 2011) ............. 20, 21

*Hefferan v. Ethicon Endo-Surgery Inc.*,
828 F.3d 488 (6th Cir. 2016) ............................................................... 50

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
572 U.S. 559 (2014) ........................................................................... 17

*In re Air Crash Disaster Near New Orleans, La.*,
821 F.2d 1147 (5th Cir. 1987) ........................................................... 27

*In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.*,
131 F. Supp. 2d 1027 (S.D. Ind. 2001) ............................................... 63

*InduSoft, Inc. v. Taccolini*,
560 F. App'x 245 (5th Cir. 2014) ....................................................... 50

*Jes Solar Co. v. Matinee Energy, Inc.*,
2014 U.S. Dist. LEXIS 87995 (D. Ariz. June 25, 2014) ..................... 24

*Jiali Tang v. Synutra Int'l, Inc.*,
656 F.3d 242 (4th Cir. 2011) ..................................................... *passim*

*Jota v. Texaco Inc.*,
157 F.3d 153 (2d Cir. 1998) ............................................................... 26

*Kamel v. Hill-Rom Co.*,
108 F.3d 799 (7th Cir. 1997) ............................................................. 44

*Kontoulas v. A.H. Robins Co.*,
745 F.2d 312 (4th Cir. 1984) ............................................... 27, 28, 29

*Lehman v. Humphrey Cayman, Ltd.*,
713 F.2d 339 (8th Cir. 1983) ............................................. 53, 54, 62

*Levine v. Arabian Am. Oil Co.*,
1985 U.S. Dist. LEXIS 13386 (S.D.N.Y. Nov. 27, 1985) ..................... 62

*Lust v. Nederlandse Programma Stichting*,
501 F. App'x 13 (2d Cir. 2012) ......................................................... 50

*Malay. Int'l Shipping Corp. v. Sinochem Int'l Co.*,
436 F.3d 349 (3d Cir. 2006) ............................................................. 18

*Masaitis v. Marriott Int'l, Inc.*,
2020 U.S. Dist. LEXIS 242765 (D. Md. Dec. 28, 2020) ..................... 63

*Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co.*,
686 F. Supp. 2d 558 (D. Md. 2010) ................................................... 29

*Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.*,
311 F.3d 488 (2d Cir. 2002) ...................................................... 42

*Mujica v. Occidental Petroleum Corp.*,
381 F. Supp. 2d 1134 (C.D. Cal. 2005) ................................. 36

*Mulugeta v. Ademachew*,
407 F. Supp. 3d 569 (E.D. Va. 2019) ...................................... 39

*Mylan Labs., Inc. v. Akzo, N.V.*,
2 F.3d 56 (4th Cir. 1993) ........................................................ 17

*Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Int'l Inc.*,
331 F. Supp. 2d 290 (D.N.J. 2004) ......................................... 62

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*,
515 F.2d 1200 (5th Cir. 1975) ................................................ 21

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
2003 U.S. Dist. LEXIS 4276 (S.D.N.Y. Mar. 21, 2003) ........ 63

*Petersen v. Boeing Co.*,
108 F. Supp. 3d 726 (D. Ariz. 2015) ................................. 33, 45

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ...................................................... *passim*

*Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*,
2016 U.S. Dist. LEXIS 20815 (D.S.C. Feb. 22, 2016) ........ 25, 48

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
244 F. Supp. 2d 289 (S.D.N.Y. 2003) ..................................... 34

*PT United Can Co. v. Crown Cork & Seal Co.*,
138 F.3d 65 (2d Cir. 1998) ...................................................... 26

*Rasoulzadeh v. Associated Press*,
574 F. Supp. 854 (S.D.N.Y. 1983) .......................................... 33

*Reid-Walen v. Hansen*,
933 F.2d 1390 (8th Cir. 1991) .......................................... 37, 49

*Rhodes v. ITT Sheraton Corp.*,
9 Mass. L. Rep. 355 (Mass. Sup. Ct. 1999) ....................... 34, 45

*Rustal Trading US, Inc. v. Makki,*
  17 F. App'x 331 (6th Cir. 2001) ............................................................ 31

*Ryan v. Homecomings Fin. Network,*
  253 F.3d 778 (4th Cir. 2001) ................................................................ 21

*RZS Holdings AVV v. PDVSA Petroleo S.A.,*
  506 F.3d 350 (4th Cir. 2007) ................................................................ 17

*SAS Inst., Inc. v. World Programming Ltd.,*
  2011 U.S. Dist. LEXIS 28507 (E.D.N.C. Mar. 17, 2011) .................... 46

*SAS Inst., Inc. v. World Programming Ltd.,*
  468 F. App'x 264 (4th Cir. 2012) ................................................. *passim*

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
  549 U.S. 422 (2007) .............................................................................. 18

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,*
  382 F.3d 1097 (11th Cir. 2004) ...................................................... 50, 59

*Tuazon v. R.J. Reynolds Tobacco Co.,*
  433 F.3d 1163 (9th Cir. 2006) .............................................................. 42

*Tyco Fire & Sec., LLC v. Alcocer,*
  218 F. App'x 860 (11th Cir. 2007) ............................................... *passim*

*UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia,*
  2008 U.S. Dist. LEXIS 62881 (W.D. Tex. July 25, 2008), *aff'd in part,
  rev'd in part on other grounds,* 581 F.3d 210 (5th Cir. 2009) .. 33, 34, 46

*Watson v. Merrell Dow Pharm., Inc.,*
  769 F.2d 354 (6th Cir. 1985) .......................................................... 25, 29

*Westberry v. Gislaved Gummi AB,*
  178 F.3d 257 (4th Cir. 1999) ................................................................ 17

*Wilson v. Volkswagen of Am., Inc.,*
  561 F.2d 494 (4th Cir. 1977) ................................................................ 17

## Statutes

28 U.S.C. § 1291 .......................................................................................... 4

28 U.S.C. § 1330 .......................................................................................... 3

28 U.S.C. § 1332 .......................................................................................... 3

28 U.S.C. § 1605.................................................................3, 23

28 U.S.C. § 1608...........................................................................14

**Rules**

Fed. R. App. P. 4 ...........................................................................3

Fed. R. Civ. P. 26 ........................................................................11

Fed. R. Civ. P. 55 ........................................................................15

**Other Authorities**

*C-SPAN, Consulting Company Executives Testify on Foreign Influence in the U.S.*, (Feb. 6, 2024) https://www.c-span.org/video/?533391-1/consulting-company-executives-testify-foreign-influence-us...................................42

Homeland Security & Governmental Affairs, Memorandum from Richard Blumenthal to Members of the Permanent Subcommittee on Investigations (Feb. 1, 2024) https://www.hsgac.senate.gov/wp-content/uploads/2024-2-1-Memorandum-from-Chairman-Blumenthal-to-Members-of-PSI.pdf...43

Ola Noureldin, *Saudi Sovereign Fund PIF Acquires 40% Stake In Zamil Offshore Services For Undisclosed Amount*, Forbes Middle East (Feb. 20, 2024 (2:52 AM)), https://www.forbesmiddleeast.com/industry/business/saudi-sovereign-fund-pif-acquires-40-stake-in-zamil-offshore-services-company...........1

PIF, *Members of the Board* https://www.pif.gov.sa/en/who-we-are/our-leadership/ (last visited Mar. 25, 2024)............................................................................1

INTRODUCTION

This case concerns the looting and destruction of a sophisticated maritime security vessel, the *M/V Seaman Guard Virginia* (the "*Virginia*"), belonging to a Virginia business, Plaintiff AdvanFort Company ("AdvanFort"), at the hands of Defendant Saudi Ports Authority ("Ports Authority"), a Saudi government entity, and Defendant Zamil Offshore Services Company ("Zamil"), a Saudi company controlled by the Zamil Family, a Saudi family that enjoys a privileged relationship with the Saudi Royal Family and hence the Saudi government.[1]

---

[1] In February 2024, Saudi Arabia's sovereign wealth fund, the Public Investment Fund, J.A.149, acquired a 40 percent stake in Zamil. *See* Ola Noureldin, *Saudi Sovereign Fund PIF Acquires 40% Stake In Zamil Offshore Services For Undisclosed Amount*, Forbes Middle East (Feb. 20, 2024 (2:52 AM)), https://www.forbesmiddleeast.com/industry/business /saudi-sovereign-fund-pif-acquires-40-stake-in-zamil-offshore-services-company. Saudi Arabia's Crown Prince Mohammed bin Salman, who serves as the country's "de facto ruler," J.A.232, controls the Public Investment Fund. Public Investment Fund, *Members of the Board* https://www.pif.gov.sa/en/who-we-are/our-leadership/ (last visited Mar. 25, 2024). This development raises a number of questions concerning Zamil's arguments to the district court that Zamil would not be afforded any "special immunity" from lawsuits, J.A.137, and that the relationship with the Saudi government is purely that of "lessor and lessee." J.A.320; *see also* J.A.243. The Public Investment Fund taking such a substantial stake in Zamil puts these statements into doubt, and it creates even greater doubt that the courts of Saudi Arabia would be an adequate forum for AdvanFort to press its claims. *See* Section I.D, *infra*.

The Ports Authority and Zamil, which operated the Jeddah Shipyard ("Jeddah Shipyard") as a joint enterprise, reached into Virginia and successfully solicited AdvanFort to engage the Jeddah Shipyard to perform routine maintenance on the *Virginia*. However, rather than carrying out those tasks, Defendants caused a fire onboard and then perverted the legal process through the submission of false government reports, a settlement offer involving bribery, a witness who suddenly became too fearful to testify, and an attempt to bribe and threaten another witness.

When AdvanFort later learned that Defendants had rendered the *Virginia* a useless hulk and had stripped it of all value, AdvanFort filed suit in its home jurisdiction – the Eastern District of Virginia, stating claims for conversion, breach of bailment, negligence, and gross negligence. The Ports Authority defaulted and never appeared. Zamil alone moved to dismiss, *inter alia*, under the doctrine of *forum non conveniens*. Disregarding the Port Authority's default and turning a blind eye to the unrebutted evidence that the Saudi courts would not provide an impartial forum for adjudicating AdvanFort's claims –

especially in light of the complaint's allegations of serious Saudi government malfeasance – the district court granted the motion.

