**Appeal No. 24-1007**

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

▶◄◄

_____

ADVANFORT COMPANY

*Plaintiff-Appellant,*

v.

ZAMIL OFFSHORE SERVICES COMPANY and SAUDI PORTS AUTHORITY.

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Eastern District of Virginia
Case No. 1:23-cv-906-LMB-IDD
Hon. Leonie M. Brinkema

## BRIEF OF APPELLEE
## ZAMIL OFFSHORE SERVICES COMPANY

Richmond T. Moore
John S. Williams
Nicholas A. Maricic
Janae N. Staicer
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, D.C. 20024
Tel. (202) 434-5000

*Attorneys for Defendant-Appellee Zamil Offshore Services Company*

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES ...................................................... x

INTRODUCTION ...................................................................... 1

STATEMENT OF THE CASE ........................................................ 3

SUMMARY OF ARGUMENT ........................................................ 8

STANDARD OF REVIEW ........................................................... 9

ARGUMENT ........................................................................... 10

    I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE COMPLAINT BASED ON *FORUM NON CONVENIENS*. ........................... 10

        A.    The Ports Authority's Default Did Not Preclude the Court from Granting the Motion to Dismiss ................ 10

            1.    AdvanFort Waived This Argument ........................... 11

            2.    The Ports Authority's Default Did Not Foreclose the District Court's Order ........................ 12

        B.    All the Factors Weigh In Favor of Dismissal ..................... 18

            1.    Saudi Courts are Available ........................................ 18

            2.    The Saudi Courts are Adequate. ............................... 27

            3.    The Public and Private Interest Factors Favor Saudi Arabia. ....................................... 39

                a.    The Private Interest Factors Favor Saudi Arabia. ...................................... 39

                b.    The Court Gave Appropriate Deference to Plaintiff's Choice of Forum. ................................................. 44

c.    The Public Interest Factors Favor
Saudi Arabia. .......................................................46

II.    THE DISTRICT COURT DID NOT ABUSE ITS
DISCRETION IN DENYING ADVANFORT'S
MOTION FOR DISCOVERY.......................................................48

III.    THE DISTRICT COURT LACKED PERSONAL
JURISDICTION OVER ZAMIL...................................................50

A.    Zamil Did Not Purposefully Avail Itself of the
Privilege of Doing Business in Virginia. ..............................52

B.    AdvanFort's Claims Do Not Arise Out of or
Relate to Zamil's Alleged Activities in Virginia. .................56

C.    The Exercise of Jurisdiction Would be
Constitutionally Unreasonable. ...........................................57

CONCLUSION.................................................................................59

REQUEST FOR ORAL ARGUMENT.............................................61

CERTIFICATE OF COMPLIANCE ................................................62

CERTIFICATE OF SERVICE .........................................................63

ii

# TABLE OF AUTHORITIES

Page

## CASES

*Acosta v. Costa*,
   2024 WL 1117585 (D.N.J. Mar. 14, 2024)......................................16

*AdvanFort Co. v. Cartner*,
   2015 WL 12516240 (E.D. Va. Oct. 30, 2015)..................................45

*AdvanFort Co. v. Mar. Exec., LLC*,
   2015 WL 4603090 (E.D. Va. July 28, 2015) ...................................45

*Ahmed v. Boeing Co.*,
   720 F.2d 224 (1st Cir. 1983) .........................................................29

*Al-Salamah Arabian Agencies Co. v. Reece*,
   673 F. Supp. 748 (M.D.N.C. 1987) ...............................................29

*Alayan v. Permanent Mission of Saudi Arabia to the United Nations*,
   2021 WL 1964078 (S.D.N.Y. May 17, 2021) ........................*passim*

*Asahi Metal Indus. Co. v. Superior Ct.*,
   480 U.S. 102 (1987).......................................................................59

*Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*,
   891 F.3d 615 (6th Cir. 2018).........................................................13

*Atkinson v. Godfrey*, 2024 WL 1916760 (4th Cir. May 2, 2024) ......................34

*Azima v. RAK Inv. Auth.*,
   926 F.3d 870 (D.C. Cir. 2019).......................................................36

*Cabiri v. Assasie-Gyimah*,
   921 F. Supp. 1189 (S.D.N.Y. 1996)...............................................32

*CDM Smith Inc. v. Atasi*,
   594 F. Supp. 3d 246 (D. Mass. 2022)..................................35, 36, 37

*Centcorp Invs., Ltd. v. Folgueira*,
   2014 WL 12584298 (S.D. Fla. Sept. 4, 2014) ...............................13

iii

Page

Cases—cont'd:

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189 (4th Cir. 2009) ................................................................27, 43

*Conflict Kinetics, Inc. v. Goldfus*,
577 F. Supp. 3d 459 (E.D. Va. 2021) ....................................................28, 40, 47

*Conopco, Inc. v. Rebel Smuggling, LLC*,
2021 WL 5909831 (E.D. Va. Dec. 14, 2021)....................................................58

*Consulting Engineers Corporation v. Geometric Limited*,
561 F.3d 273 (4th Cir. 2009)..........................................................................*passim*

*D & S Consulting, Inc. v. Kingdom of Saudi Arabia*,
322 F. Supp. 3d 45 (D.D.C. 2018) ....................................................27, 37, 47

*DiFederico v. Marriott Int'l, Inc.*,
714 F.3d 796 (4th Cir. 2013)....................................................................44, 45

*DIRTT Env't Sols., Inc. v. Falkbuilt Ltd.*,
65 F.4th 547 (10th Cir. 2023) ....................................................................13, 20

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002)............................................................................13

*Ellicott Machine Corporation v. John Holland Party*,
995 F.2d 474 (4th Cir. 1993)..........................................................................*passim*

*Feller v. Brock*,
802 F.2d 722 (4th Cir. 1986)............................................................................16

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020)............................................................................53

*Fintech Fund, F.L.P. v. Horne*,
836 F. App'x 215 (5th Cir. 2020)............................................................14, 15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)............................................................................................56

iv

Page

Cases—cont'd:

*Forsythe v. Saudi Arabian Airlines Corp.*,
   885 F.2d 285 (5th Cir. 1989)..............................................29, 30, 31

*Frow v. De La Vega*,
   82 U.S. 552 (1872)..............................................................17

*Gallagher v. Marriott Int'l, Inc.*,
   2020 WL 6263188 (D. Md. Oct. 23, 2020)........................................21

*Galustian v. Peter*,
   591 F.3d 724 (4th Cir. 2010)..............................................13, 23

*Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*,
   2012 WL 12863341 (M.D. Fla. Aug. 31, 2012)................................16

*Gines v. D.R. Horton, Inc.*,
   867 F. Supp. 2d 824 (M.D. La. 2012)..........................................14

*Goldfarb v. Channel One Russia*,
   442 F. Supp. 3d 649 (S.D.N.Y. 2020)..........................................32

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)......................................................40, 46

*Hardeman v. City of Albuquerque*,
   377 F.3d 1106 (10th Cir. 2004)..............................................24

*Hartford Fire Ins. Co. v. Sunteck Transp. Grp., Inc.*,
   2011 WL 2938466 (E.D. Va. June 29, 2011)..................................14

*Hicks v. Ferreyra*,
   965 F.3d 302 (4th Cir. 2020)................................................11

*In re Disaster at Riyadh Airport*,
   540 F. Supp. 1141 (D.D.C. 1982) ........................................*passim*

*In re Under Seal*,
   749 F.3d 276 (4th Cir. 2014)................................................24

Page

Cases—cont'd:

*Jeha v. Arabian Am. Oil Co.*,
    751 F. Supp. 122 (S.D. Tex. 1990) ................................................29

*Jeha v. Arabian Am. Oil*,
    936 F.2d 569 (5th Cir. 1991)........................................................29

*Jota v. Texaco, Inc.*,
    157 F.3d 153 (2d Cir. 1998) .........................................................13

*Kamel v. Hill-Rom Co.*,
    108 F.3d 799 (7th Cir. 1997)........................................................29

*Kontoulas v. A.H. Robins Company*,
    745 F.2d 312 (4th Cir. 1984) ........................................................21

*Lane v. Gray Transp., Inc.*,
    2021 WL 4392667 (N.D. W. Va. Sept. 24, 2021)........................53

*Lehman v. Humphrey Cayman, Ltd.*,
    713 F.2d 339 (8th Cir. 1983)........................................................45

*Martinez v. Mkt. Traders Inst., Inc.*,
    2016 WL 7322792 (M.D. Fla. Nov. 22, 2016)..............................16

*Mattiaccio v. Cantu Apiaries of Fla., LLC*,
    2022 WL 1597826 (E.D. Va. May 19, 2022)...........................54, 58

*Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co.*,
    686 F. Supp. 2d 558 (D. Md. 2010) .............................................21

*Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
    311 F.3d 488 (2d Cir. 2002) .........................................................28

*Moskovits v. Moskovits*,
    150 F. App'x 101 (2d Cir. 2005) ..................................................49

*Mujica v. Occidental Petroleum Corp.*,
    381 F. Supp. 2d 1134 (C.D. Cal. 2005) .......................................33

vi

Page

Cases—cont'd:

*Petersen v. Boeing Co.*,
   108 F. Supp. 3d 726 (D. Ariz. 2015)................................................36

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..........................................................*passim*

*Poly-Med, Inc. v. Novus Sci. Pte. LTD*,
   2016 WL 695625 (D.S.C. Feb. 22, 2016) ..................................13, 20

*PSINet Consulting Sols. Knowledge Servs., Inc. v. Saudi Petro Gas
   Co.*, 2001 WL 869616 (D. Minn. Aug. 1, 2001).................................29

*Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*,
   511 F.3d 437 (4th Cir. 2007)..........................................................50

*Ryan v. Homecomings Fin. Network*,
   253 F.3d 778 (4th Cir. 2001)..........................................................13

*Shields v. Mi Ryung Constr. Co.*,
   508 F. Supp. 891 (S.D.N.Y. 1981).........................................*passim*

*Sneha Media & Ent., LLC v. Associated Broad Co.*,
   911 F.3d 192 (4th Cir. 2018)......................................................53, 57

*Tang v. Synutra Int'l, Inc.*,
   656 F.3d 242 (4th Cir. 2011).................................................*passim*

*Tazoe v. Airbus S.A.S.*,
   631 F.3d 1321 (11th Cir. 2011)......................................................14

*Tyco Fire & Security, LLC v. Alcocer*,
   218 F. App'x 860 (11th Cir. 2007)..................................................12