The district court committed reversible error. Among other things, the district court overlooked that dismissal on *forum non conveniens* grounds is unavailable when a party is in default; failed to respect the presumption in favor of litigating in AdvanFort's home forum; and disregarded the undisputed fact and expert evidence that the Saudi courts come nowhere close to providing a fair forum in which to litigate the case. Indeed, the evidence showed that even attempting to litigate in Saudi Arabia would be dangerous for AdvanFort's representatives, witnesses, and counsel, who, at the very least, would be subject to cyber and physical surveillance and at risk of serious harm.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over the claims asserted against Zamil pursuant to 28 U.S.C. § 1332(a) because AdvanFort is a citizen of Virginia and Washington, D.C.; Zamil is a citizen of a foreign state; and the amount in controversy exceeds $75,000. J.A.010. The district court had subject matter jurisdiction over the claims asserted against the Ports Authority under 28 U.S.C. § 1330(a)

3

because the Ports Authority is not immune from suit under the third clause of 28 U.S.C. § 1605(a)(2).  J.A.011.

On December 1, 2023, the district court entered a final order and a separate judgment in favor of Defendants and against AdvanFort on all counts of the complaint.  J.A.379; J.A.380.  On December 26, 2023, AdvanFort filed a timely notice of appeal.  J.A.381; *see* Fed. R. App. P. 4(a)(1)(A).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court abused its discretion by dismissing the claims under the doctrine of *forum non conveniens* when the Ports Authority was in default and had not moved to dismiss on *forum non conveniens* or any other grounds.

2. Whether the district court abused its discretion by dismissing the claims under the doctrine of *forum non conveniens* when the defendants had not demonstrated that an alternative forum was available or adequate or that the public and private interest factors strongly favored litigating in a forum in Saudi Arabia over litigating in Virginia.

4

3. Whether the district court abused its discretion in denying AdvanFort's motion for discovery on factual assertions raised in Zamil's motion to dismiss for *forum non conveniens*.

## STATEMENT OF CASE

This case concerns the claims of AdvanFort, a Virginia-based company, against two foreign entities, and the district court's improper dismissal of those claims on the basis of *forum non conveniens*.

Parties.

AdvanFort is a Virginia company that deploys security vessels and guards to protect oil tankers and other vulnerable ships against piracy in some of the world's most dangerous international waters. J.A.007. Zamil, a closed stock company organized under the laws of Saudi Arabia, operates an offshore and marine services company. J.A.009. Zamil is one of several large companies owned and controlled by the Zamil Family, which it does with the approval of the Saudi Royal Family. J.A.009-010. Earlier this year, Saudi Arabia's sovereign wealth fund acquired a 40 percent stake in the company. *See supra* note 1.

The Zamil Family is "one of the most influential families in Saudi Arabia." J.A.244. In 2023, Forbes ranked the Zamil Family 23rd on its

list of Top 100 Arab Family Businesses. J.A.244. The Zamil Family enjoys an "extremely close relationship to the Saudi Royal Family, and by extension, the Saudi Government." J.A.244; *see also* J.A.246. Members of the Zamil Family serve on the boards of numerous nationally important state-run commercial enterprises, including Saudi Arabia's sovereign wealth fund (the Public Investment Fund) and the Saudi Export Development Authority (a governmental body tasked with developing Saudi Arabia's non-oil export industries). J.A.245-246.

Zamil and the Ports Authority, an arm of the Saudi government, jointly operate the Jeddah Shipyard in the Jeddah Islamic Port. J.A.010; J.A.014-015. A member of the Zamil Family holds a board seat on the Ports Authority. J.A.245. The Jeddah Shipyard sits alongside the Red Sea, one of the world's busiest shipping routes. J.A.013-014.

Zamil engages in extensive business efforts in Virginia to solicit American business. As part of these efforts, it actively solicits from maritime hubs, including in Virginia, both through its own direct advertisements and web-based efforts and through sponsorship of the Vienna, Virginia-based U.S.-Saudi Business Council by its affiliate Zamil

Group Holding ("Zamil Group").[2]    J.A.009-010; J.A.016-020.    Zamil

operates an English language website using Virginia-based servers.

J.A.217-218; J.A.227; J.A.017.  On its website, Zamil touts its association

with an American marine classification society, the American Bureau of

Shipping, and Zamil highlights its work for U.S. companies and on U.S.-

based projects.  J.A.017-018; J.A.217-218.[3]

Initial Damage to the Vessel.

AdvanFort's vessel the *Virginia* was in the Red Sea when it needed

routine maintenance and repair.    J.A.016.    After viewing Zamil's

advertisements in trade publications distributed in Virginia and Zamil's

website, AdvanFort engaged Jeddah Shipyard's services.    J.A.020;

J.A.227.  Jeddah Shipyard engaged with AdvanFort in English and

provided quotes in English.  J.A.021; J.A.044-046; J.A.227.  AdvanFort

delivered the *Virginia* to Jeddah Shipyard for repair.  J.A.021.  While

---

[2] Zamil Group is also controlled by the Zamil Family and is one of the largest company groups in Saudi Arabia.  J.A.009.

[3] Zamil's business with U.S. companies includes Houston-based McDermott International, Inc. and Delaware corporation Seacor Marine Holdings, which disclosed that Zamil is one of its major customers, accounting for millions of dollars of revenue per year.  J.A.204-206.

7

Jeddah Shipyard was working on the *Virginia*, a fire broke out, causing damage to the vessel.  J.A.023-024.

Zamil refused to repair the fire damage, and instead threatened to undock the damaged vessel should AdvanFort not pay for the damage that Zamil had caused, including additional fees for work that had not been undertaken.  J.A.024; J.A.027.

The Saudi Litigation.

AdvanFort sought to hold Zamil responsible for the fire damage.  It commenced an action against Zamil for damages caused to the *Virginia* by the fire in the Third Commercial Circuit of Jeddah ("Commercial Court") in Saudi Arabia in April 2014.  J.A.028; J.A.239 n.34.  Zamil filed a countersuit seeking its own damages for unpaid fees on the repairs (some of which were not started) and for unspecified berthing fees.[4]  J.A.028-029.

During these proceedings, AdvanFort was subject to unfair treatment from the Saudi courts and abuse of the judicial process perpetrated by Zamil:

---

[4] Zamil initially claimed US$147,523 in berthing fees and US$717,800 in repair costs but later claimed that the berthing fees amounted to millions of dollars in damages.  J.A.028-029.

- Zamil threatened and attempted to bribe one of AdvanFort's witnesses, seeking to have him change his expected testimony. J.A.030.

- Another of AdvanFort's witnesses abruptly stopped returning AdvanFort's calls and refused to testify, indicating that he feared retribution for speaking out against the Zamil Family.  J.A.031.

- After indicating that the appointment of an independent marine expert was necessary to resolve the case's technical issues, the Saudi Commercial Court abruptly changed position and issued a judgment in Zamil's favor without appointing the independent expert.  J.A.031.

- The Saudi Commercial Court discounted the testimony of AdvanFort's non-Muslim witnesses, including the captain and a crew member of the *Virginia*.  J.A.108.

- The Saudi Commercial Court's decision rested exclusively on false, self-serving fire reports issued by Saudi government authorities. J.A.108;  J.A.025;  J.A.032.   The fire inspectors performed a

perfunctory inspection and summarily attributed the cause of the fire to AdvanFort.[5]

- The court awarded Zamil US$40,000 in enumerated damages and unspecified berthing fees, which Zamil claimed amounted to more than US$5 million.[6]  J.A.031.

Consistent with AdvanFort's experience, the Saudi judiciary is not independent and does not provide a fair and impartial forum for adjudicating claims against the Saudi government or entities closely associated with the Saudi Royal Family, including companies such as those controlled by the Zamil Family.  J.A.230-231.  The Saudi judiciary is controlled by the Saudi government, a defendant in this suit, and is marked by capriciousness, opacity, and discrimination.  J.A.230; J.A.233.

---

[5] One of those reports was issued by the Saudi Border Guard, a security agency with which Zamil touts a close relationship.  J.A.024-025.  One Zamil executive stated that the company is "very active" with the Border Guard.  J.A.025.  The Border Guard is notoriously brutal and has fallen under scrutiny for its reported use of explosive weapons to shoot people at close range, asking victims which limb of their bodies they preferred shot.  J.A.024-025; J.A.241.

[6] Under Jeddah Shipyard's published rates, that is the equivalent of over 50 years of berthing fees.  J.A.031.

The U.S. Department of State regularly reports on the Saudi judiciary's abuses, observing that it "has serious problems with . . . independence" and that the courts are "required to coordinate their decisions with executive authorities, with the king and crown prince as arbiters." J.A.250-251, *see also* J.A.257; J.A.261. Judges who issue decisions perceived to be contrary to the interests of the government are met with retribution. J.A.233. Judges, lawyers, and critics have been arrested and tortured. J.A.233-235; J.A.256. The King of Saudi Arabia is the head of the Saudi judicial system and maintains ultimate authority over the judiciary's organization and operations. J.A.232. Laws are applied inconsistently from court to court and judge to judge. J.A.239-240. Procedural requirements are regularly ignored. J.A.238. Decisions need not be published, and judges frequently choose not to publish decisions.[7] J.A.239-240.

Discrimination against women, non-Muslims and foreigners is common, and is used as a basis for declaring testimony to be

---

[7] As a case in point, neither AdvanFort nor its expert on Saudi law has been able to locate the cases that Zamil's Saudi law expert discussed in his affidavit submitted with the motion to dismiss. He did not attach them and they are not publicly available. J.A.239-240. *See* Fed. R. Civ. P. 26(a)(2)(B).

11

untrustworthy. J.A.238. Judges operate with total discretion and no accountability, so long as they "coordinate their decisions with executive authorities." J.A.251; J.A.257; J.A.261. These documented problems are consistent with those experienced by AdvanFort in Saudi Arabia.