*UMG Recordings, Inc. v. Kurbanov*,
   963 F.3d 344 (4th Cir. 2020)..........................................................51

*United States ex rel. Hudson v. Peerless Ins. Co.*,
   374 F.2d 942 (4th Cir. 1967)..........................................................17

Page

Cases—cont'd:

*United States v. AdvanFort Co.*,
   No. 13-cr-00053, Dkt. Nos. 6-7 (E.D. Va. Mar. 5, 2013) ................................4

*United States v. Zenon–Rodriguez*,
   289 F.3d 28 (1st Cir. 2002) ...................................................................24

*Universal Leather, LLC v. Koro AR, S.A.*,
   773 F.3d 553 (4th Cir. 2014).................................................................55

*Van Cauwenberghe v. Biard*,
   486 U.S. 517 (1988)..............................................................................49

*Wallace v. Yamaha Motors Corp.*,
   2022 WL 61430 (4th Cir. Jan. 6, 2022)..............................................57

*Weisner v. FLIR Sys., Inc.*,
   2019 WL 4962594 (E.D.N.C. Oct. 7, 2019) .......................................54

*Zeier v. G.F. Inv. Servs., LLC*,
   2019 WL 1244968 (D. Colo. Feb. 28, 2019)........................................15

## OTHER AUTHORITIES

U.S. Const. amend. XIV........................................................................51

28 U.S.C. § 1404 ...................................................................................16

14D Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.*
   § 3828 (4th ed.) .................................................................14, 16, 49

Abdullah Alaoudh, *Saudi Arabia is Slowly Killing My Father*,
   N.Y. Times (Dec. 30, 2020).................................................................25

## UPDATED DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 4th Cir. R. 26.1, Defendant-Appellee Zamil Offshore Services Company hereby certifies as follows:

1. Defendant-Appellee Zamil Offshore Services Company is a Saudi company. It is not a publicly held corporation or other publicly held entity.

2. Zamil Offshore Services Company is owned by Zamil Group Holding Company and The Public Investment Fund. Zamil Group Holding Company is owned by Al Jadarah Investment Company.

3. No publicly held corporation or other publicly held entity owns 10% or more of Zamil Offshore Services Company's stock.

4. No publicly held corporation or other publicly held entity has a direct financial interest in the outcome of this litigation.

5. Zamil Offshore Services Company is not a trade association.

6. This case does not arise out of a bankruptcy proceeding.

7. This is not a criminal case.

## STATEMENT OF THE ISSUES

1.    Did the district court abuse its discretion when it dismissed the complaint based on *forum non conveniens*?

2.    Did the district court abuse its discretion when it denied AdvanFort's motion for discovery?

3.    Did the district court lack personal jurisdiction over Zamil Offshore Services Company?

**INTRODUCTION**

This is a textbook case for dismissal based on *forum non conveniens*. Plaintiff-Appellant AdvanFort brought its ship to Saudi Arabia for repairs, and that is where the ship remains—in a shipyard in Jeddah. All the relevant events took place in Saudi Arabia. All the key witnesses and documents are in Saudi Arabia. Both Defendants-Appellees, Zamil Offshore Services Company ("Zamil") and the Saudi Ports Authority ("Ports Authority"), are in Saudi Arabia. And Saudi law will govern.

Moreover, this case relates to a dispute *that has already been litigated in Saudi Arabia*. Most of the factual allegations in the Complaint concern a fire that broke out on AdvanFort's ship in 2013 while it was being repaired in Jeddah. AdvanFort filed suit, and the parties litigated fault for the fire in the Saudi courts. In 2017, the Saudi trial court rejected AdvanFort's claims, and a Saudi appellate court affirmed the decision. Then AdvanFort did nothing. For more than five years, AdvanFort did and said nothing about retrieving the ship it left floating in the Saudi shipyard. It was not until 2022—after Zamil notified AdvanFort that its lease of the shipyard was expiring, and it would have no choice but to scrap the ship if AdvanFort did not come get it—that AdvanFort decided to try litigation again, this time in the Eastern District of

Virginia.  In a transparent attempt to plead around the *res judicata* effects of the Saudi judgment, AdvanFort's suit ostensibly is based on "new" damage to the ship since the 2013 fire and the frivolous claim that defendants are liable for millions of dollars in damages and lost profits for a ship that AdvanFort abandoned in the Red Sea.

The district court was well within its discretion to dismiss the complaint based on *forum non conveniens*.  Tellingly, AdvanFort's lead argument is one it never even raised in the district court: the district court was procedurally barred from considering the *forum non conveniens* motion because one of the defendants, the Ports Authority, defaulted.  Not only did AdvanFort waive this argument, but it is plainly incorrect.  Zamil's motion addressed the *forum non conveniens* issue as to *both* defendants, and the district court had the power to dismiss the Ports Authority *sua sponte*.  AdvanFort cites no applicable supporting authority for its erroneous new argument.

The remainder of AdvanFort's arguments seek to re-weigh the *forum non conveniens* factors, which overwhelmingly favor dismissal.  There is no serious question that if this case belongs anywhere, it is Saudi Arabia. AdvanFort has not shown the district court erred, much less abused its discretion, in dismissing this case based on *forum non conveniens*.

2

In the alternative, although the district court did not reach this issue, the Court can affirm the judgment because the district court lacked personal jurisdiction over Zamil. AdvanFort cannot distinguish two squarely applicable precedents—*Consulting Engineers Corporation v. Geometric Limited*, 561 F.3d 273 (4th Cir. 2009) and *Ellicott Machine Corporation v. John Holland Party*, 995 F.2d 474 (4th Cir. 1993)—that are dispositive of the jurisdictional analysis.

## STATEMENT OF THE CASE

*Parties.* From 2013 to 2023, Zamil operated a local shipyard in Jeddah, Saudi Arabia, which offered standard maritime construction and repair services. J.A.007, J.A.014, J.A.022, J.A.320. Zamil operated the shipyard pursuant to a lease from the Ports Authority, the Saudi governmental entity tasked with overseeing the country's ports.[1] J.A.010, J.A.320.

AdvanFort is a "multi-mission maritime security company," headquartered in Fairfax County, Virginia, in the business of chartering used

---

[1] In February 2024, the Saudi Public Investment Fund acquired a minority stake in Zamil. The Public Investment Fund does not control Zamil, and its ownership interest affords Zamil no immunity or special treatment by the Saudi courts. AdvanFort's brief asserts that members of the Zamil family serve on the Board of the Public Investment Fund, Opening Brief of AdvanFort Company ("Br.") at 6, but that is incorrect. No member of the Zamil family is on the board of the Public Investment Fund.

military ships, arming them, and deploying them to piracy hotspots around the world.[2]  J.A.009-013.  One such ship was the *Seaman Guard Virginia*, which AdvanFort chartered in 2012 and deployed to the Red Sea.  J.A.013.

*2013 Fire and Litigation in Saudi Arabia.*  In July 2013, AdvanFort contacted Zamil to arrange for the *Seaman Guard Virginia* to undergo repairs at the Jeddah shipyard.  J.A.016, J.A.020.  While the ship was being repaired, a fire broke out, causing damage to the vessel.  J.A.023.  Local officials investigated and determined the fire was caused by an electrical short circuit in the ship's living room.  J.A.025.  AdvanFort claimed the fire was caused by Zamil repairmen and filed suit against Zamil in Saudi Arabia.  J.A.028.  Zamil filed a countersuit, seeking to recoup its repair costs and outstanding berthing fees.  J.A.028, J.A.117.

For more than three years, the parties litigated the matter in the Saudi courts, with both sides submitting briefs, presenting witnesses, and advocating at oral argument.  J.A.031, J.A.099-123.  The Saudi trial court eventually found in Zamil's favor on liability, dismissing AdvanFort's

---

[2] On March 5, 2013, AdvanFort pleaded guilty to the felony of aiding and abetting the making of a false statement in connection with acquiring firearms. *United States v. AdvanFort Co.*, No. 13-cr-00053, Dkt. Nos. 6-7 (E.D. Va. Mar. 5, 2013).  It forfeited 27 firearms, paid a $180,000 fine, and served two years of probation.  *Id.* Dkt. Nos. 9, 17 (E.D. Va. Mar. 5, Sept. 5, 2013).

complaint, but awarding Zamil less than a third of the damages it sought. J.A.099-123.  AdvanFort appealed, and a Saudi appellate court affirmed in 2017.  J.A.124-135.

*AdvanFort Abandons the Seaman Guard Virginia.*  For the next five years, the ship—which AdvanFort now claims was worth millions of dollars— floated in the Jeddah shipyard.  AdvanFort did not make *any* efforts to retrieve the ship during those five years.  Unsurprisingly, the ship did not age well under the Saharan sun.  Years of exposure to salt water and extreme temperatures caused natural corrosion.  J.A.033.  In early 2022, to prevent the *Seaman Guard Virginia* from becoming an environmental and safety hazard, Zamil removed it from the water and placed it in a storage yard.  J.A.035.  To facilitate the transfer, Zamil removed the engines and other heavy components.  J.A.033-037.

In June 2022, with the end of Zamil's ten-year lease quickly approaching, Zamil informed AdvanFort that it needed to dispose of the *Seaman Guard Virginia* if AdvanFort did not come get it.  J.A.032.  Facing the threat of disposal, AdvanFort finally sent a representative to inspect the ship in September 2022.  J.A.033.  Despite full knowledge that the ship had needed additional repairs since 2013, and had been floating in one of the saltiest bodies

of water on earth for nearly a decade, AdvanFort allegedly was surprised to find a corroded, inoperable vessel.  J.A.033.  Again, however, AdvanFort did nothing.  In July 2023, ten months after its inspection (and ten years after the 2013 fire and nearly six years after losing its Saudi court case), AdvanFort filed an action in the Eastern District of Virginia.  J.A.007-042.