Since then, the problems that plague the Saudi judiciary have worsened. In 2022, ten judges were publicly arrested at their courthouses and then prosecuted for issuing decisions perceived as unfavorable to the Saudi government. J.A.233-234. Last year, the International Bar Association's Human Rights Institute observed that this is "part of a broader, ongoing effort to dismantle the independence of the legal profession by intimidating, hindering, harassing or improperly interfering with judges, lawyers and jurists." J.A.265. It further observed that the Saudi government has "created a chilling effect across the judiciary and the broader legal profession" in Saudi Arabia. J.A.265. Last year, Saudi authorities detained five relatives of a U.S. citizen under the Saudi terrorism law after the U.S. citizen filed an action against the Saudi government in the U.S. District Court for the Eastern District of Pennsylvania regarding a commercial dispute. J.A.237.

12

Facts Giving Rise to the U.S. Claims.

In 2022, Zamil wrote to AdvanFort in Virginia inviting it to reclaim the vessel, to which AdvanFort had previously lacked access. J.A.032. In September 2022, AdvanFort's marine expert traveled from the United States to Saudi Arabia to inspect the *Virginia*. J.A.033. The inspection revealed that Zamil and the Ports Authority had stripped the vessel of all value. J.A.032-036. They removed everything from a set of binoculars to entire engines, including: a Zodiac brand fast speed boat, cooling pumps, VHF radio stations, diesel generators, a crane, emergency generators, steering equipment, and two main engine telegraphs. J.A.035. Zamil and the Ports Authority left the vessel to rust in the elements, rendering it utterly unseaworthy, with hatches and windows left open and debris strewn around the vessel. J.A.033-034. Jeddah Shipyard employees informed AdvanFort's marine expert that the *Virginia* had been removed from the water due to fears that it would sink and become a navigational hazard. J.A.035.

AdvanFort's claims in the present action are based on those acts and include claims against the Ports Authority, which acted with Zamil to loot AdvanFort's vessel.

13

On July 12, 2023, AdvanFort filed its five-count complaint against Zamil and the Ports Authority for conversion, breach of bailment, negligence, and gross negligence.  J.A.002; J.A.037-040.    AdvanFort brought suit in its home forum – the Eastern District of Virginia.   On September 19, 2023, AdvanFort served the Ports Authority under 28 U.S.C. § 1608(a)(3).  J.A.004.

Zamil waived service on September 29, 2023, and subsequently moved to dismiss the complaint on the grounds of *forum non conveniens* and lack of personal jurisdiction.  J.A.003; J.A.049.  AdvanFort opposed Zamil's motion on October 30, 2023, and moved for limited discovery relating to *forum non conveniens* and personal jurisdiction.  J.A.004-005; J.A.139; J.A.273.   The Ports Authority did not appear or respond to AdvanFort's complaint within the 60 days afforded to it by 28 U.S.C. § 1608(d).   J.A.005; J.A.350-352.   On November 30, 2023, AdvanFort requested an entry of default against the Ports Authority.  J.A.350-352.

On December 1, 2023, the district court held a hearing on Zamil's motion to dismiss.  J.A.005-006; J.A.357-362.  At the hearing, the district court acknowledged that the Ports Authority was in default and informed the parties that it intended to dismiss AdvanFort's claims on the basis of

14

*forum non conveniens.* J.A.362. Neither party was heard at the hearing.[8]

J.A.357-362. Later that day, the Clerk filed an entry of default against

the Ports Authority pursuant to Fed. R. Civ. P. 55(a). J.A.356.

Thereafter, the district court denied AdvanFort's motion for limited

discovery; granted Zamil's motion to dismiss; dismissed the claims

against all parties, including the defaulted Ports Authority; and entered

judgment in favor of the Ports Authority and Zamil. J.A.363-378;

J.A.379. The district court did not vacate the entry of default against the

Ports Authority.

## SUMMARY OF ARGUMENT

The district court committed reversible error in granting Zamil's

motion to dismiss on the basis of *forum non conveniens.* One of the

defendants, the Ports Authority, was in default and the district court

could not dismiss the claims in those circumstances.

The district court also committed reversible error by finding

availability of a foreign forum by reference to Saudi Arabia generally.

---

[8] The district court's opinion states that "oral argument [was] held" on
the motion. J.A.370. While the parties appeared before the district court,
no argument was made by either party. *See* J.A.357-362.

Availability requires a single tribunal to be available for the adjudication of the claims against all defendants, and the district court's finding that Saudi Arabia in general was available, instead of a particular tribunal in Saudi Arabia that could hear the claims, was an error of law.

The district court also abused its discretion in finding Saudi Arabia was an adequate forum, failing to consider the evidence of likelihood of unfairness to this particular plaintiff on these particular claims and the instances of unfairness that took place in the prior Saudi litigation. The district court also failed to properly assess the private and public interest factors. These errors, individually and collectively, amount to an abuse of discretion. Finally, to the extent that there were open issues of fact concerning any of the factors, the district court erred by failing to grant discovery on those issues.

### STANDARD OF REVIEW

"A *forum non conveniens* dismissal is reviewable for an abuse of discretion." *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). Similarly, a court's refusal to grant limited discovery on *forum non conveniens* is reviewed for abuse of discretion. *Carefirst of Md., Inc. v. Carefirst*

16

*Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993)); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18 (2d Cir. 2015).

"By definition, the court abused its discretion if it made an error of law." *Buckley v. Mukasey*, 538 F.3d 306, 317 (4th Cir. 2008) (citing *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir. 2007)). A district court also abuses its discretion when granting a *forum non conveniens* motion to dismiss where it fails to "consider a material factor," clearly errs "in evaluating the factors before it," or fails to "hold the defendants to their burden of persuasion on all elements of the *forum non conveniens* analysis." *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010) (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 677 (D.C. Cir. 1996)) (internal quotation marks omitted); *see Highmark Inc. v. Allcare Health Mgmt. Sys.*, 572 U.S. 559, 563 n.2 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "[E]ven if a district court applies the correct legal principles to adequately supported facts, the discretion of the trial court is not boundless[.]" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 506 (4th Cir. 1977)).

17

ARGUMENT

## I.   The District Court Abused Its Discretion by Dismissing the Claims for *Forum Non Conveniens.*

The district court committed reversible error when it dismissed the claims on the basis of *forum non conveniens*.  The *forum non conveniens* doctrine is a discretionary "non-merits ground for dismissal."  *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) (quoting *Malay. Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 359 (3d Cir. 2006) (internal quotation marks omitted).  It is intended for the rare circumstance where a plaintiff's choice of "an inconvenient forum" would "'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  As this Court has explained, the doctrine "allows a court to dismiss a case when the original venue is highly inconvenient and an adequate alternative venue exists."  *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470-71 (4th Cir. 2018).  Neither of those conditions exists here.

Indeed, a "plaintiff's choice of forum should rarely be disturbed."  *Piper Aircraft*, 454 U.S. at 249 n.15, 241.  The party seeking dismissal on

18

*forum non conveniens* grounds bears the heavy burden to show an "alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Tang*, 656 F.3d at 248 (citing *Piper Aircraft*, 454 U.S. at 241).

The district court erred in at least four ways. *First*, because the Ports Authority was in default, the district court could not dismiss AdvanFort's claims against the Ports Authority and Zamil under the doctrine of *forum non conveniens.*

*Second*, the district court erred with respect to the availability requirement because the district court (a) failed to account for the Ports Authority's non-appearance, and (b) concluded that Saudi Arabia was an available forum even though the expert evidence established that the claims against the two defendants could not be brought in the same Saudi court.

*Third*, the district court erred in concluding that the courts of Saudi Arabia were adequate by not accounting for AdvanFort's uncontested evidence of specific risk that AdvanFort would be treated unfairly in Saudi Arabia in light of the particular parties involved and the nature of AdvanFort's claims against them.

19

*Fourth*, the district court erred in weighing the public and private interests.

In all instances, the district court failed to give due deference to the decision by AdvanFort, a Virginia corporation, to commence litigation in its home forum.

A. *Forum Non Conveniens* Is Not Available to a Defaulted Party.

The Ports Authority did not respond to AdvanFort's complaint. After the time allotted for it to respond had expired, the clerk entered default. *See* J.A.356. The Ports Authority was in default when the Court dismissed AdvanFort's claims. J.A.362 ("I recognize that the other defendant has not entered an appearance, and, therefore, technically is in default."). The Ports Authority remains in default.

The Ports Authority's default precluded the district court from dismissing on *forum non conveniens* grounds. "The entry of a default against a defendant, unless set aside pursuant to Rule 55(c), severely limits the defendant's ability to defend the action." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). A defaulted defendant "loses his standing in court, his right to receive notice of the proceedings, and his right to present evidence at the final hearing." *Hartford Fire Ins.*

*Co. v. Sunteck Transp. Grp., Inc.*, No. 2:10-cv-00191, 2011 U.S. Dist. LEXIS 78137, at *5 (E.D. Va. June 29, 2011) (citing *Clifton v. Tomb*, 21 F.2d 893, 897 (4th Cir. 1927)). In addition, a defendant in default is deemed to "admit[] the plaintiff's well pleaded allegations of fact[.]" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted); *accord Tyco*, 218 F. App'x at 863 ("[A] defaulted defendant is deemed to 'admit the plaintiff's well-pleaded allegations of fact.'") (quoting *Nishimatsu*, 515 F.2d at 1206).

While a defendant in default can raise certain issues, such as the validity of service of process, "a defendant, once a default has been entered against him, is not entitled to raise any other defenses." *Tyco*, 218 F. App'x at 864; *see Clifton*, 21 F.2d at 897. This includes the defense of *forum non conveniens*. As *Tyco* explained, "procedural defenses, such as a motion to dismiss for *forum non conveniens*, which the Supreme Court has described as a 'supervening venue provision,' are lost." *Tyco*, 218 F. App'x at 864 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)).

21

Since the Ports Authority was in default, the district court was foreclosed from dismissing for *forum non conveniens*. *Id.* (vacating *forum non conveniens* dismissal because the district court, having upheld the clerk's entry of default, "should have refused to consider" the defendant's motion to dismiss for *forum non conveniens*); *see Centcorp Invs., Ltd. v. Folgueira*, No. 13-23019-CIV-MOORE-MCALILEY, 2014 U.S. Dist. LEXIS 195396, *6-7 (S.D. Fla. Sept. 4, 2014) ("[T]he Court should not consider [the defendant's] *forum non conveniens* argument because he remains in default."); *Gines v. D.R. Horton, Inc.*, 867 F. Supp. 2d 824, 829 (M.D. La. 2013) ("[D]efendants may not raise procedural or other defenses, such as *forum non conveniens*, once an entry of default has been made.") (citing *Tyco*, 218 F. App'x at 864).