*AdvanFort's "New" Allegations.*  Recognizing that *res judicata* prohibited it from overtly relitigating the 2013 fire, AdvanFort's new suit alleges it has been "denied use" of the *Seaman Guard Virginia* since the fire because of the deterioration of the boat's condition.  J.A.037-041.  The Complaint alleged common-law claims for conversion, breach of bailment, negligence, and gross negligence—all premised on the theory that Zamil had a duty to maintain the ship while AdvanFort did and said nothing about reacquiring the vessel.  J.A.037-040.  AdvanFort claims it has suffered "tens of millions of dollars worth [sic] of damage due to the loss of the vessel, including but not limited to the loss of value of the vessel and lost profits from not having the vessel available for service."  J.A.037.[3]

---

[3] The Complaint raises many questions.  For example, it does not attempt to explain why AdvanFort abandoned such an allegedly valuable ship for so many years; how AdvanFort can suffer "loss of value of [a] vessel" it does not own, J.A.013, J.A.037; or why AdvanFort's alleged lost profits were caused by post-fire events rather than the 2013 fire that rendered the ship inoperable in the

*Procedural History.* In September 2023, Zamil moved to dismiss the Complaint based on *forum non conveniens* and lack of personal jurisdiction. J.A.049-138, J.A.293-336. AdvanFort opposed the motion and filed its own motion for discovery. J.A.139-292, J.A.337-349. On November 30, 2023—the day before oral argument—AdvanFort filed a request for default against the Ports Authority. J.A.350-355. The next day, December 1, 2023, the court held a hearing on Zamil's motion to dismiss and AdvanFort's motion for discovery and orally announced its decision. J.A.357-362. Later that day, the clerk entered a default against the Ports Authority, and the district court entered its order granting Zamil's motion to dismiss and denying AdvanFort's motion for discovery. J.A.356, J.A.363-379. The district court found Saudi Arabia was available, adequate, and more convenient in light of the public and private interests involved. J.A.363-378. The district court did not address the issue of personal jurisdiction. The district court entered judgment for both defendants. J.A.380.

---

first place, J.A.028 (alleging it has been "unable to perform contractual commitments or secure additional contracts" as far back as October 2013).

## SUMMARY OF ARGUMENT

*First*, the district court's dismissal of the case based on *forum non conveniens* was not an abuse of discretion.

As an initial matter, the Ports Authority's default did not procedurally bar the district court's order. AdvanFort did not make this argument below and waived it. But in any event, the district court was well within its powers to dismiss the Ports Authority *sua sponte* based on the arguments presented by Zamil as to both defendants. Courts regularly transfer cases with defaulting defendants to more convenient fora, and AdvanFort's proposed categorical rule against *forum non conveniens* dismissal if any party is in default is entirely unsupported.

The district court did not abuse its discretion in applying the *forum non conveniens* factors. AdvanFort's position that Saudi Arabia is not an available forum unless all its claims are heard by the *same* Saudi court—as opposed to separate courts located a few blocks apart—has never been adopted by any court. Likewise, AdvanFort contends that Saudi courts are inadequate because the Saudi legal system is corrupt, but cites the same recycled arguments that courts have routinely (and uniformly) rejected. AdvanFort's contention that the district court misappraised the public and private

8

convenience factors is plainly incorrect. Saudi Arabia is a far more convenient place to try this case considering nearly all the key evidence—the ship, the shipyard, witnesses, and documents—are located in Saudi Arabia. A Virginia court (and its jurors) would be tasked with applying Saudi law to a dispute involving two Saudi companies over services performed in Saudi Arabia, based on witnesses and documents largely translated from Arabic. The *forum non conveniens* factors weigh overwhelmingly in favor of the Saudi forum.

*Second*, the district court was well within its discretion to deny AdvanFort's motion for discovery. The record provided an ample basis for the district court to address the threshold issue of *forum non conveniens,* and AdvanFort has not identified any discovery that would change this analysis.

*Third*, although the district court did not reach the issue, this Court can also affirm the judgment on the alternate ground that the district court lacked personal jurisdiction over Zamil.

### STANDARD OF REVIEW

"The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is

9

reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

## ARGUMENT

### I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE COMPLAINT BASED ON *FORUM NON CONVENIENS*.

A case should be dismissed on the basis of *forum non conveniens* when an alternative forum is (i) available; (ii) adequate; and (iii) more convenient in light of the public and private interests involved. *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 136 (4th Cir. 2023) (quoting *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011)). The district court did not err, much less commit a "clear abuse of discretion," in dismissing the complaint under these factors. *Piper Aircraft Co.*, 454 U.S. at 257.

#### A. The Ports Authority's Default Did Not Preclude the Court from Granting the Motion to Dismiss.

AdvanFort first attempts to avoid the *forum non conveniens* analysis altogether by claiming the district court did not have the authority to grant the *forum non conveniens* motion because the Ports Authority was in default. Br. 20-24. This argument is both waived and wrong.

### 1. AdvanFort Waived This Argument.

"It is well established that this court does not consider issues raised for the first time on appeal . . . ." *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (citation omitted). According to AdvanFort, when one defendant defaults, it "foreclose[s]" a *forum non conveniens* dismissal for all parties. Br. 20-26. But AdvanFort never once argued to the district court that it would not have the authority to rule on Zamil's motion if the Ports Authority defaulted. The Ports Authority had not appeared when AdvanFort filed its opposition to Zamil's motion to dismiss, yet AdvanFort did not include in its brief any argument that a default by the Ports Authority would categorically preclude a *forum non conveniens* dismissal. When the Ports Authority's responsive pleading deadline passed on November 27, 2023, AdvanFort did not immediately seek a default and alert the district court that the pending motion to dismiss was foreclosed. Instead, AdvanFort waited until 7:40 P.M. on November 30, 2023, the night before oral argument, to file its request for a clerk's default. J.A.350-355. Under AdvanFort's theory, the default would render the next morning's hearing pointless. Again, however, AdvanFort's request did not say a word about the purported preclusionary effect a default would have on the pending motion to dismiss. *See* J.A.350-355. Nor did

11

AdvanFort attempt to raise this issue at oral argument, and it filed no post-judgment motion seeking correction of this allegedly dispositive error.

If the Ports Authority's default single-handedly defeated Zamil's motion, as AdvanFort now argues on appeal, then surely AdvanFort would have raised it below. Its failure to make this argument was a waiver. It also exposes AdvanFort's new argument for what it is—an erroneous, last-ditch effort to avoid its losing arguments under the *forum non conveniens* analysis.

### 2. The Ports Authority's Default Did Not Foreclose the District Court's Order.

In any event, AdvanFort's argument is a non-starter. AdvanFort's novel default-preclusion rule rests entirely on an out-of-circuit, unpublished decision in *Tyco Fire & Security, LLC v. Alcocer*, 218 F. App'x 860 (11th Cir. 2007), that is off-point.[4] In *Tyco Fire*, a *defaulting defendant* moved simultaneously to vacate a clerk's default and to dismiss based on *forum non conveniens*. *Id.* at 862. The district court denied the motion to vacate the default, but granted the *forum non conveniens* motion in the same order. *Id.* at 863. The Eleventh Circuit reversed, finding the district court's rulings to be "internally inconsistent" because a defendant in default is not entitled to raise a *forum*

---

[4] In the Eleventh Circuit, unpublished decisions like *Tyco Fire* are not precedential. *See* 11th Cir. R. 36-2.

*non conveniens* defense. *Id.* at 864. *Tyco Fire* differs from this case in a crucial respect: In *Tyco Fire*, the defaulting defendant was the *only* defendant that moved to dismiss on the basis of *forum non conveniens*. Here, Zamil filed its own motion to dismiss based on *forum non conveniens* as to both defendants. *Tyco Fire* says nothing about this situation—where there are multiple defendants, and the *forum non conveniens* arguments were fully briefed by a non-defaulting defendant. Thus, it is not instructive.

AdvanFort's other cited cases are equally inapposite. Br. 20-22, 24-26. It cites a case where, like *Tyco Fire*, a defaulting defendant made the *forum non conveniens* argument. *See Centcorp Invs., Ltd. v. Folgueira*, 2014 WL 12584298, at *3 (S.D. Fla. Sept. 4, 2014). It cites cases that do not even have a defaulting defendant. *See Galustian v. Peter*, 591 F.3d 724 (4th Cir. 2010); *DIRTT Env't Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547 (10th Cir. 2023); *Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615 (6th Cir. 2018); *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002); *Jota v. Texaco, Inc.*, 157 F.3d 153 (2d Cir. 1998); *Poly-Med, Inc. v. Novus Sci. Pte. LTD*, 2016 WL 695625 (D.S.C. Feb. 22, 2016). And it cites cases that have nothing to do with the doctrine of *forum non conveniens*. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778 (4th Cir. 2001); *Gines v. D.R.*

13

*Horton, Inc.*, 867 F. Supp. 2d 824 (M.D. La. 2012); *Hartford Fire Ins. Co. v. Sunteck Transp. Grp., Inc.*, 2011 WL 2938466 (E.D. Va. June 29, 2011). In *Jes Solar Co. v. Matinee Energy, Inc.*, the sole case cited by AdvanFort with both (i) a *forum non conveniens* argument by a non-defaulting defendant and (ii) at least one other defendant in default, the court did not hold that a default by one defendant categorically precludes a *forum non conveniens* dismissal. 2014 WL 2885476, at *2 (D. Ariz. June 25, 2014). Rather, it denied the *forum non conveniens* motion because it would have split the case between Arizona and South Korea. *Id.*

AdvanFort's default-preclusion argument also conflicts with settled law, established practice, and logic.

*First*, the Ports Authority did not need to file its own motion because the district court had the power to dismiss the Complaint based on *forum non conveniens sua sponte*. All the district court was required to do was ensure the parties were "first given the opportunity to present their views on the issue." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (citation omitted); *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 222 (5th Cir. 2020) (unpublished); 14D Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3828 (4th ed.) ("Wright & Miller") ("Courts appear to be in accord that

14

a court may raise *forum non conveniens* on its own motion, so long as the plaintiff is given notice and an opportunity to be heard on the matter.").

Both parties briefed the *forum non conveniens* analysis as to Zamil *and* the Ports Authority.  *See* J.A.063, J.A.067, J.A.086-097, J.A.138, J.A.152-153, J.A.163, J.A.230-232, J.A.241-243.  Indeed, AdvanFort's expert dedicated entire sections of his report to the Ports Authority.  J.A.241-243.  At oral argument, the district court explained that it was dismissing the case because it found all the *forum non conveniens* factors were satisfied as to *both* Zamil *and* the Ports Authority:

> I recognize that the other defendant has not entered an appearance, and, therefore, technically is in default. But the forum non conveniens analysis would apply equally to that defendant. So I'm going to dismiss this case.

J.A.362.  And its order addressed issues related to the Ports Authority.  *See, e.g.*, J.A.371-374.  Accordingly, the district court's dismissal of the whole case was entirely appropriate.  *See, e.g.*, *Fintech Fund, F.L.P.*, 836 F. App'x at 227 (affirming district court's *sua sponte* dismissal on the basis of *forum non conveniens*).