Failing to account for the Ports Authority is not simply a technical error on the district court's part.[9] The Ports Authority could thwart any

---

[9] Rather than considering whether the Ports Authority met its burden to demonstrate the availability of Saudi courts to litigate AdvanFort's claims against it, the district court improperly assumed the Saudi courts were available, placing the burden on AdvanFort to demonstrate otherwise. *See* J.A.370-371. But it is the Ports Authority's burden to demonstrate availability. A failure to hold the Ports Authority to this burden is an abuse of discretion. *See Deb v. Sirva, Inc.*, 832 F.3d 800, 813 (7th Cir. 2016) (reversing dismissal on *forum non conveniens* grounds

attempt to litigate the matter in Saudi Arabia.   As AdvanFort's expert on Saudi law explained, the Ports Authority could invoke the "acts of sovereignty" doctrine, which divests the Saudi courts of jurisdiction over claims against governmental entities.[10]   J.A.243.   The Ports Authority's invocation of the doctrine would render AdvanFort's claims against the Port Authority non-justiciable.   J.A.243.

This expert evidence is critical because a foreign sovereign's waiver of immunity is a necessary condition for dismissal under the doctrine of *forum non conveniens*.  *See Galustian*, 591 F.3d at 729-31 (explaining that where no evidence was proffered regarding the availability of a forum for one defendant, "dismissal for *forum non conveniens* was premature" and noting that open questions about a party's immunity from suit further supports the denial of a motion to dismiss).   The Ports Authority's

---

because "the district court abused its discretion by finding that the Indian courts should be able to exercise jurisdiction over the Defendants without placing the burden on the defendants to demonstrate that this was so") (quoting *Deb v. Sirva Inc.*, No. 1:13-CV-01245-TWP, 2014 U.S. Dist. LEXIS 77766, at *3 (S.D. Ind. June 6, 2014)) (internal quotation marks omitted).

[10] The Ports Authority would not be similarly immune in the United States because there is subject matter jurisdiction under the Foreign Sovereign Immunities Act's commercial activity exception.  *See* 28 U.S.C. § 1605(a)(2).   J.A.005; J.A.350-352.

undisputed ability to invoke the acts of sovereignty doctrine, J.A.243, thus should have precluded dismissal.  *See, e.g.*, *Cohen v. KEY Safety Sys.*, No. 8:22-cv-866-SDM-TGW, 2023 U.S. Dist. LEXIS 45476, at *17-20 (M.D. Fla. Mar. 17, 2023) (refusing to dismiss for *forum non conveniens* because "Israel permits no 'litigation of the subject matter of [this action]'") (quoting *Piper Aircraft Co.*, 454 U.S. at 254 n.22).

B. <u>The Ports Authority's Default Also Precludes Dismissal of the Claims Against Zamil for *Forum Non Conveniens*</u>

The Ports Authority's default did not just prevent the district court from dismissing the claims against that defendant.  The default also precluded dismissal of the claims against Zamil.  This Court held in *Galustian* that where one defendant "had not moved for *forum non conveniens* dismissal and no evidence was proffered regarding the availability of the forum as to" the nonmoving defendant, dismissal is inappropriate as to either defendant.  *Galustian*, 591 F.3d at 731; *see also Dirtt Env't Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 555 (10th Cir. 2023) ("[F]*orum non conveniens* is not available as a tool to split or bifurcate cases."); *Jes Solar Co. v. Matinee Energy, Inc.*, No. CV 12-626 TUC DCB, 2014 U.S. Dist. LEXIS 87995, *6-7 (D. Ariz. June 25, 2014) (refusing to

24

dismiss for *forum non conveniens* raised by one defendant where two other defendants were in default).

This is dispositive. Just as in *Galustian*, only one defendant (Zamil) moved for dismissal. *See Galustian*, 591 F.3d at 731. The Ports Authority did not even appear, let alone move to dismiss or proffer any evidence regarding the availability of the alternative forum. *See id.* Dismissal was therefore unavailable with respect to both parties. *See id.*; *Dirtt*, 65 F.4th at 549 (reversing dismissal based on *forum non conveniens* because the district "clearly abuse[d] its discretion when . . . it elect[ed] to dismiss an action as to several defendants under a theory of *forum non conveniens* while simultaneously allowing the same action to proceed against other defendants"); *Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-cv-01964-JMC, 2016 U.S. Dist. LEXIS 20815, *28-29 (D.S.C. Feb. 22, 2016) (denying motion because not all defendants sought dismissal); *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 620 (6th Cir. 2018) ("[A] foreign forum is not truly 'available' . . . if the foreign court cannot exercise jurisdiction over both parties.") (quoting *Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985)); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118-19 (9th Cir.

25

2002) (defendants had not shown an adequate foreign forum existed when it was not established that both defendants would be subject to personal jurisdiction in the foreign forum); *Jota v. Texaco Inc.*, 157 F.3d 153, 158-59 (2d Cir. 1998) (explaining that the district court "must satisfy itself . . . that litigation may be conducted elsewhere against all defendants") (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (internal quotation marks omitted).[11]

### C. Defendants Did Not Establish an Available Forum for All Claims Against All Defendants.

Defendants have not established that there is a forum available to hear the claims against them.  While the availability requirement is ordinarily "satisfied when the defendant is 'amenable to process' in the [foreign] jurisdiction[,]" *Piper Aircraft*, 454 U.S. at 254 n.22 (quoting *Gulf Oil Corp.*, 330 U.S. at 506-07), the alternate forum must be available as to all defendants, *Galustian*, 591 F.3d at 730-31.  As the Fifth Circuit put

---

[11] The district court attempted to distinguish *Dirtt* as applying to litigation in two different countries, J.A.371, but *Dirtt* is not so limited. *Dirtt* explains that case-splitting "fundamentally contradicts the 'central purpose' of *forum non conveniens*" to avoid "overlapping, piecemeal litigation[.]" *Dirtt*, 65 F.4th at 555 (quoting *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998)).  This rationale applies to case-splitting between different tribunals of one country, as much as to between different countries.

it: "'A foreign forum is available when the *entire case and all parties* can come within the jurisdiction of the forum.'" *Alpha View Co. Ltd v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (emphasis added) (quoting *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987) (internal citations omitted)).   An alternate forum is thus unavailable where the defendants do not identify a court in which all the claims can be heard together.  *See Galustian*, 591 F.3d at 731; *Dirtt*, 65 F.4th at 549, 554-55; *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 316 (4th Cir. 1984).

Here, the unrebutted evidence shows that AdvanFort's claims against the Ports Authority would have to be brought in a *different* Saudi court from the claims against Zamil.[12]   J.A.242; J.A.323-324.  This is because, in Saudi Arabia, the Board of Grievances, known also as the country's Administrative Court, "has exclusive jurisdiction over administrative cases and lawsuits filed against government bodies,"

---

[12] Zamil did not dispute the claims would need to be brought separately. Instead, Zamil only presented evidence that a claimant could "request that the Administrative Court involve another party in the case provided that the conditions required by the relevant law are met." J.A.323. Zamil does not address whether the "conditions required by the relevant law" would be met in this instance or even what those conditions might be.

including the Saudi Ports Authority.  J.A.242.  The jurisdiction of that court "does not extend to commercial cases brought against non-government parties."  J.A.242.  Accordingly, the Ports Authority cannot be brought before the Commercial Court of Saudi Arabia, where the claims against Zamil would have to be litigated.  J.A.242.

The upshot is that AdvanFort's respective claims against Zamil and the Ports Authority would proceed in different Saudi fora, even assuming the claims against the Ports Authority were not frustrated by the acts of sovereignty doctrine.  The district court tried to avoid confronting this problem by stating that "AdvanFort does not cite any legal authority for the proposition that a foreign country is not a convenient forum if a party's claims must be heard by different tribunals in that country." J.A.371.  That is wrong.

AdvanFort did indeed provide authority for this principle.  J.A.152-153.  This Court explained the principle in *Kontoulas v. A.H. Robins Co.*, where it affirmed the district court's denial of a motion to dismiss for *forum non conveniens* because the defendant had provided merely generalized evidence in favor of Australia as a forum without identifying the specific court amenable to jurisdiction.  *Kontoulas*, 745 F.2d at 315-

16; *see also Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co.*, 686 F. Supp. 2d 558, 562 (D. Md. 2010) (denying motion for *forum non conveniens* dismissal where "defendants failed to meet the Fourth Circuit's clear requirement that they indicate which court provides the alternative forum, not just which country"); *Gallagher v. Marriott Int'l, Inc.*, No. 8:19-cv-2692-PWG, 2020 U.S. Dist. LEXIS 197014, at *5 (D. Md. Oct. 23, 2020) ("[T]he defendant must indicate 'what court provides the alternative forum,' rather than merely 'suggest[ing] the country.'") (quoting *Kontoulas*, 745 F.2d at 316).

There is good reason for the insistence that the same court be able to adjudicate all claims. As the Sixth Circuit has explained, a "foreign forum is not truly 'available' – and a defendant is not meaningfully 'amenable to process' there – if the foreign court cannot exercise jurisdiction over both parties." *Associação Brasileira de Medicina de Grupo*, 891 F.3d at 620 (quoting *Watson*, 769 F.2d at 357). This is consistent with the "central purpose of any *forum non conveniens* inquiry[,]" which is to "ensure that trial is convenient[.]" *Piper Aircraft*, 454 U.S. at 256. Splitting cases across courts "increases the possibility

of overlapping, piecemeal litigation that is inherently inconvenient for both the parties and the courts." *Dirtt*, 65 F.4th at 555.

Here, the unrebutted evidence demonstrated that no single forum in Saudi Arabia exists, and therefore that Zamil failed to carry its burden to show that there is an alternative available forum to hear all of AdvanFort's claims.

### D. Defendants Did Not Establish an Adequate Forum for AdvanFort's Claims.

The district court failed to conduct a proper inquiry as to whether the Saudi courts provide an adequate forum to litigate the claims. A "foreign forum is only 'adequate' if 'all parties can come within that forum's jurisdiction' and 'the parties will not be deprived of all remedies or treated unfairly.'" *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 136 (4th Cir. 2022) (quoting *Tang*, 656 F.3d at 249). That is not the case here.