*Second*, the district court's order also was consistent with established practice in the analogous context of the federal change of venue statute, 28

15

U.S.C. § 1404. The *forum non conveniens* doctrine "informs the interpretation" of § 1404, and much of the analysis and application overlaps. Wright & Miller, *supra* § 3828. This Court has recognized that, like *forum non conveniens*, "the district court may consider the possibility of transfer *sua sponte*" under § 1404(a). *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986). And district courts frequently do just that—including when defendants are in default. *See, e.g.*, *Acosta v. Costa*, 2024 WL 1117585, at *1 (D.N.J. Mar. 14, 2024) (transferring case under § 1404(a) *sua sponte*, including defendant in default); *Martinez v. Mkt. Traders Inst., Inc.*, 2016 WL 7322792, at *1 (M.D. Fla. Nov. 22, 2016), *report and recommendation adopted*, 2016 WL 7243045 (M.D. Fla. Dec. 15, 2016) (same); *Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*, 2012 WL 12863341, at *1 (M.D. Fla. Aug. 31, 2012) (same); *Zeier v. G.F. Inv. Servs., LLC*, 2019 WL 1244968, at *3 (D. Colo. Feb. 28, 2019), *report and recommendation adopted*, 2019 WL 1242664 (D. Colo. Mar. 18, 2019) (similar).

*Third*, the district court's order was consistent with the long-established principle that defaulting defendants generally are entitled to benefit from applicable arguments made by non-defaulting co-defendants. More than 150 years ago, the Supreme Court explained that it would be an "absurdity" if a

plaintiff were able to obtain a default judgment against one defendant and lose a case on the merits to another defendant when the successful defense applied equally to the defaulting defendant. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). Therefore, to avoid inconsistent judgments, when a "defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant[.]" *United States ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (citation omitted). Although these cases addressed merits defenses, the same logic applies to *forum non conveniens*. It would be an "absurdity" if district courts were prohibited from applying non-defaulting defendants' meritorious *forum non conveniens* arguments to defaulting co-defendants.

*Finally*, AdvanFort's proposed categorical rule would lead to bizarre and confounding outcomes. It would mean the district court was within its powers to dismiss the Complaint up to the minute the clerk entered its default on December 1, 2023, but at that point it lost all authority, committed reversable error, *forum non conveniens* was rendered unavailable, and the entire case must be tried in Virginia instead of Saudi Arabia.

It also would create perverse incentives. The district court made a reasoned determination that it would be more convenient to try this case—

including both defendants—in Saudi Arabia. J.A.357-378. Despite that determination, AdvanFort would have this case remain in Virginia, burdening the foreign defendant, the district court, and Virginia jurors, all because the Ports Authority had not appeared. This would encourage future plaintiffs filing suit against foreign defendants to name as many tenuously connected foreign entities as defendants as possible, to increase the odds that one defaults and forever stymies a *forum non conveniens* dismissal. Thus, AdvanFort's argument is wrong and should be rejected.

## B. All the Factors Weigh In Favor of Dismissal.

The district court did not abuse its discretion in deciding that the case should be dismissed under the *forum non conveniens* factors. Saudi courts, which are already familiar with the facts that underlie this dispute, are available, adequate, and a more convenient forum to adjudicate AdvanFort's claims.

### 1. Saudi Courts are Available.

"Availability will ordinarily be satisfied when the defendant is amenable to process in the other jurisdiction." *Tang*, 656 F.3d at 249 (quoting *Piper Aircraft Co.*, 454 U.S. at 254 n.22) (internal quotation marks omitted). As the district court noted, AdvanFort did not dispute below that Saudi courts would

18

have jurisdiction over both defendants. J.A.370-371. It instead raised misguided arguments that were correctly rejected.

*First*, AdvanFort erroneously argues that Saudi Arabia is an unavailable forum because AdvanFort would have to bring its claims against Zamil and the Ports Authority in two different Saudi Courts: the Commercial Court and the Board of Grievances.[5] Br. 26-30.

As an initial matter, AdvanFort claims the "unrebutted evidence" shows its claims must be brought in different Saudi courts. *Id.* at 27, 30. That is false. Zamil's Saudi legal expert explained that the Board of Grievances has discretion to hear claims against both the Ports Authority and Zamil. *See* J.A.323-324. Indeed, the district court specifically noted this dispute between the legal experts: "the parties' Saudi Arabian attorneys dispute whether AdvanFort would have to sue each defendant in a different Saudi tribunal[.]" J.A.371. Thus, Zamil has rebutted AdvanFort's claim that "no single forum in Saudi Arabia exists." Br. 30.

Regardless, this dispute is immaterial because, as the district court correctly recognized, "AdvanFort does not cite any legal authority for the proposition that a foreign country is not a convenient forum if a party's claims

---

[5] The Board of Grievances is also known as the Administrative Court. J.A.323.

19

must be heard by different tribunals in that country." J.A.371. AdvanFort's attempt to provide supporting authority only further demonstrates the fallacy of its position.

AdvanFort cites inapposite cases in which courts denied *forum non conveniens* motions when it would split claims against domestic defendants from foreign defendants, forcing plaintiffs to litigate in *two different countries*. In *DIRTT Environmental Solutions.*, for example, the three domestic defendants "refused to join" the Canadian defendants' *forum non conveniens* motion because they did not want to leave their home country to defend the suit in Canada. 65 F.4th at 551. The Tenth Circuit held it would be improper to use *forum non conveniens* to "split" the case—sending half the defendants to litigate in Canada while keeping the domestic defendants in Utah—because it would result in "piecemeal" litigation in two different countries that would be inconvenient for all involved. *Id.* at 554-55. *See also Poly-Med*, 2016 WL 695625, at *9 (denying Swedish and Singaporean defendants' *forum non conveniens* motion where San Diego-based defendant declined to join motion to send case to Sweden); *Jes Solar Co.*, 2014 WL 2885476, at *2 (refusing to send half the defendants to litigate in South Korea and leave the rest in

20

Arizona). Those cases have no application here because both Zamil and the Ports Authority are Saudi entities subject to the jurisdiction of Saudi courts.

AdvanFort also cites cases holding that a defendant cannot point to an entire country as the alternate forum and must identify what court has jurisdiction over the claims. AdvanFort relies principally on *Kontoulas v. A.H. Robins Company*, 745 F.2d 312 (4th Cir. 1984), arguing that this Court "affirmed the district court's denial of a motion to dismiss for *forum non conveniens* because the defendant had provided merely generalized evidence in favor of Australia as a forum without identifying the specific court amenable to jurisdiction." Br. 28. *See also Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co.*, 686 F. Supp. 2d 558, 562 (D. Md. 2010) (defendants must "indicate which court provides the alternate forum, not just which country"); *Gallagher v. Marriott Int'l, Inc.*, 2020 WL 6263188, at *2 (D. Md. Oct. 23, 2020) (same). But those cases did not hold that the claims must be brought in a *single court* in the foreign jurisdiction. That issue was never raised or addressed. Rather, they held only that the moving party must identify what tribunal in the foreign country would have jurisdiction over the defendants and claims. Zamil has done just that—it identified the specific courts (the Board

of Grievances and the Commercial Court) that have jurisdiction over AdvanFort's claims. Thus, AdvanFort's cases are beside the point.

Lacking supporting case law, AdvanFort resorts to arguing that the same "rationale applies to case-splitting between different tribunals of one country, as much as to between different countries." Br. 26 n.11. Not so. Forcing the parties to split cases between different countries is *not* the same as having two companion cases in the same city—Jeddah, Saudi Arabia. J.A.239 (footnote 34). Two related cases in the same city is far more convenient than litigating this case half-way around the world in Virginia, where none of the relevant events took place.

Moreover, AdvanFort's position would create an absurd result. According to AdvanFort, even though this dispute is centered in Saudi Arabia, it should be allowed to bring the case in Virginia because it chose to sue a secondary, Saudi-government defendant whose claims must be brought in a separate Saudi court. But that would allow a party to avoid the *forum non conveniens* doctrine by naming multiple defendants that could not be sued together. Thus, AdvanFort's position has nothing to recommend it, and for good reason.

22

*Second,* AdvanFort contends that Saudi Arabia is not an available forum because "[t]he Ports Authority did not even appear, let alone move to dismiss or proffer any evidence regarding the availability of the alternative forum." Br. 25. As district court correctly explained, this is irrelevant: "Merely because the Saudi Ports Authority has not yet appeared in this action does not prevent the Court from dismissing this action based on *forum non conveniens*." J.A.371.

AdvanFort's legal authority is, again, entirely misplaced. It argues that "[t]his Court held in *Galustian* that where one defendant 'had not moved for *forum non conveniens* dismissal and *no evidence was proffered* regarding the availability of the forum as to' the nonmoving defendant, dismissal is inappropriate as to either defendant." Br. 24 (emphasis added) (quoting *Galustian,* 591 F.3d at 731). That is not this case. As described above, Zamil and AdvanFort both extensively briefed and offered evidence regarding the Ports Authority's availability (and each of the other *forum non conveniens* factors as applied to the Ports Authority). *See* J.A.063, J.A.067, J.A.086-097, J.A.138, J.A.152-153, J.A.163, J.A.230-232, J.A.241-243.

*Third,* AdvanFort argues for the first time on appeal that the Board of Grievances might not have jurisdiction over AdvanFort's claims against the

Ports Authority because it could decide to invoke the "acts of sovereignty" doctrine.  Br. 23.

As a threshold matter, AdvanFort waived this issue because it did not challenge the Board of Grievances' jurisdiction over the Ports Authority in the district court.  Its vague, passing reference to the "acts of sovereignty" doctrine in a single-sentence footnote in its brief, unaccompanied by any attempt to articulate an argument, was not enough to preserve it.  *See* J.A.153 (footnote 2); *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) ("The footnote alone is not sufficient to preserve the [issue], as issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (cleaned up); *United States v. Zenon–Rodriguez*, 289 F.3d 28, 35 (1st Cir. 2002) ("An argument made off-hand in one sentence of a motion is not sufficient to preserve an issue."); *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) ("If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." (citation omitted)).