First, as to the requirement that all parties must be capable of coming within the alternative forum's jurisdiction, AdvanFort demonstrated that all parties cannot come within a single forum in Saudi Arabia and the Ports Authority could invoke the acts of sovereign

doctrine if AdvanFort attempted to bring claims in Saudi Arabia. *See supra* Section I.C.

Second, as to the requirement that the alternative forum provide adequate remedies and treat the plaintiff fairly, Saudi Arabia's courts do not satisfy that standard with respect to this dispute. A foreign forum is not adequate where the plaintiff will be treated unfairly or the remedy in that forum is so illusory that it is no remedy at all. *See Piper Aircraft*, 454 U.S. at 254-55. In addition, "serious obstacles to conducting litigation in the alternative forum, such as a well-founded fear of persecution there, may render the forum inadequate." *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 335 (6th Cir. 2001) (citing *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1199 (S.D.N.Y. 1996)). In this case, the district court misapplied the law in finding that Saudi courts would be adequate for its claims and ignored largely unrebutted expert testimony concerning the obstacles that prevent AdvanFort from receiving a fair and impartial hearing in Saudi Arabia.

### 1. Saudi Arabia Does Not Provide an Adequate Forum for Adjudicating AdvanFort's Claims.

The tribunals in Saudi Arabia do not provide an adequate forum for adjudicating AdvanFort's claims, especially in light of the fact that the

31

claims raise serious issues concerning malfeasance by the Saudi government and a privileged, influential family. These allegations would be viewed as particularly sensitive to the Saudi government, which exerts control over the Saudi judiciary. J.A.157 (citing J.A.231). AdvanFort detailed numerous obstacles to obtaining a fair hearing on its particular claims in Saudi Arabia.

Government interference. AdvanFort's specific claims in this case are directed against an arm of the Saudi government and an allied family, and the allegations involve not just theft, but the government's coordination with that family's company to create false reports and intimidate witnesses. J.A.024-025; J.A.028; J.A.030; J.A.033; J.A.230. The Saudi government closely monitors and enforces its power over the judiciary and interference in this case is likely. J.A.233; J.A.157 (citing J.A.241).

Courts have cited undue influence of similar types as a basis to find that a forum is inadequate. *See BP Chems. Ltd. v. Jiangsu Sopo Corp (Group) Ltd.*, No. 4:99CV323 CDP, 2004 U.S. Dist. LEXIS 27855, at *35-36 (E.D. Mo. Mar. 29, 2004) ("[T]he likelihood of governmental interference is high [when the defendant] is a powerful, state-owned

enterprise with significant ties to the local Communist Party.");
*Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983)
("In the case at bar, I have no confidence whatsoever in the plaintiffs'
ability to obtain justice at the hands of the courts administered by
Iranian mullahs.").

    <u>Discrimination and harassment of witnesses</u>.  AdvanFort's
witnesses, including the master of the vessel and certain crew members,
are not Saudi Arabian.  *See* J.A.227.  The court would consider the
testimony of these foreign and non-Muslim witnesses less trustworthy
than the testimony of Muslim witnesses and the likelihood these
witnesses would be subject to harassment is great.  J.A.158 (citing
J.A.231; J.A.235; J.A.238; J.A.241; J.A.242).  Discriminatory treatment
towards non-Muslim witnesses has been noted by several courts as a
reason to reject a motion to dismiss on the basis of *forum non conveniens*.
*See Petersen v. Boeing Co.*, 108 F. Supp. 3d 726, 731-33. (D. Ariz. 2015)
(holding the Saudi Labor Court was inadequate because of
discriminatory evidentiary rules that will only credit testimony if
corroborated by two Muslim witnesses); *UNC Lear Servs., Inc. v.
Kingdom of Saudi Arabia*, No. SA-04-CA-1008-WRF, 2008 U.S. Dist.

LEXIS 62881, at *52-54 (W.D. Tex. July 25, 2008) (noting in Saudi Arabia there is a "genuine question as to whether all parties – non-Muslims – will be 'treated fairly,'" and declining to dismiss on *forum non conveniens*), *aff'd in part, rev'd in part on other grounds*, 581 F.3d 210 (5th Cir. 2009); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 336 (S.D.N.Y. 2003) (holding Sudan was inadequate forum based in part on greatly reduced rights of non-Muslim plaintiffs and "total lack of legal personality" and "diminished testimonial competence" for non-Muslim witnesses); *Rhodes v. ITT Sheraton Corp.*, 9 Mass. L. Rep. 355, 355 (Mass. Sup. Ct. 1999) (denying motion to dismiss for *forum non conveniens* when "the existence of biases against women and non-Muslims in Saudi Arabia would impose additional disadvantages on plaintiff").

<u>Justified fear for personal safety</u>. Having complained directly about the actions of the Saudi government in this lawsuit, AdvanFort executives harbor legitimate fear for their safety if they were required to travel to Saudi Arabia to prosecute their claims. *See* J.A.231 (explaining that "individuals associated with AdvanFort would be at risk of detention and/or other forms of abuse if they were to travel to Saudi Arabia to

34

participate in litigation there"). AdvanFort representatives are also likely to be subject "to physical and cyber surveillance" by the Saudi government. J.A.231.

These fears are well-founded. The Saudi government recently retaliated against a U.S. citizen who had filed a commercial lawsuit against the Saudi government in Pennsylvania. J.A.237. The U.S. citizen's family members residing in Saudi Arabia were arrested and prosecuted. J.A.237. AdvanFort has a strong basis to fear reprisal by the Saudi government, a factor that has been cited by courts in denying *forum non conveniens* motions. *See, e.g., Goldfarb v. Channel One Russ.*, 442 F. Supp. 3d 649, 658-59 (S.D.N.Y. 2020) (collecting cases and declining to dismiss on *forum non conveniens* grounds because the party suing a state-controlled media company had submitted testimony on his credible fear that he would be imprisoned or physically harmed if he returned to Russia); *Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20, 29 (D.D.C. 2005), *aff'd in part, rev'd in part on other grounds*, 654 F.3d 11 (D.C. Cir. 2011) (rejecting *forum non conveniens* argument because Indonesian plaintiffs alleged risk to safety and bias in Indonesian courts if claims were pursued in Indonesia, citing press reports of

disappearances of other Indonesians investigating human rights abuses); *Cabiri*, 921 F. Supp. at 1199 ("[T]o force plaintiff to bring this action in Ghana would unnecessarily put him in harm's way, or, also unacceptable, would mean an end to the action altogether."); *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1146, 1154 (C.D. Cal. 2005) (denying defendant's *forum non conveniens* motion to dismiss because the Court "does not believe that Plaintiffs can return to Colombia without running a substantial risk to their safety" and "defendant has not shown a sufficiently serious inability to pursue this case in this Court").

Difficulty in retaining counsel. Retaining counsel in Saudi Arabia willing to pursue AdvanFort's claims would be extremely difficult. Prospective counsel would have a legitimate fear of facing retaliation and surveillance. J.A.158-159 (citing J.A.230-231; J.A.235; J.A.242). Lawyers who take on claims viewed as adverse to the Saudi government or allied families have been arrested and imprisoned. J.A.235. One such lawyer received a-more-than-15-year prison sentence. J.A.235. Another lawyer has been imprisoned, put under surveillance, and banned from practicing law. J.A.235. Such actions have had a chilling effect on the legal profession in Saudi Arabia and make it extremely difficult for

36

AdvanFort to locate counsel willing to genuinely pursue its claims. J.A.236-237; J.A.242; *Reid-Walen v. Hansen*, 933 F.2d 1390, 1398-99 (8th Cir. 1991) (including as part of analysis of private interests the practical problems, financial and otherwise, encountered by plaintiffs); *cf. Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1413 (9th Cir. 1995) (affirming refusal to enforce an Iranian judgment because the Iranian system did not comport with due process, and because the defendant "could not expect fair treatment from the courts of Iran, could not personally appear before those courts, could not obtain proper legal representation in Iran, and could not even obtain local witnesses on her behalf").

Lack of remedy.  Courts reject *forum non conveniens* motions where a defendant may be able to invoke immunity to avoid liability in the forum or where there are serious questions about whether a judiciary that is not independent would impose liability.  *See Emerson Radio Corp. v. Fok*, No. 2:20-cv-01618-WJM-MF, 2020 U.S. Dist. LEXIS 182339, at *6 (D.N.J. Oct. 1, 2020) ("Given Defendant's total immunity from liability in Hong Kong, the Court finds Hong Kong would not be an appropriate alternative forum.") (citing *Piper Aircraft*, 454 U.S. at 255); *Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico S.A.*, 528 F. Supp.

1337, 1342 (S.D.N.Y. 1982) (concluding that, where one party was a state-owned corporation, "serious questions about the independence of the Chilean judiciary vis-a-vis the military junta currently in power" rendered Chile an inadequate forum). The Ports Authority can assert the sovereign acts doctrine, immunizing it from having to litigate AdvanFort's claims. J.A.159 (citing J.A.238; J.A.240-241; J.A.243). If the Ports Authority instead chose to litigate AdvanFort's claims, the Saudi courts can be expected to deny the claim on the merits and, at most, permit a nominal recovery, regardless of the claims' merits. J.A.240-241.

Undue influence. The Zamil Family is not only one of the wealthiest families in Saudi Arabia with ties to the highest levels of the Saudi government, J.A.244-247, it has demonstrated a willingness to influence witnesses and the government inspectors who inspected the vessel after the fire. J.A.024-025; J.A.030. Zamil representatives also came to AdvanFort with a scheme to defraud its insurance company, which included bribing government officials to change the conclusions of the inspection report. J.A.029-030. It is therefore likely that Zamil would use its influence to interfere with the process in Saudi Arabia and obtain unfair results if the case were tried in Saudi Arabia. J.A.159 (citing

38

J.A.244; J.A.246-247); *cf. Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 582-86 (E.D. Va. 2019) (declining to enforce or give preclusive effect to Ethiopian judgment obtained by one of the country's wealthiest individuals where the court considered evidence that the judicial system was subject to influence).