Either way, the district court's determination that the Ports Authority is an "entity within the jurisdiction of the Saudi courts, and . . . is not entitled

to sovereign immunity" was not an abuse of discretion and was amply supported by the evidence. J.A.372 (footnote 8). Perhaps explaining why AdvanFort's brief did not make this argument, the only support for the "[a]cts of sovereignty" doctrine was a speculative opinion of AdvanFort's expert,[6] who opined that "acts of sovereignty include not only formal acts and decrees by government entities but also *other miscellaneous issues* that eschew categorization . . . ." J.A.243. He states that the Saudi government hypothetically "could" invoke this "other miscellaneous issues" category here, and the Board of Grievances may accept it to protect the Saudi government. J.A.243. He provided no examples of the Ports Authority, or any other Saudi governmental entity, ever invoking the purported "miscellaneous" category in the Board of Grievances in similar circumstances.

Zamil's expert refuted this opinion. In his opening report, he explained that "[u]nder Saudi law, there is no sovereign immunity granted to ministers, government employees, commercial public or private entities, or citizens."

---

[6] AdvanFort's expert is an outspoken public critic of the Saudi government and self-described "activist" who has a professional and personal interest in undermining public confidence in the Saudi judicial system. *See* Abdullah Alaoudh, *Saudi Arabia is Slowly Killing My Father*, N.Y. Times (Dec. 30, 2020), https://www.nytimes.com/2020/12/30/opinion/saudi-arabia-political-prisoners.html

J.A.094.   And in his rebuttal report, he explained that in Saudi law "a distinction [is] made between a sovereign act and an administrative act," and "sovereign acts" are "order[s] issued by the government of the Kingdom of Saudi Arabia related to its sovereignty or its relations with other countries, or decisions that aim at maintaining peace, social security and public health." J.A.324.   Accordingly, "[t]he acts of the Ports Authority are administrative acts" within Saudi law—not sovereign acts—and the Ports Authority would not be entitled to sovereign immunity in the Board of Grievances for AdvanFort's claims.   J.A.324.

Not surprisingly, the district court credited the definite opinion from Zamil's expert "that the Ports Authority has no sovereign immunity," J.A.324, over speculation from AdvanFort's expert that the Ports Authority "could" invoke an "undefined catch-all category of 'other miscellaneous issues,'" and the Board of Grievances might choose "to shield" the Ports Authority from accountability.   J.A.243.[7]  This was not a "clear abuse of discretion."  *Piper Aircraft Co.*, 454 U.S. at 257.

---

[7] AdvanFort's expert's opinion is nothing more than his personal belief that the Saudi government can claim anything is a "miscellaneous" act of sovereignty, and the Board of Grievances will conspire to protect the government.  This is tantamount to a finding that the Board of Grievances is a corrupt and inadequate forum, which the district court correctly rejected,

### 2.  The Saudi Courts are Adequate.

"A foreign forum is adequate when (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Tang*, 656 F.3d at 249 (internal quotation and citation omitted).

*First*, for the reasons explained above, all the parties are subject to jurisdiction in the Saudi courts.  *Supra* pp. 18-22.

*Second*, a forum is inadequate when it does not permit litigation of the subject matter in dispute, *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 205 (4th Cir. 2009), or, in "rare circumstances," when the remedy offered by the other forum is "clearly unsatisfactory." *Piper Aircraft Co.*, 454 U.S. at 254 n.22.  AdvanFort does not contest that it may bring a claim concerning the subject matter in dispute in Saudi courts and that Saudi law offers an adequate remedy for its claims.

---

consistent with the findings of other courts.  *See, e.g.*, *D & S Consulting, Inc. v. Kingdom of Saudi Arabia*, 322 F. Supp. 3d 45, 51 n.4 (D.D.C. 2018), *aff'd*, 961 F.3d 1209 (D.C. Cir. 2020) (finding the Board of Grievances was an adequate forum to adjudicate claims against the Saudi government).

Instead, AdvanFort contends that the district court erred in finding Saudi courts were adequate because the Saudi legal system is corrupt and incapable of adjudicating this dispute fairly.  Br. 31-48.  Its brief spends many pages repeating the factual allegations in the Complaint, citing the personal beliefs of its expert, and casting aspersions on the Saudi legal system.  *Id.*

American courts, however, are rightly "reluctant to find foreign courts 'corrupt' or 'biased[,]'"—and in the process pass formal judgment on another nation's legal system—based on a litigant's anecdotes.  *In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002); *Alayan v. Permanent Mission of Saudi Arabia to the United Nations*, 2021 WL 1964078, at *2 (S.D.N.Y. May 17, 2021) ("Courts must be cautious before finding incompetence or corruption by other nation's judicial systems.").   In this Circuit, "[c]ourts have uniformly held that anecdotal evidence of corruption and delay provides an insufficient basis for concluding that a foreign court is an inadequate forum."  *Conflict Kinetics, Inc. v. Goldfus*, 577 F. Supp. 3d 459, 464-65 (E.D. Va. 2021) (internal quotation marks, brackets, and citation omitted).

AdvanFort's brief does *not* contain a single citation to *any* case finding either the Saudi Commercial Court or the Board of Grievances to be an

28

inadequate forum.  And it is not because no one else has made AdvanFort's arguments.  To the contrary, courts in the United States are regularly asked to opine on the adequacy of Saudi courts and have found them to be adequate time and again.  *See, e.g.*, *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (affirming trial court's dismissal on the basis of *forum non conveniens*, including its finding that Saudi Arabia was an adequate forum); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 290-91 (5th Cir. 1989) (same); *Ahmed v. Boeing Co.*, 720 F.2d 224, 226 (1st Cir. 1983) (Breyer, J.) (same); *Alayan*, 2021 WL 1964078, at *2 (finding Saudi Arabia an adequate forum); *Jeha v. Arabian Am. Oil Co.*, 751 F. Supp. 122, 126 (S.D. Tex. 1990), *aff'd sub nom. Jeha v. Arabian Am. Oil*, 936 F.2d 569 (5th Cir. 1991) (same); *In re Disaster at Riyadh Airport*, 540 F. Supp. 1141, 1146 (D.D.C. 1982) (same); *Shields v. Mi Ryung Constr. Co.*, 508 F. Supp. 891, 897 (S.D.N.Y. 1981) (same); *cf. PSINet Consulting Sols. Knowledge Servs., Inc. v. Saudi Petro Gas Co.*, 2001 WL 869616, at *9 n.14 (D. Minn. Aug. 1, 2001) (dismissing complaint for lack of personal jurisdiction, but noting that "Saudi Arabia would be an adequate alternative forum" and it would have dismissed on the basis of *forum non conveniens*); *Al-Salamah Arabian Agencies Co. v. Reece*, 673 F. Supp. 748, 751 (M.D.N.C. 1987) (relying on *forum non conveniens* cases and finding

29

Saudi Arabia not inconvenient for arbitration). AdvanFort strains to explain why this case is different, but each of its well-worn arguments about the Saudi judicial system is baseless and has been rejected by United States courts.

*Interference.* AdvanFort contends this case includes allegations that "would be viewed as particularly sensitive to the Saudi government" because it "raise[s] serious issues concerning malfeasance by the Saudi government and a privileged, influential family." Br. 31-32. But Saudi courts are legally independent from the Saudi government, J.A.090, and courts in this country have declined to find Saudi courts inadequate in cases involving even more sensitive allegations: when they involved allegations of a conspiracy with members of the Saudi royal family. *See Shields*, 508 F. Supp. at 893, 896 (finding Saudi Arabia to be an adequate forum and "not[ing] that Saudi Arabia has established a specific tribunal for litigation of claims against the Government. This indicates that the Saudi royal family is not as sensitive to criticism as plaintiff claims"); *cf. Forsythe*, 885 F.2d at 290-91 (affirming finding that Saudi Arabia was an adequate forum even though defendant was a corporation wholly owned by the Saudi government).

Moreover, AdvanFort's allegations underscore that AdvanFort intends to treat this litigation as a re-do of the prior litigation, even though those

claims are barred by *res judicata* and a decade old. The claims in AdvanFort's new complaint—conversion, breach of bailment, and negligence—are not based on salacious allegations of bribery and government malfeasance. They are much more prosaic: an alleged failure to ensure a ship sitting in a shipyard had "protection from the elements [and] security from theft." J.A.039.

*Discrimination Against Witnesses.* AdvanFort claims the Saudi courts would harass and discriminate against foreign non-Muslim witnesses, including the ship captain and certain crew members. Br. 33. But the *forum non conveniens* cases involving Saudi Arabian courts routinely involve international parties with foreign witnesses that presumably are not all Muslim. *See., e.g.*, *Forsythe*, 885 F.2d at 287 (American pilot from Texas); *Shields*, 508 F. Supp. at 892 (plaintiff from Arizona); *In re Disaster at Riyadh Airport*, 540 F. Supp. at 1146 (American families of disaster victims). And, as AdvanFort's expert acknowledged, Saudi evidence law was changed in 2021 and no longer precludes testimony because it came from a woman or non-Muslim. J.A.238. Thus, this argument is nothing more than a categorical attack on the Saudi courts that has been repeatedly rejected.

AdvanFort also does not identify any specific relevant witnesses who would be subject to alleged discrimination. Even assuming the captain and

crew are foreign and non-Muslim (which is not set forth in the cited declaration of Ahmed Farajallah, J.A.227), it is not clear why they will be testifying at all: the claims alleged in the Complaint are based on saltwater corrosion and alleged looting that took place years *after* the captain and crew left Saudi Arabia. *See* J.A.035-041.

*Safety*. AdvanFort asserts that its executives harbor a "legitimate fear for their safety" if they were required to travel to Saudi Arabia. Br. 34-35. But Courts have found Saudi Arabia adequate despite similar professed concerns about physical safety. *See Alayan*, 2021 WL 1964078, at *2 (acknowledging plaintiff's agent's claim that he was "in fear of his life" in Saudi Arabia, but nevertheless finding Saudi Arabia to be an adequate forum).

Moreover, the cases cited by AdvanFort are inapplicable. Br. 34-35. None of them involve Saudi Arabia, and they often include specific, documented safety threats against the parties. *See Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 659 (S.D.N.Y. 2020) (plaintiff could not litigate in Russia because Russian government had accused him of murdering Alexander Litvinenko); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1191 (S.D.N.Y. 1996) (plaintiff accused of participating in a coup and had already been imprisoned and tortured in Ghana); *Mujica v. Occidental Petroleum Corp.*,

381 F. Supp. 2d 1134, 1139, 1144 (C.D. Cal. 2005) (plaintiffs had previously been shot at and bombed by agents of the defendants, and some were still receiving death threats from Colombian paramilitary groups). AdvanFort does not provide any reason why its witnesses are subject to any particular safety concerns in Saudi Arabia, other than they are in litigation with the Saudi government and Zamil, its alleged ally. But that, again, is another categorical attack on the Saudi courts and should be rejected.