Zamil did not rebut *any* of this evidence. It did not present any evidence, for example, that AdvanFort's legitimate fear for its witnesses' safety was unfounded, that Zamil would not and has not used influence in suits brought against it in Saudi Arabia, or that the Ports Authority could not seek immunity under the acts of sovereignty doctrine. Zamil did not offer evidence that non-Muslim witnesses would be treated fairly or rebut AdvanFort's expert testimony that government interference is likely. J.A.230-231. This unrebutted evidence paints a clear picture: Saudi Arabia is not an adequate forum for these particular claims, and it was an abuse of discretion for the district court to find otherwise.

### 2. *The District Court's Analysis Was an Abuse of Discretion.*

The district court made several errors in considering the Saudi courts' putative adequacy as a forum. First, it mischaracterized AdvanFort's voluminous evidence as both too "generalized" and at the

same time too "anecdotal."  J.A.374; J.A.373.  Second, to find that other courts have found Saudi Arabia to be an adequate forum, the district court cited to inapposite cases where the plaintiff had agreed to a contractual forum selection clause designating Saudi Arabia as the parties' choice of forum.  J.A.373.  Third, the district court mistakenly considered AdvanFort's arguments as a challenge to the Saudi judicial system "as a whole," J.A.372-374, and failed to consider the specific issues raised as to the particular claims alleged in the complaint.  Fourth, the district court relied on the prior Saudi litigation between Zamil and AdvanFort to the complete exclusion of other evidence supporting AdvanFort's position.  The sum of these errors resulted in an abuse of discretion.

> i.   AdvanFort Provided Specific Evidence of Unfairness.

AdvanFort presented detailed evidence regarding the unfairness that the Saudi courts would likely display in regard to its claims.  Among other things, AdvanFort:

- identified a specific instance where its employees or affiliates had previously been threatened in Saudi Arabia, J.A.030-031;

40

- submitted testimony that as a result of this litigation concerning improprieties of the Saudi government, an AdvanFort executive fears for his physical safety and would not ask his employees to travel to Saudi Arabia in light of these fears, J.A.228; and

- submitted expert testimony that AdvanFort affiliates and witnesses would "likely be subject to physical and cyber surveillance, and possibly detention and prosecution if they were to travel to Saudi Arabia." J.A.247.

- submitted further expert testimony describing instances where individuals challenging government action, even in commercial settings, were subject to retribution in Saudi Arabia.  J.A.233-234; J.A.236-237.

As for the district court's characterization of AdvanFort's evidence as "anecdotal," it failed to consider the nearly fifty exhibits submitted with AdvanFort's expert report.  J.A.004-005.  These exhibits include writings not only from the U.S. State Department but the International Bar Association's Human Rights Institute, Human Rights Watch, the Freedom Initiative, the U.S. Commission in International Religious

41

Freedom, numerous reputable news organizations, including the *New York Times*, and statements by the Saudi Crown Prince himself acknowledging "discrepancies in decisions and a lack of clarity in the principles governing facts and practices" in Saudi courts.  J.A.271; *see generally* J.A.229-247 (citing sources).

This level of substantiation stands in stark contrast to the types of unsupported allegations courts reject as "anecdotal." *See, e.g., Conflict Kinetics, Inc. v. Goldfus*, 577 F. Supp. 3d 459, 464 (E.D. Va. 2021) (plaintiff alleged without support that "it is possible, if not probable, that Conflict Kinetics would suffer some prejudice by bringing this suit in an Israeli court"); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006) (plaintiff offered no personal testimony on corruption); *Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir. 2002) (rejecting defendant's submissions as bare denunciations and sweeping generalizations).[13]

---

[13] Recent events reinforce the record evidence that AdvanFort supplied. On February 6, 2024, Senator Hassan called the very same Administrative Court (the Board of Grievances) "notoriously not independent and under the direct influence of the Saudi regime." C-SPAN *Consulting Company Executives Testify on Foreign Influence in the U.S.*,

ii.  The District Court Improperly Relied on Inapposite Forum Selection Clause Cases and Cases Involving Non-U.S. Nationals.

The district court erred in relying on inapposite cases while disregarding AdvanFort's legal support.  None of the cases cited by the court presented claims akin to the allegations raised by AdvanFort. Many of the cases, for example, involved a forum selection clause which, if valid and enforceable, is presumptive evidence that the plaintiff agreed to the alternative forum's adequacy.  *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 875 (D.C. Cir. 2019); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 290–91 (5th Cir. 1989); *Alayan v. Permanent Mission of Saudi Arabia to the United Nations*, No. 18-CV-10068 (ALC), 2021 U.S.

---

(Feb. 6, 2024), https://www.c-span.org/video/?533391-1/consulting-company-executives-testify-foreign-influence-us.  This statement was made at a congressional hearing after Saudi Arabia's sovereign wealth fund, the Public Investment Fund, which now holds a 40% stake in Zamil, *see supra* note 1, sought and obtained a preliminary injunction in the Administrative Court blocking American companies from complying with a congressional subpoena and threatening criminal penalties to those companies' employees if they complied with the congressional subpoena. Homeland Security & Governmental Affairs, Memorandum from Richard Blumenthal to Members of the Permanent Subcommittee on Investigations (Feb. 1, 2024) https://www.hsgac.senate.gov/wp-content/uploads/2024-2-1-Memorandum-from-Chairman-Blumenthal-to-Members-of-PSI.pdf.

Dist. LEXIS 93354, at *4-5 (S.D.N.Y. May 17, 2021); *CDM Smith Inc. v. Atasi*, 594 F. Supp. 3d 246, 260 (D. Mass. 2022)). There is no forum selection clause present in this case, and AdvanFort presented substantial evidence of the inadequacy of the Saudi courts.

Other cases upon which the district court relied involved non-American plaintiffs who, despite their minimal contacts, sought out U.S. courts for relief. J.A.373-374 (citing *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (Saudi plaintiff suing in U.S. Courts); *Ahmed v. Boeing Co.*, 720 F.2d 224, 225 (1st Cir. 1983) (relatives of Pakistani citizens suing in U.S. courts)). Here, however, the district court denied a Virginia citizen the use of a federal court in Virginia, disregarding its forum preference.

The district court also relied on decades-old cases considering Saudi courts as an alternative forum. J.A.373. In so doing, the district court disregarded the fact-intensive and highly case-specific nature of the inquiry, which in this case demonstrates the forum is not adequate for these claims. *See Deb v. Sirva, Inc.*, 832 F.3d 800, 813 (7th Cir. 2016) (reversing district court's dismissal on *forum non conveniens* grounds and

criticizing defendant's overreliance on "the generalized conclusion that in other cases, involving other facts and other parties").

     iii.   The District Court Failed to Tailor the *Forum Non Conveniens* Analysis to the Specific Claims Brought by AdvanFort.

The competence and impartiality of the Saudi judiciary in general and for all types of cases is not at issue in this case. AdvanFort emphasized this in its briefing to the district court. J.A.154 ("As AdvanFort asserts claims accusing multiple elements of the Saudi government and a powerful family of misconduct, it is extremely unlikely that the courts of Saudi Arabia would adjudicate AdvanFort's claims in a fair and impartial manner."). Just as courts have found that Saudi Arabia is an adequate forum for some claims, courts have conversely found the opposite in other cases, holding Saudi courts as inadequate. *See Petersen*, 108 F. Supp. 3d at 731-33 (Saudi labor courts were not an adequate forum); *see also Rhodes*, 9 Mass. L. Rep. at 355 (recognizing that Saudi Arabia court procedures discriminate against certain groups and declining to dismiss for *forum non conveniens*); *UNC Lear Servs.*, 2008 U.S. Dist. LEXIS 62881, at *54-55 (noting that in Saudi Arabia there is a "genuine question as to whether all parties – non-Muslims –

45

will be 'treated fairly,'" and declining to dismiss for *forum non conveniens*).

iv.   The District Court Placed Undue Weight on the
      Prior Litigation Between Zamil and AdvanFort.

The district court erred by affording significant weight to the fact that AdvanFort previously litigated a claim against Zamil in Saudi Arabia. J.A.373. This Court has expressly rejected that approach. In *SAS Inst., Inc. v. World Programming Ltd.*, this Court reviewed the *forum non conveniens* dismissal of a North Carolina software company's copyright infringement claims against a British software company where the North Carolina company simultaneously filed suit in the United Kingdom. *See SAS Inst., Inc. v. World Programming Ltd.*, 468 F. App'x 264, 266-67 (4th Cir. 2012) (reversing the *forum non conveniens* dismissal at *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2011 U.S. Dist. LEXIS 28507, at *2 (E.D.N.C. Mar. 17, 2011)). In allowing the foreign defendant's motion to dismiss, the district court relied heavily on the fact that the plaintiff had previously elected to file suit in the United Kingdom. *See SAS Inst.,* U.S. Dist. LEXIS 28507, at *13-14. This Court reversed, ruling that the "district court gave undue weight to the fact that

46

the parties were engaged in parallel U.K. litigation." *SAS Inst., Inc.*, 468 F. App'x at 266. The Court held that a prior choice of a plaintiff to litigate in an alternative forum "bears only marginally on the touchstone of the *forum non conveniens* analysis," and its relevance is limited to the convenience consideration in considering the public or private interests. *Id. (*citing *Adelson v. Hananel*, 510 F.3d 43, 53 (1st Cir. 2007)*); see also Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir. 2000) (rejecting argument that voluntary participation in litigation in a foreign tribunal is inconsistent with the belief that that tribunal provides an impartial forum that comports with due process).

Rather than treating the evidence as only "marginally" relevant to the convenience considerations, and only in connection with the weighing of public and private interests, the district court here relied heavily on AdvanFort's prior Saudi litigation as evidence that the Saudi courts are adequate to hear these claims against these parties. J.A.373. This was error. *See SAS Inst., Inc.*, 468 F. App'x at 266; *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000) (noting that existence of related litigation was not mentioned as relevant factor in *forum non conveniens* test set forth by Supreme Court and finding that it was

47

"unsound" for the district court to give related litigation in Egypt decisive weight); *Adelson*, 510 F.3d at 53-54 (holding that district court erred in ignoring presumption in favor of U.S. citizen's choice of U.S. forum because of existence of concurrent litigation in Israel).[14]

E. <u>The District Court Abused Its Discretion in Its Weighing of the Public and Private Interest Factors.</u>

The district court erred once more at the final step of the inquiry, where it was required to consider whether "the alternative forum is more convenient in light of the public and private interests involved." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800 (4th Cir. 2013).[15] Dismissal is only appropriate where the relevant public and private

---

[14] Even the marginal relevance those courts afforded prior litigation in the weighing of the public and private factors is not present here. The prior Saudi litigation involved only Zamil and did not include the Ports Authority. The prior case did not raise issues of government impropriety, undue influence, and theft, in contrast to the suit here – all issues that would make it much more difficult to obtain fair treatment in the Saudi courts.