*Local Counsel*. AdvanFort claims it would be "extremely difficult" to find local counsel in Saudi Arabia to bring its claims. Br. 36-37. But this same complaint also has been squarely rejected. *See Shields*, 508 F. Supp. at 896 (finding Saudi Arabia to be an adequate forum despite plaintiff's claim that it would be "extremely difficult to retain counsel in Saudi Arabia because no attorney would be willing to represent him in a dispute involving allegations of wrongdoing on the part of the Saudi royal family"). It also makes no sense. The Board of Grievances is dedicated solely to litigating claims against the government, so its very existence means there is available local counsel who bring claims in that court. This claim is particularly specious as to AdvanFort, given that it retained local counsel in Saudi Arabia when it filed suit against Zamil in 2014.

*Remedy.* AdvanFort simply rehashes its arguments regarding the sovereign immunity of the Ports Authority. Br. 38. As explained above, this argument was both waived and is incorrect. *Supra* pp. 23-26.

*Undue Influence.* AdvanFort contends that Zamil and the Ports Authority would use their influence to corrupt the courts. Br. 38-39. In support, AdvanFort cites its allegations in the Complaint about Zamil's alleged improper influence in the previous litigation and declares that "Zamil did not rebut *any* of this evidence." *Id.* at 39. That argument collapses for multiple reasons. As the district court recognized, the fact that Zamil only obtained a fraction of the relief it sought in the prior litigation is entirely inconsistent with AdvanFort's allegations of corruption and partiality. J.A.373. Moreover, AdvanFort has never offered any actual *evidence*—such as witness testimony or documents—to support its accusations of impropriety by Zamil in the prior litigation. They are nothing more than AdvanFort's unsupported allegations in the Complaint, and Zamil could not have rebutted these factual allegations in the context of a motion to dismiss. *Atkinson v. Godfrey*, No. 23-1344, 2024 WL 1916760, at *1 n.1 (4th Cir. May 2, 2024). Thus, AdvanFort's contentions again boil down to its unfounded and generalized claim that Saudi courts are corrupt and cannot be trusted.

34

*No Specific Evidence.* AdvanFort accuses the district court of "mischaracteriz[ing]" its evidence as "generalized" and "anecdotal." Br. 39-42; *see also* Br. 45-46. But the district court's characterization was exactly right. There is nothing specific about AdvanFort's allegations that distinguishes them from the long line of *forum non conveniens* cases that have rejected the same arguments. J.A.373. AdvanFort claims the human rights allegations in its expert's report are different, but courts have rejected these same allegations. *See* J.A.374. For example, in *Alayan v. Permanent Mission of Saudi Arabia to the United Nations*, the plaintiffs "cite[d] allegations of human rights scandals, the detention of women's rights activists, and the murder of a Saudi Journalist[,]" and the court still found the plaintiffs' "arguments unavailing," since they "rest mostly on general biases and dangers within Saudi Arabia." 2021 WL 1964078, at *2-3. And just two years ago, plaintiffs cited the same State Department "Human Rights Practices" Reports that AdvanFort cites and the court was unmoved. *See CDM Smith Inc. v. Atasi*, 594 F. Supp. 3d 246, 256-57 (D. Mass. 2022) (finding Saudi Labor Court impartial and explaining that State Department Human Rights Reports are inapposite because they are focused on the Saudi criminal justice system, not the civil courts).

*Forum Selection Clause Cases.*  AdvanFort claims the district court erred by relying on cases involving a forum selection clause.  Br. 43-44. AdvanFort's argument is self-defeating, however, as the *only* case it cites that found any court in Saudi Arabia to be inadequate *involved the enforcement of a forum selection clause.  Petersen v. Boeing Co.*, 108 F. Supp. 3d 726, 731 (D. Ariz. 2015) (forum selection clause selected Saudi Labor courts).  *Petersen*'s finding of inadequacy also is inapposite because it was limited by its own terms to "the Saudi Labor Courts, specifically, as opposed to Saudi courts more generally," 108 F. Supp. 3d at 731, and even that narrow holding has been controverted by more recent cases.  *See CDM Smith Inc.*, 594 F. Supp. 3d at 257, 263 (declining to follow *Petersen* and finding Saudi Labor Courts to be impartial).

Moreover, cases involving forum selection clauses can still provide persuasive and relevant authority.  Although many courts do not discuss adequacy when a forum selection clause exists, *see Azima v. RAK Inv. Auth.*, 926 F.3d 870, 875 n.2 (D.C. Cir. 2019), that is no reason to ignore relevant analysis from the courts that do address the issue. *See, e.g., Alayan*, 2021 WL 1964078, at *2-3 (performing adequacy analysis and citing *forum non conveniens* cases after the plaintiff argued that enforcement of the forum

36

selection clause would be "unjust"); *CDM Smith Inc.,* 594 F. Supp. 3d at 263 (same). Indeed, at least one court in a forum selection clause case felt compelled to opine on the adequacy of one of the very Saudi courts at issue, even if not strictly necessary. *See D & S Consulting*, 322 F. Supp. 3d at 51 n.4 ("The Court notes that if it could reach the issue, the Court would find that the Board [of Grievances] would meet the adequacy standard. Saudi Arabia is an adequate alternative forum . . . ."). Thus, it was not error for the district court to cite the analysis from these cases, particularly when it is consistent with numerous other cases that did not involve forum selection clauses.

*Cases Involving Foreign Plaintiffs.* AdvanFort argues the district court erred by relying on cases involving foreign plaintiffs. But that fact does not render those cases off-limits. Whether a plaintiff is suing in its home forum affects the weight given to that plaintiff's choice of forum in the *forum non conveniens* balancing test, and the district court carefully considered that factor in its analysis. J.A.374-375. But it has no effect on the court's determination of whether a foreign forum is adequate.

*Reliance on "Decades-Old" Cases.* AdvanFort contends the district court's reliance on "decades-old cases" caused it to "disregard[] the fact-intensive and highly case-specific nature of the inquiry[.]" Br. 44. That is

37

inaccurate.  The district court thoroughly considered the specific facts of this case under the entire body of case law, including cases analyzing the adequacy of Saudi courts from as recently as 2021.  *See* J.A.373-374 (discussing *Alayan*, 2021 WL 1964078).

*Weight Given to Prior Litigation.*  AdvanFort's contention that the district court should not have "relied heavily on AdvanFort's prior Saudi litigation as evidence that the Saudi courts are adequate to hear these claims against these parties," Br. 47, is misguided.  The district court devoted one paragraph to the prior litigation to make the valid point that it "misaligns" with AdvanFort's own allegations of corruption and inadequacy.  J.A.373.  AdvanFort cannot have it both ways.  In the Complaint, AdvanFort spends pages describing the prior litigation and citing it as evidence of "corruption," and in particular the Saudi court's decision to "reverse[] course" and not appoint a marine expert.  *See* J.A.028-031.  The district court was therefore correct to point out that this exceedingly weak anecdote does not show that AdvanFort would be treated unfairly in this case, particularly given that Zamil did not even completely prevail.  J.A.373.  AdvanFort's citation to *SAS Inst., Inc. v. World Programming Ltd.*, in which this Court found the district court put too much weight on "parallel litigation," is inapposite.  468 F. App'x 264,

38

266 (4th Cir. 2012) (unpublished). There is no parallel litigation here, only past litigation, and the district court considered the past litigation in the adequacy analysis because it was directly relevant and injected by AdvanFort into the conversation.

*     *     *

Thus, the district court's holding that the Commercial Court and Board of Grievances were adequate fora for this dispute was correct, reasonable, consistent with the findings of every other court to consider the issue, and is entitled to deference. AdvanFort has identified no error.

### 3. The Public and Private Interest Factors Favor Saudi Arabia.

The district court correctly concluded that the public and private interest factors weigh heavily in favor of Saudi Arabia.

### a. The Private Interest Factors Favor Saudi Arabia.

The private interest factors include: (i) the relative ease of access to sources of proof, (ii) the availability of compulsory process to obtain the testimony of unwilling witnesses, (iii) the cost of obtaining testimony from willing witnesses, (iv) the possibility of viewing the premises, and (v) "all other practical problems that make trial of a case easy, expeditious and inexpensive."

39

*Tang*, 656 F.3d at 249 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

It is indisputable that "[a] large proportion of the relevant evidence" in this case is in Saudi Arabia. *Piper Aircraft Co.*, 454 U.S. at 258. "This is so because the majority of the actionable conduct alleged in the complaint occurred in [Saudi Arabia], not the United States." *Conflict Kinetics*, 577 F. Supp. 3d at 465. AdvanFort's claims are based on alleged damage to the ship while it was docked at the Jeddah shipyard. The most important physical evidence is the ship itself, the engines, and the other allegedly damaged or missing components that serve as the basis for AdvanFort's claims. All this evidence is in Jeddah. J.A.036. Further, AdvanFort alleges the physical damage to the ship was caused by the negligence of Zamil's employees and its lack of security at the Jeddah shipyard. J.A.038-040. Evidence regarding the physical security at the Jeddah shipyard is in Jeddah. Thus, the relative ease of access to this evidence in Saudi Arabia versus Virginia "plainly favor[s the] foreign forum[.]" *In re Disaster at Riyadh Airport*, 540 F. Supp. at 1147. In such circumstances, "the private interests strongly favor dismissal on *forum non conveniens* grounds." *Conflict Kinetics*, 577 F. Supp. 3d at 465.

The key witnesses are also in Saudi Arabia. The heart of the case will involve the circumstances under which the *Seaman Guard Virginia* was allegedly damaged. The parties will need to rely on testimony from Zamil and Ports Authority employees about the security at the shipyard, whether any looting was witnessed, when and why certain items were removed from the ship before raising it out of the water, where those items were stored, and the condition of the ship when it was lifted out of the water in 2022. All that testimony will come from Saudi witnesses. AdvanFort was not in Saudi Arabia when the alleged new damage to the ship took place, so its witnesses have limited knowledge of these events.

AdvanFort has not identified any important witnesses located outside Saudi Arabia. AdvanFort claims its employees who communicated with Zamil and wired money to Zamil are located in Virginia, Br. 56, but those are not key witnesses.[8] The substance of AdvanFort's communications with Zamil and its

---

[8] AdvanFort accuses the district court of improper burden shifting, Br. 55, but the district court did no such thing. It appropriately declined to afford significant weight to AdvanFort's vague assertion that "witnesses are located in the United States and this forum," J.A.163, without providing any indication who those witnesses are, how many there are, or what testimony they would offer.