[15] This Court need not reach the error to reverse. If (as here) no adequate alternative forum for the claims exists, "the inquiry ends, and the motion to dismiss [should be] denied." *Poly-Med, Inc.*, 2016 U.S. Dist. LEXIS 20815, at *29-30 n.13 (citation omitted); *see Piper Aircraft*, 454 U.S. at 254 n.22 ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum.").

interests "strongly" favor an alternate forum. *SAS Inst., Inc.*, 468 F. App'x at 266.

This analysis begins with the "strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft*, 454 U.S. at 256. That presumption may only be overcome where the "private and public interest factors clearly point towards trial in the alternative forum." *Id.* at 255. While this Court reviews for an abuse of discretion, the "emphasis on the district court's discretion . . . must not overshadow the central principle of [Supreme Court precedent] that 'unless the balance [of these factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reid-Walen*, 933 F.2d at 1394. The district court did not heed this instruction.

### 1. The District Court Afforded No Deference to AdvanFort's Choice of Forum.

The district court erred by failing to afford any deference to AdvanFort's forum choice, even though a plaintiff's decision to sue in its home forum is entitled to heightened deference. The district court's approach contravenes this Court's instruction that, prior to reviewing the public and private interests, the court must first "establish the appropriate level of deference owing to the [Plaintiff's] choice of forum."

49

*DiFederico*, 714 F.3d at 802.[16]  Even where a defendant seeks "dismissal against a non-citizen plaintiff," the defendant must show that the "relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Id.* (quoting *Tang*, 656 F.3d at 246). Where, as here, a plaintiff sues in its home forum, courts must apply "increased deference in their analysis." *Id.* at 803.  A plaintiff's home forum is "presumed to be convenient." *MicroAire Surgical Instruments v. Arthrex, Inc.*, No. 3:09-cv-00078, 2010 U.S. Dist. LEXIS 70191, at *14-15 (W.D. Va. Jul. 13, 2010) (collecting cases).   This Circuit requires "affirmative evidence" that the district court applied the correct level of deference.   *DiFederico*, 714 F.3d at 803 (citing *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101-03 (11th Cir. 2004)).

The district court here afforded no deference to AdvanFort's choice.

---

[16] Other circuits consider this issue at different stages of the *forum non conveniens* analysis but all afford deference. *See, e.g.*, *Lust v. Nederlandse Programma Stichting*, 501 F. App'x 13, 14-15 (2d Cir. 2012) (considering deference as first step of *forum non conveniens* inquiry); *Chigurupati v. Daiichi Sankyo Co.*, 480 F. App'x 672, 674 (3d Cir. 2012) (considering deference at second step); *InduSoft, Inc. v. Taccolini*, 560 F. App'x 245, 250-51 (5th Cir. 2014) (considering deference at end of inquiry); *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016) (considering deference at first step).

50

Nowhere in the district court's opinion is there *any* mention of any deference, much less the "affirmative evidence" required. *See DiFederico*, 714 F.3d at 803.[17]

As a plaintiff suing in its home forum, AdvanFort is entitled to increased deference. *See id.* ("Courts considering a motion to dismiss under *forum non conveniens* against a citizen plaintiff choosing her home forum *must* apply this increased deference in their analysis.") (emphasis added). A failure to apply this heightened deference is reversable error. *See id.*

The district court erred in discounting AdvanFort's Virginia citizenship because it "elected to do business with Zamil in Saudi Arabia." J.A.375. This is wrong both as to the conclusion and the approach. AdvanFort's business operates from its United States headquarters, and its vessels operate in international waters. J.A.007; J.A.013.

---

[17] The only mention of deference in the district court's reasoning was its statement at the hearing that "because the contract in this entire business relationship between the Virginia company occurs in a foreign country, there's a little bit less deference that's even given to the plaintiff's choice of forum." J.A.362. Rather than consider whether the weighing of the public and private interests "strongly favor[s] a specific, adequate, and available alternative forum," *Tang*, 656 F.3d at 246, the district court simply determined (incorrectly) that some factors weighed in favor of suit in Saudi Arabia and dismissed on this basis.

AdvanFort's contact with Saudi Arabia in this case was limited to using a shipyard close to where the *Virginia* had been operating to make routine repairs to the vessel. J.A.007; J.A.008; J.A.014; J.A.016-022.

The district court was wrong to use this single event to strip AdvanFort of the deference owed to its forum choice. Discounting the plaintiff's choice of forum is generally limited to circumstances where the American corporation's contacts with the foreign forum were so expansive such that it should reasonably expect to litigate in that forum. *See DiFederico*, 714 F.3d at 807 (emphasizing this was "not a case where the plaintiff is a corporation doing business abroad that should expect to litigate in foreign courts"); *EFCO Corp. v. Aluma Sys. USA, Inc.*, 268 F.3d 601, 603 (8th Cir. 2001) ("Whether or not an American corporation which chooses an American forum for its lawsuit will have its choice of forum preference discounted because it does extensive business abroad, will often depend on the particular facts and circumstances of the case."); *Airflow Catalyst Sys. v. Huss Techs. GmbH*, No. 11-CV-6012 CJS, 2011 U.S. Dist. LEXIS 127302, at *16 (W.D.N.Y. Nov. 2, 2011) (noting that "the Court does not understand the Second Circuit to have indicated that every corporation which does business abroad, no matter how limited, is

entitled to reduced deference in its choice of forum[,]" and finding that plaintiff's choice of forum should be afforded substantial deference because its commercial transactions within the alternative forum were limited).

Where a plaintiff's contacts with the alternative foreign forum were insubstantial or fleeting and the business was solicited by foreign companies, courts defer to the plaintiff's forum choice. For example, in *Lehman v. Humphrey Cayman, Ltd.*, the American plaintiff's contact with the Cayman Islands was limited to a short vacation, whereas the defendant had engaged in a "systematic advertising" campaign in the plaintiff's home state. The Eighth Circuit reversed the district court's *forum non conveniens* dismissal because it had made "no finding of exceptional circumstances or that the defendants' interests 'strongly' favored dismissal." *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 342 (8th Cir. 1983). By contrast, in *EFCO Corp.,* the court affirmed an application of reduced deference to the plaintiff's choice of forum because the plaintiff did extensive business in Canada and had an office there.

*EFCO Corp. v. Aluma Sys. USA, Inc.*, 145 F. Supp. 2d 1040, 1045-47 (S.D. Iowa 2000).

Here, AdvanFort did not engage in sustained business operations in Saudi Arabia. AdvanFort kept no employees, maintained no office, and solicited no business in Saudi Arabia. *Compare id.* at 1040 (extensive business in Canada with a Canadian branch); *C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1274 (M.D. Fla. 2007) (U.S. corporation having done business in Japan for forty years). Zamil, on the other hand, engaged in systematic marketing efforts in the United States. *See Lehman*, 713 F.2d at 342.

As the Eleventh Circuit has explained, it is "inappropriate for the district court to discount or reduce the deference owed to the chosen forum of [an] American plaintiff[] based on their decision to invest or transact business abroad." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1345-46 (11th Cir. 2020). That is especially true in circumstances where the plaintiff's foreign contacts are as minimal as AdvanFort's with Saudi Arabia. As such, the district court's refusal to afford any deference

54

to AdvanFort's choice to sue in its home jurisdiction requires reversal. *See DiFederico*, 714, F.3d at 803.

>    2. *The District Court Erred in Its Consideration of the Private Factors.*

The district court failed in its consideration of the private interest factors identified by the Supreme Court, including: "[1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive." *Am. Dredging Co.*, 510 U.S. at 448 (quoting *Gulf Oil Corp.*, 330 U.S. at 508-09).

To begin with, the district court wrongly shifted the burden to AdvanFort when it erroneously concluded that "AdvanFort's claims that its 'witnesses are located in the United States and this forum'" are "lacking in support." J.A.375 n.10. It is Zamil that carries the burden of persuasion "on all elements of the *forum non conveniens* analysis."

55

*Galustian*, 591 F.3d at 731 (quoting *El-Fadl*, 75 F.3d at 677) (internal quotations omitted).

Regardless, AdvanFort is a Virginia company whose employees "communicated with Jeddah Shipyard from Virginia," wired money "from Virginia," and sent an expert to inspect the vessel from the United States. J.A.020; J.A.032-033. Litigating in the United States. is much more convenient for AdvanFort. Its corporate witnesses are located in the United States, and specifically Virginia. J.A.227. On the other hand, none of AdvanFort's employees resides in Saudi Arabia. J.A.227. AdvanFort has already secured evidence of the vessel's damage so additional inspections are likely unnecessary. J.A.032-036. AdvanFort sent its American marine expert to perform an evaluation with video footage in September 2022. J.A.032-033. Other documents regarding the vessel's value are located in the United States. J.A.227. Many of the important documents are already in English. J.A.227; *see also* J.A.044-046.

Litigating in Saudi Arabia, on the other hand, would cause a host of issues. The parties would need to translate numerous documents into Arabic. J.A.227. AdvanFort would also need to arrange travel and

security for its employees and attempt to retain counsel in Saudi Arabia. J.A.227. AdvanFort would also be required to file two separate suits, one in the Commercial Court and one before the Administrative Court. J.A.242.

In contrast, the inconveniences Defendants would face by litigating in Virginia are slight. Zamil has already retained United States. counsel. Zamil Group corporate representatives already travel to the United States. to promote and solicit business from United States companies. J.A.009; J.A.016-021. To the extent that witnesses are not available,[18] evidence may be taken in their home jurisdiction or a more-convenient third location. This is commonplace for international litigation. The fact that there will be some burden on a party to translate documents and bring witnesses to the United States does not require dismissal because "[l]itigation is always burdensome and expensive[.]" *Klumba.Ua. LLC v. klumba.com*, No. 1:15-cv-760, 2017 U.S. Dist. LEXIS 213772, at *3 (E.D. Va. Sep. 11, 2017).