41

wire transfers are not likely to be in dispute.  Nor are they likely to occupy a significant portion of trial testimony.

Moreover, as the district court recognized, the cost and inconvenience of a trial in Virginia would be high.  J.A.376.  "[S]ignificant costs would be involved in transporting and accommodating [the] willing witnesses . . . from Saudi Arabia[.]"  *In re Disaster at Riyadh Airport*, 540 F. Supp. at 1148.  "[T]he costs to defendants of transporting willing witnesses will be much higher than plaintiff's costs in travelling to Saudi Arabia."  *Shields*, 508 F. Supp. at 894.

Given that this dispute involves events spread over multiple years at a shipyard—including allegations that Zamil "allow[ed] the vessel to be looted" by third parties, J.A.038—there is every reason to believe the case will involve third-party witnesses, such as former Zamil and Ports Authority employees who worked at the shipyard years ago, who are not under either party's control.  J.A.138.; *see Piper Aircraft Co.*, 454 U.S. at 258-59 (noting lack of need to identify particular witnesses not available, especially if difficult to identify without "extensive investigation").  AdvanFort's suggestion that evidence can be obtained from unwilling third-party witnesses in their home jurisdiction or a third location, Br. 57, misses the point: an American federal court lacks

authority to compel the testimony of any unwilling foreign witnesses—either in their home jurisdiction or in Saudi Arabia. Since most unwilling witnesses are likely to be Saudi, this factor favors the Saudi forum. *See Tang*, 656 F.3d at 252; *In re Disaster at Riyadh Airport*, 540 F. Supp. at 1148; *Shield*s, 508 F. Supp. at 894.

Finally, AdvanFort notes that were this case litigated in Saudi Arabia, some documents would need to be translated from English to Arabic. Br. 56-57. That very well may be true, but it is a matter of proportion. Since nearly all the relevant events occurred in Saudi Arabia, the vast majority of the relevant documents will be written in Arabic, and the majority of witnesses will speak Arabic, at least principally. J.A.138. Litigation in Virginia therefore "will require costly translators," which favors dismissal. *Tang*, 656 F.3d at 252; *Compania Naviera Joanna*, 569 F.3d at 201 (same).

It cannot seriously be disputed that it would be more convenient to litigate this case in Saudi Arabia, where all relevant events took place, the vast majority of witnesses reside, and nearly all evidence remains. The district court did not abuse its discretion in finding that the private factors heavily favor the Saudi forum.

**b.    The Court Gave Appropriate Deference to Plaintiff's Choice of Forum.**

AdvanFort's argument that the district court "afforded no deference" to its choice of forum is inaccurate.  Br. 49-55.

Under this Court's precedents, a district court should "partially discount[]" the deference owed to a plaintiff's choice of forum when "the plaintiff is a corporation doing business abroad that should expect to litigate in foreign courts" and is "bring[ing] an action for injury occurring in a foreign country[.]" *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013) (quoting *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991)).  That is what the district court did.  It "partially discount[ed] AdvanFort's United States citizenship" because it is "a corporation doing business abroad." J.A.375 (cleaned up); *see also* J.A.362 (AdvanFort's choice of forum was entitled to "a little bit less deference" because "the contract in this entire business relationship between the Virginia company occurs in a foreign country").

AdvanFort attempts to distinguish *DiFederico* by urging this Court to look only at its business in Saudi Arabia, which it claims is not extensive, rather than its entire overseas operation when determining how much deference it is owed.  Br. 54.  But that is not the inquiry under *DiFederico*; the question is

44

whether the plaintiff "is a corporation doing business abroad that should expect to litigate in foreign courts," 714 F.3d at 807, and is not limited to the plaintiff's specific business in a particular foreign forum.

AdvanFort's entire business was performed abroad, including waters near Saudi Arabia. By its own description, AdvanFort is a maritime security company offering its clients "full coverage across the High Risk Area which extends from the southern portion of the Red Sea, along the Somali coast, and at times, extending all the way to the coast of India." J.A.014. *See, e.g.*, *AdvanFort Co. v. Mar. Exec., LLC*, 2015 WL 4603090, at \*1 (E.D. Va. July 28, 2015) (litigation involving one of AdvanFort's ships taken by Indian Coast Guard off the coast of India); *AdvanFort Co. v. Cartner*, 2015 WL 12516240, at \*2 (E.D. Va. Oct. 30, 2015) (AdvanFort describing having more than 400 contracts with global shipping companies from 2011-2015).

AdvanFort contends that its contacts with Saudi Arabia were "fleeting," Br. 53, but its supporting case law only drives home the fallacy of its position. AdvanFort argues its presence in Saudi Arabia was akin to a plaintiff injured at a hotel while on vacation in the Cayman Islands in *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 347 (8th Cir. 1983). Unlike the tourist in *Lehman*, who was "not doing business" on his Caribbean vacation, *id.*, AdvanFort's ship

and crew were in Saudi waters because AdvanFort sent them there to perform "anti-piracy security services" in the Red Sea. J.A.014. It docked its commercial vessel in a Saudi shipyard for repairs and then left it there for a decade. It is entirely reasonable and expected for AdvanFort to need to bring its lawsuit about alleged damage to its ship while docked at a Saudi shipyard in Saudi Arabia.

### c.    The Public Interest Factors Favor Saudi Arabia.

The public's interests in a forum non conveniens motion include:

> [1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Tang*, 656 F.3d at 249 (*Gulf Oil Corp.*, 330 U.S. at 509). AdvanFort does not contest that Saudi law will apply to this dispute, which (although not dispositive) "point[s] towards dismissal." *Piper Aircraft Co.*, 454 U.S. at 251, 260. Instead, it contends the district court's finding that Virginia's interests in this case are "minimal" was "inexplicabl[e]," and hearing this case in Virginia would not unfairly burden Virginia's courts or citizens. Br. 59-62. AdvanFort's arguments should again be rejected.

46

As the district court correctly observed, "frankly, other than the fact that plaintiff is a Virginia entity, there really is no interest . . . of Virginia in this litigation." J.A.362.  This is a case about a ship in Saudi Arabia that was allegedly damaged by a Saudi company, in a shipyard in Saudi Arabia, pursuant to a contract to perform services in Saudi Arabia.  The Saudi court that previously heard this case "seemingly would have a significant interest in hearing a dispute about a contract performed in Saudi Arabia" by a Saudi company.  *D & S Consulting*, 961 F.3d at 1214.  On the other hand, there is "little local interest" in a case involving an alleged tort from performance of a contract overseas.  *Conflict Kinetics*, 577 F. Supp. 3d at 465.  That is because Virginia's "interest in adjudicating [an] action insofar as it seeks to ensure the economic health of its citizens and the fair resolution of their disputes . . . . diminishes . . . as [the state's] citizens seek their fortune away from home— particularly when they compete for a slice of foreign pie . . . intended primarily for foreign consumption."  *Ellicott Mach.*, 995 F.2d at 479.  Thus, the district court got it exactly right—other than AdvanFort's Virginia residency, the other public interests all favor Saudi Arabia.

AdvanFort contends this case would not unfairly burden Virginia courts or a Virginia jury because AdvanFort is a "resident of the community."  Br.

60. But that logic would apply to every plaintiff who files suit in their home jurisdiction—no matter how tenuously connected the case is to the forum. That is not the law. Rather, the rule is where the "controversy's contacts with the United States pale in comparison to the controversy's foreign contacts," "jury duty ought not to be imposed upon the people of the United States nor should United States courts be clogged" with such cases. *In re Disaster at Riyadh Airport*, 540 F. Supp. at 1152. That rule is squarely applicable here.

\* \* \*

At bottom, "the central focus of the *forum non conveniens* inquiry is convenience[.]" *Piper Aircraft Co.*, 454 U.S. at 249. The district court correctly found that every element of the inquiry showed that Saudi Arabia is a more convenient forum than the United States to litigate this dispute. AdvanFort failed to identify a single error in the district court's analysis, let alone a clear abuse of discretion. This Court should affirm the district court's dismissal on the basis of *forum non conveniens*.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING ADVANFORT'S MOTION FOR DISCOVERY.

AdvanFort's argument that the district court abused its discretion by denying its motion for discovery, Br. 62-64, should be rejected because the trial court correctly held that the extensive record was more than sufficient to

resolve the motion, and AdvanFort has not identified any discovery that would change the outcome.

Courts may decide motions to dismiss for *forum non conveniens* based on affidavits presented by the parties, without allowing discovery. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988); *see also Moskovits v. Moskovits*, 150 F. App'x 101, 102-03 (2d Cir. 2005) (unpublished); Wright & Miller, *supra* § 3828. This is in part because "[r]equiring extensive investigation would defeat the purpose of [the] motion" for *forum non conveniens*. *Piper Aircraft Co.*, 454 U.S. at 258. Courts only require "enough information to enable [them] to balance the parties' interests." *Id.* District courts are "accorded substantial flexibility" in deciding *forum non conveniens* motions. *Van Cauwenberghe*, 486 U.S. at 529.

The district court did not abuse its discretion by declining to authorize AdvanFort to conduct a fishing expedition into Saudi Arabia's judiciary and prolong this decade-old dispute by conducting discovery on issues that could not change the analysis. Neither of the two areas of discovery sought by AdvanFort would move the needle at all.

*First*, AdvanFort claims it needs more discovery on the "previous litigation" related to the 2013 fire. Br. 63-64. As explained above, however,

49

AdvanFort's attempts to show the inadequacy of the Saudi courts based on the prior case (in which Zamil did not completely prevail) is misguided, *see supra* pp. 38-39, and further discovery would not change that analysis.

*Second*, AdvanFort's request for discovery into how many witnesses and documents are in Arabic or English is equally unavailing. Br. 64. As explained above, Zamil has presented evidence that its witnesses working at the Port do not speak English, J.A.138, and AdvanFort has not identified any key witnesses who are not from Saudi Arabia. *Supra* p. 41. And in any event, the motion does not depend on any dispute over this narrow issue, given the overwhelming record showing why this case belongs in Saudi Arabia. Thus, the district court did not abuse its discretion in denying AdvanFort's request for discovery.