---

[18] Zamil's "barebones declaration observing that most of [its] employees and documents" are located in Saudi Arabia is the type of generalized statement regularly rejected as insufficient to justify dismissal by this Court. *SAS Inst., Inc.*, 468 F. App'x at 266-67; *DiFederico*, 714 F.3d at 807.

The district court's analysis focused exclusively on Zamil's claimed convenience in litigating at home. At bottom, the district court thought it more convenient for Zamil to litigate in Saudi Arabia. But that is not the standard by which to weigh the competing interests. The district court's actions "merely shift[ed] the balance of inconvenience in defendant[s'] favor," where the standard actually requires the opposite. *Lockwood Bros., Inc. v. Arnold Speditions GmbH*, 453 F. Supp. 2d 928, 936 (E.D. Va. 2006) (quoting *E. Scientific Mktg., Inc. v. Tekna-Seal, Inc.*, 696 F. Supp. 173, 180 (E.D. Va. 1988) (internal quotations omitted)).

### 3. The District Court Materially Misappraised the Public Interests.

Contrary to the district court's view, the public interest factors weighed heavily in favor of respecting AdvanFort's choice of forum. Those factors include: "(1) [a]dministrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; and (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or in application of foreign law; (5) and the unfairness of burdening citizens in an unrelated

58

forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp.*, 330 U.S. at 509).

The district court's assessment of the public interests relied on two material misapprehensions. First, the district court inexplicably considered that "the Commonwealth of Virginia's interests in this case are minimal." J.A.377. In fact, the United States as a whole – and Virginia in particular – has a strong interest in providing a forum for litigating AdvanFort's claims in light of the defendants' active solicitation of business here and the harm that has been caused in this forum. *See SME Racks, Inc.*, 382 F.3d at 1104 (explaining that the district court failed to recognize the "strong federal interest in making sure the plaintiffs who are United States citizens generally get to choose an American forum to bring suit"). AdvanFort negotiated the agreement in Virginia. J.A.020. It wired funds from its Virginia-based bank account. J.A.022. Defendants' actions injured AdvanFort in its business, which is based in Virginia. J.A.009. When a Virginia entity suffers a loss to its business, there are negative effects to the Commonwealth, whether it is in reductions-in-force to employees, reduced investment, or decreased tax revenue. These connections are not minimal. *See MicroAire Surgical*

*Instruments*, 2010 U.S. Dist. LEXIS 70191, at *32 (explaining that "[a]lthough many of the facts underlying the dispute occurred in another country, the relation of the parties to the plaintiff's chosen forum undoubtedly bears on" the interest in hearing localized controversies at home).

Each state has a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 473 (1985); *Creager v. Masuo Yoshimoto*, No. C 05-01985 JSW, 2006 U.S. Dist. LEXIS 14048, at *15-16, 19-20 (N.D. Cal. Mar. 14, 2006) (observing that "[b]ecause a forum state has an enhanced interest when the case involves the injury of its own citizen, California has a strong interest in providing a forum for Plaintiff" and denying the plaintiff's motion to dismiss for *forum non conveniens*). Moreover, the United States also has an interest in providing a forum for the "60djudicate[ion of] matters affecting its residents." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 107 (2d Cir. 2000).

Hearing this case will not unfairly burden a local jury since the plaintiff claiming injury is a "resident of the community." *See Carter v.*

*Trafalgar Tours, Ltd.*, 704 F. Supp. 673, 679-80 (W.D. Va. 1989). Judicial economy would be served by having this case in Virginia, where all the claims against all parties can be heard together, as opposed to the Saudi courts, which would require the splitting of the case between the Saudi Commercial Court and the Administrative Court, which only "increases the possibility of overlapping, piecemeal litigation that is inherently inconvenient for both the parties and the courts." *Dirtt*, 65 F.4th at 555.

While foreign law could apply to aspects of this dispute, the need to apply foreign law is never enough on its own to favor *forum non conveniens* dismissal. *See Piper Aircraft*, 454 U.S. at 260 n.29 (holding the need to apply foreign law "alone is not sufficient to warrant dismissal"); *DiFederico*, 714 F.3d at 807-08 (district court erred by finding difficulty in applying Pakistani law favored dismissal). "'[F]ederal courts are quite capable of applying foreign law when required to do so,'" and reviewing and interpreting foreign legal sources "is precisely the kind of work American judges perform on a daily basis." *DiFederico*, 714 F.3d at

61

807-08 (quoting *Lehman*, 713 F.2d at 345). Courts in the United States regularly apply foreign law, including Saudi law.[19]

In short, nearly all the public interests weigh heavily in favor of Virginia. The district court's failure to find as much was an abuse of discretion.

## II. The District Court Abused Its Discretion by Denying Limited Discovery Into Disputed Issues of Fact Relevant to *Forum Non Conveniens*.

The district court failed to permit AdvanFort to take discovery regarding critical factual disputes relevant to *forum non conveniens*. In its Motion for Limited Discovery, AdvanFort requested limited discovery related to *forum non conveniens* on two general topics: (1) the adequacy or fairness of Saudi Arabia as a forum, and (2) the location and language of witnesses and evidence. J.A.361; J.A.276-277. The district court, in its Order, improperly relied on a more limited set of facts or accepted

---

[19] *See, e.g., Arabian Trading & Chem. Indus. Co. Ltd. v. B.F. Goodrich Co.*, 823 F.2d 60, 62-63 (4th Cir. 1987); *Nat'l Group for Communs. & Computers Ltd. v. Lucent Techs. Int'l Inc.*, 331 F. Supp. 2d 290, 293-301 (D.N.J. 2004); *Chadwick v. Arabian Am. Oil Co.*, 656 F. Supp. 857, 860-62 (D. Del. 1987); *see also Levine v. Arabian Am. Oil Co.*, No. 84 Civ. 2396 (RLC), 1985 U.S. Dist. LEXIS 13386, at *24 (S.D.N.Y. Nov. 27, 1985) (citing federal cases applying Saudi law).

contradictory representations made by Zamil in its motion. J.A.370-378. Both issues would have been cured by permitting limited discovery.

Limited discovery is appropriate in instances where there are factual disputes relevant to questions of *forum non conveniens. See, e.g.*, *Masaitis v. Marriott Int'l, Inc.*, No. GLS-18-3388, 2020 U.S. Dist. LEXIS 242765, at *5-6 (D. Md. Dec. 28, 2020); *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 546 (E.D. Va. 1996). Courts often grant limited discovery particularly when the adequacy of a forum is challenged, as this is a "fact-based inquiry." *See, e.g.*, *In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.*, 131 F. Supp. 2d 1027, 1029 (S.D. Ind. 2001); *Norex Petroleum Ltd. v. Access Indus.*, No. 02 Civ. 1499 (LTS)(KNF), 2003 U.S. Dist. LEXIS 4276, at *5-7 (S.D.N.Y. Mar. 21, 2003); *Base Metal Trading S.A. v. Russian Aluminum*, No. 00 Civ. 9627 (JGK)(FM), 2002 U.S. Dist. LEXIS 8516, at *10 (S.D.N.Y. May 13, 2002).

The district court abused its discretion by refusing to permit limited discovery into the adequacy of Saudi Arabia's tribunals as a forum as applied to a suit by AdvanFort against Zamil and the Ports Authority. By refusing limited discovery, the court prevented AdvanFort from

presenting further evidence of any communications between Zamil and the witnesses in the previous litigation in Saudi Arabia or any *ex parte* communications between Zamil and the judges or other court personnel regarding the previous litigation in Saudi Arabia.  J.A.276-277.  Such evidence would be directly relevant to assessing the fairness of another litigation in Saudi Arabia.

Further, the court abused its discretion by relying on Zamil's bare assertions that certain unnamed witnesses are located in Saudi Arabia and that "many" relevant documents are in Arabic and that "many" relevant employees do not speak English.  J.A.138.  As explained above, the court improperly turned the burden of persuasion on AdvanFort, by noting that AdvanFort had not specifically identified any witnesses and their locations.  J.A.375 n.10.  AdvanFort would have likely been able to identify the likely relevant witnesses, their locations, and the languages they spoke, had limited discovery been permitted.  Accordingly, the district court abused its discretion in denying AdvanFort's Motion for Limited Discovery.

## CONCLUSION

We respectfully request this Court reverse the judgment below.

## REQUEST FOR ORAL ARGUMENT

Plaintiff-appellant AdvanFort Company requests oral argument. Oral argument would assist in the resolution of the significant and recurring issues presented by this appeal.

SUBMITTED BY:

*/s/ Peter A. Sullivan*

Clara Brillembourg
FOLEY HOAG LLP
1717 K Street N.W.
Washington, D.C. 20006
Tel. (202) 261-7334

Peter A. Sullivan
FOLEY HOAG LLP
1301 Ave. of the Americas
New York, NY 10019
Tel. (212) 812-0310

Stephen Robin
FOLEY HOAG LLP
4643 S. Ulster Street
Denver, CO 80237
Tel. (720) 782-5084

Andrew B. Loewenstein
Roseanna K. Loring
Matthew F. Casassa
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel. (617) 832-1000

Benjamin L. Hatch
MCGUIREWOODS LLP
101 West Main Street
Norfolk, VA 23510
Tel. (757) 640-3700

*Attorneys for Plaintiff-Appellant AdvanFort Company*

65

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B)(i) and Local Rule 32(b) because it contains 12,666 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word version 2401 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: March 27, 2024

*/s/ Peter A. Sullivan*

*Attorney for Plaintiff-Appellant AdvanFort Company*

## CERTIFICATE OF SERVICE

I, Peter A. Sullivan, a member of the Bar of this Court, hereby certify that on March 27, 2024, I caused the foregoing document to be filed with the Clerk of the United States Court of Appeals for the Fourth Circuit. I certify that service on all case participants will be accomplished through the Court's CM/ECF system or, for case participants not registered for service through the CM/ECF system, by third-party commercial carrier to the address(es) listed in the docketing statement.

Dated: March 27, 2024

*/s/ Peter A. Sullivan*

*Attorney for Plaintiff-Appellant AdvanFort Company*