## III.   THE DISTRICT COURT LACKED PERSONAL JURISDICTION OVER ZAMIL.

"A prevailing party may urge an appellate court to affirm a judgment on any ground appearing in the record." *Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*, 511 F.3d 437, 447 (4th Cir. 2007) (citation and internal quotation marks omitted). In addition to *forum non conveniens*, the Court can affirm the judgment because the district court lacked personal jurisdiction

over Zamil.  The issue was fully briefed below and is ripe for adjudication.  *See* J.A.071-082, J.A.166-176, J.A.298-308.

The exercise of personal jurisdiction is lawful if (i) the forum state's long-arm statute authorizes personal jurisdiction and (ii) personal jurisdiction comports with the due process clause of the Fourteenth Amendment.  S*ee UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350-51 (4th Cir. 2020).  In Virginia, these two inquiries merge into one because Virginia's long-arm statute authorizes personal jurisdiction "to the extent permissible" under the due process clause.  *Id.* at 351.

This Court has established a three-prong test for specific jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally unreasonable." *dmarcian*, 60 F.4th at 133 (quoting *UMG Recordings*, 963 F.3d at 352).[9]  All three prongs must be satisfied.  *Consulting Eng'rs*, 561 F.3d at 281 n.9.  AdvanFort could not satisfy even a single one.

---

[9] AdvanFort did not argue that the district court had general jurisdiction over Zamil.

51

### A. Zamil Did Not Purposefully Avail Itself of the Privilege of Doing Business in Virginia.

The purposeful availment prong considers the following nonexclusive list of factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*dmarican*, 60 F.4th at 133 (citation omitted).  AdvanFort argued that it met the first, third, fourth, seventh, and eighth factors.  Its arguments were erroneous and contrary to Fourth Circuit precedent.

*First Factor.*  Zamil has submitted evidence that it does not maintain offices or agents in Virginia.  J.A.319-320.  Citing two highly suspicious LinkedIn profiles, AdvanFort asserted for the first time in its opposition brief that Zamil had two agents in the United States (one in Virginia), neither of

whom had any alleged connection to this matter.  J.A.168.[10]  But even if AdvanFort's claim were true (it is not), it would not be enough to constitute purposeful availment.  *See Sneha Media & Ent., LLC v. Associated Broad Co.*, 911 F.3d 192, 200 (4th Cir. 2018) (presence of foreign defendant's employee working in forum state insufficient to confer specific jurisdiction when employee's work was unconnected to claims and "far more focused on India" than forum state); *Lane v. Gray Transp., Inc.*, 2021 WL 4392667, at *5 (N.D. W. Va. Sept. 24, 2021) (two employees of defendant living in forum state but with no connection to the allegations insufficient to confer specific jurisdiction).

*Third Factor.*  Zamil did not reach into Virginia to solicit or initiate business.  AdvanFort cites Zamil's *national* publications and website, but they are insufficient to confer personal jurisdiction because there is no evidence that Zamil specifically targeted Virginia.  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 139, 141-43 (4th Cir. 2020).

---

[10] These alleged employees are nonsensical.  One profile shows no LinkedIn followers, no posts, and no history—just a single "liked" photo, and the other was an alleged engineer in Richmond, Virginia, with no information on what engineering services he could have been performing for Zamil from there.

*Fourth Factor.* To have "engaged in significant or long-term business activities in the forum state" based on a single contract, the contract must show a "continuous, ongoing contractual relationship." *See Mattiaccio v. Cantu Apiaries of Fla., LLC*, 2022 WL 1597826, at \*4, \*6 (E.D. Va. May 19, 2022). Nothing about the AdvanFort-Zamil repair agreement was intended to be "continuous" or "ongoing." AdvanFort contracted with Zamil to perform "routine maintenance and minor repairs" on the *Seaman Guard Virginia* in October 2013. J.A.022. The contract did not contemplate any continuous or ongoing services. The only reason the relationship between the parties continued for years is that AdvanFort abandoned its ship in Zamil's shipyard.

*Seventh Factor.* The contract did not require the performance of duties in Virginia. AdvanFort's only argument is that it paid Zamil from its Virginia bank account, but that is insufficient because there was no contractual *requirement* that AdvanFort pay Zamil from a Virginia-based bank. *See Weisner v. FLIR Sys., Inc.*, 2019 WL 4962594, at \*4 (E.D.N.C. Oct. 7, 2019) (wire transfer from the U.S. to foreign company was insufficient to establish that the foreign company sought to avail itself of the privilege of doing business in the U.S. because plaintiff's residence in U.S. had "little, if anything, to do with the relationship between the parties"). Zamil merely wanted to be

54

paid for its performance under the contract; the source of that payment was irrelevant.

*Eighth Factor.* Two binding decisions of this Court addressing this factor, *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d at 273 and *Ellicott Machinery Corp. v. John Holland Party Ltd.*, 995 F.2d at 474 are dispositive of the jurisdictional inquiry. Both cases involved claims, like here, against foreign defendants arising out of short-term, one-off service contracts performed abroad. Both cases based the jurisdictional allegations on a handful of emails and phone calls. And in both cases, this Court found such contacts—*which were more extensive than those alleged by AdvanFort*—to be insufficient to support a finding of purposeful availment. Moreover, in those cases the defendants reached out directly to the plaintiffs in their home jurisdiction to initiate the business relationship. *See Consulting Eng'rs*, 561 F.3d at 280; *Ellicott Mach.*, 995 F.2d at 476, 478. A defendant's decision to "initiate contact" is afforded extra weight in the purposeful availment inquiry, and can "significantly impact[] the outcome of a personal jurisdiction analysis." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 562 (4th Cir. 2014). Here, by contrast, AdvanFort reached out to Zamil to initiate the relationship,

which makes this an easier case for dismissal.  J.A.020.  This Court can affirm the judgment of the district court based on those two cases alone.

### B.  AdvanFort's Claims Do Not Arise Out of or Relate to Zamil's Alleged Activities in Virginia.

Specific jurisdiction requires that "the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation and internal quotation marks omitted).

The majority of AdvanFort's jurisdictional allegations have nothing to do with AdvanFort's claims, and many nothing to do with Virginia.  For example, AdvanFort argued that Zamil attended industry conferences in Texas, was involved in a joint venture with McDermott International, and had an affiliate who was part of a trade group that met in Vienna, Virginia, J.A.018-020, but failed to provide any nexus between those allegations and this case. It does not allege that anyone from AdvanFort knew of these activities before or during the creation of the contract between the parties.

The Complaint proffered, at most, two allegations with any relation to this case: (i) that AdvanFort "learned of Zamil Offshore by seeing Zamil Offshore's advertisement in The *Baltic Exchange* and reading about the company in the *Maritime Executive Magazine*," J.A.020, and (ii) Zamil's

56

communications with AdvanFort about the repairs on the *Seaman Guard Virginia*.  In its briefing, AdvanFort added a new allegation: that it accessed Zamil's website before it entered into the contract.  J.A.227.  But even taken together, these contacts are insufficient to put Zamil on notice that it could be "haled into court" in Virginia based on a contract to perform ship repair services in Jeddah.  *Sneha Media*, 911 F.3d at 198-99 (foreign company's fleeting contacts with Virginia were too attenuated from claims to satisfy second prong in contract case centered in India); *Wallace v. Yamaha Motors Corp.*, 2022 WL 61430, at *4-5, n.6 (4th Cir. Jan. 6, 2022) (unpublished) (applying *Ford* and finding plaintiff failed to satisfy second prong when injury occurred out of state and defendant's in-state contacts had no nexus to plaintiff's claim).

## C. The Exercise of Jurisdiction Would be Constitutionally Unreasonable.

To meet the constitutional due process requirements for personal jurisdiction, the party asserting the claim must establish that a defendant has sufficient "'minimum contacts'" with the forum such that "'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs*, 561 F.3d at 276-77 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  This Court considers the interests of the forum state,

57

the burden on the defendant, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Ellicott Mach.*, 995 F.2d at 479.[11]

This factor weighs in favor of dismissal for the same reasons the district court properly dismissed the case based on *forum non conveniens*. The interests of Virginia in resolving this dispute are minimal. The company, ship, shipyard, and employees at the heart of this case are located in Jeddah, not Virginia. All performance under the contract took place in Jeddah. And while Virginia may have a general interest in providing a forum for its citizens to seek redress for injuries in Virginia, "a cause of action outside the forum involving one contract between a Virginia resident and entirely foreign defendants does not indicate a strong state interest." *Mattiaccio*, 2022 WL 1597826, at *7.

The "burden on the defendant" weighs against exercising personal jurisdiction. As explained above, the vast majority of witnesses are in Jeddah,

---

[11] As a threshold matter, because AdvanFort cannot satisfy the first two requirements for personal jurisdiction, it would be constitutionally unreasonable to exercise personal jurisdiction in this case. *See Consulting Eng'rs*, 561 F.3d at 279; *Conopco, Inc. v. Rebel Smuggling, LLC*, 2021 WL 5909831, at *5 (E.D. Va. Dec. 14, 2021).

and transporting them and other evidence to Virginia would substantially increase litigation costs for Zamil and present other logistical challenges. The Supreme Court has explained that international comity is "best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 115 (1987). The heavy burden on Zamil far outweighs Virginia's minimal interests.

Thus, because AdvanFort failed to show personal jurisdiction over Zamil, the Court can affirm the judgment on this alternate ground.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's order dismissing AdvanFort's complaint on the basis of *forum non conveniens* and denying AdvanFort's motion for discovery. Moreover, the Court can affirm the judgment because the district court lacked personal jurisdiction over Zamil.

Dated: May 24, 2024                 Respectfully submitted,

                                     /s/  Richmond T. Moore
                                    Richmond T. Moore
                                    John S. Williams
                                    Nicholas A. Maricic
                                    Janae N. Staicer
                                    WILLIAMS & CONNOLLY LLP
                                    680 Maine Avenue SW
                                    Washington, D.C. 20024
                                    Tel. (202) 434-5000
                                    *Attorneys for Defendant-Appellee*
                                    *Zamil Offshore Services Company*

## REQUEST FOR ORAL ARGUMENT

Defendant-Appellee respectfully submits that, given the substantial number of issues presented, oral argument would be helpful to the disposition of this appeal.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

2.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 12,673 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3.    I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

## CERTIFICATE OF SERVICE

I, Richmond T. Moore, a member of the Bar of this Court, hereby certify that on May 24, 2024, I caused the forgoing Motion to be filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit. I certify that service on all case participants will be accomplished through the CM/ECF system and/or by third-party commercial carrier.

/s/ Richmond T. Moore          Date: May 24, 2024

*Attorney for Zamil Offshore Services Company*