**Appeal No. 24-1007**

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

►◄◄

_____

ADVANFORT COMPANY

*Plaintiff-Appellant,*

v.

ZAMIL OFFSHORE SERVICES COMPANY and SAUDI PORTS AUTHORITY.

*Defendants-Appellees.*

_____

On Appeal From The United States District Court
For The Eastern District of Virginia

## REPLY BRIEF OF ADVANFORT COMPANY

Benjamin L. Hatch
MCGUIREWOODS LLP
101 West Main Street
Norfolk, VA 23510
Tel. (757) 640-3700

Andrew B. Loewenstein
Roseanna K. Loring
Matthew F. Casassa
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel. (617) 832-1000

Clara Brillembourg
FOLEY HOAG LLP
1717 K Street N.W.
Washington, D.C. 20006
Tel. (202) 261-7334

Peter A. Sullivan
FOLEY HOAG LLP
1301 Ave. of the Americas
New York, NY 10019
Tel. (212) 812-0310

*Attorneys for Plaintiff-Appellant AdvanFort Company*

**TABLE OF CONTENTS**

Introduction .................................................................... 1

Argument ....................................................................... 4

I.    The Ports Authority's Default Precluded *Forum Non Conveniens* Dismissal. ................................................. 4

II.   AdvanFort Did Not Waive Its Challenge to the District Court's *Sua Sponte* Dismissal of the Ports Authority ............... 7

III.  Defendants Did Not Establish an Available Forum. ................ 9

IV.   Defendants Did Not Establish an Adequate Forum. ............. 11

V.    The District Court Abused Its Discretion in Its Weighing of the Public and Private Interest Factors. ................................ 17

VI.   There Is Personal Jurisdiction Over Zamil. ....................... 18

      A.    Zamil's Contacts with Virginia ......................... 19

      B.    Zamil's Virginia Contacts Establish Personal Jurisdiction. ...................................................... 22

            1.    Zamil Purposefully Availed Itself of the Privilege of Conducting Business in Virginia. ................. 22

            2.    AdvanFort's Claims Arise Out of and Are Related to Zamil's Contacts with Virginia. ................ 28

            3.    Exercising Personal Jurisdiction Is Constitutionally Reasonable. ................................ 30

      C.    Zamil Is Subject to Jurisdiction Under the Foreign Sovereign Immunities Act ................................ 32

Conclusion ................................................................... 32

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alpha View Co. Ltd. v. Atlas Copco AB,*
  205 F.3d 208 (5th Cir. 2000) .................................................................... 9

*B.D. v. Samsung SDI Co., Ltd.,*
  91 F.4th 856 (7th Cir. 2024) ............................................................... 30

*Blockowicz v. Williams,*
  630 F.3d 563 (7th Cir. 2010) .................................................................. 5

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ...................................................................... 25, 30

*Calder v. Jones,*
  465 U.S. 783 (1984) ........................................................................... 31

*Carijano v. Occidental Petroleum Corp.,*
  643 F.3d 1216 (9th Cir. 2011) ............................................................ 14

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India,*
  551 F.3d 285 (4th Cir. 2009) ................................................... 22, 30, 32

*Chloe v. Queen Bee of Beverly Hills, LLC,*
  616 F.3d 158 (2d Cir. 2010) ................................................................ 31

*Consulting Engineers v. Geometric Limited,*
  561 F.3d 273 (4th Cir. 2009) ......................................................... 26, 28

*Corporate Synergies Group, LLC v. Andrews,*
  775 F. App'x 54 (3d Cir. 2019) ............................................................. 9

*DiFederico v. Marriott Int'l, Inc.,*
  714 F.3d 796 (4th Cir. 2013) ....................................................... 2, 3, 17

*Dirtt Env't Sols., Inc. v. Falkbuilt Ltd.,*
  65 F.4th 547 (10th Cir. 2023) .................................................... 1, 10, 11

*Dunlap v. Cottman Transmissions Sys., LLC,*
No. 2:11CV272, 2015 U.S. Dist. LEXIS 184224 (E.D. Va.
Nov. 5, 2015) ....................................................................... 30

*Ellicott Machinery Corp. v. John Holland Party, Ltd.,*
995 F.2d 474 (4th Cir. 1993) ............................................... 27

*Fed. Ins. Co. v. Lake Shore Inc.,*
886 F.2d 654 (4th Cir. 1989) ............................................... 26

*Fidrych v. Marriott Int'l, Inc.,*
952 F.3d 124 (4th Cir. 2020) ............................................... 26

*Fintech Fund, F.L.P. v. Horne,*
836 F. App'x 215 (5th Cir. 2020) ........................................... 6

*Fintech Fund, FLP v. Horne,*
327 F. Supp. 3d 1007 (S.D. Tex. 2018) ................................. 6

*Ford Motor Co. v. Montana Eighth Judicial District Court,*
141 S. Ct. 1017 (2021) .................................................. 29, 30

*Fridinger v. Stonegate Wealth Mgmt., LLC,*
No. 1:10CV906, 2013 U.S. Dist. LEXIS 109686 (M.D.N.C.
Aug. 5, 2013) ....................................................................... 25

*Galustian v. Peter,*
591 F.3d 724 (4th Cir. 2010) ................................................. 9

*Gannett Co. v. Clark Constr. Group, Inc.,*
286 F.3d 737 (4th Cir. 2002) ............................................... 11

*Gschwind v. Cessna Aircraft Co.,*
161 F.3d 602 (10th Cir. 1998) ............................................. 10

*Harrell v. Deluca,*
97 F.4th 180 (4th Cir. 2024) ............................................... 19

*Hood v. Am. Auto Care, LLC,*
21 F.4th 1216 (10th Cir. 2021) ........................................... 29

*Khan v. Ranjha,*
    53 Va. Cir. 530 (Va. Cir. Ct. 1999) ...................................................... 25

*Kontoulas v. A.H. Robins Co.,*
    745 F.2d 312 (4th Cir. 1984) ............................................................. 10

*Lee v. Walworth Valve Co.,*
    482 F.2d 297 (4th Cir. 1973) ............................................................. 31

*Norwood v. Kirkpatrick,*
    349 U.S. 29 (1955) ............................................................................ 6

*Paris v. United States Dep't of Hous. & Urban Dev.,*
    713 F.2d 1341 (7th Cir. 1983) .............................................................. 9

*Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.,*
    512 S.E.2d 560 (Va. 1999) ................................................................. 25

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) .......................................................................... 11

*Precision Weather Sols. Inc. v. Farmers Edge Inc.,*
    No. 22-1070, 2023 U.S. App. LEXIS 4100 (4th Cir. Feb.
    22, 2023) ........................................................................................... 5

*In re Ryze Claims Sols., LLC,*
    968 F.3d 701 (7th Cir. 2020) ............................................................... 7

*Shields v. Mi Ryung Constr. Co.,*
    508 F. Supp. 891 (S.D.N.Y. 1981) ..................................................... 15

*Singleton v. Wulff,*
    428 U.S. 106 (1976) .......................................................................... 19

*Sterling Fin. Servs. Co. v. Franklin,*
    259 F. App'x 367 (2d Cir. 2008) ......................................................... 5

*Tazoe v. Airbus S.A.S.,*
    631 F.3d 1321 (11th Cir. 2011) ........................................................... 7

iv

*Tire Eng'g & Distribution, Ltd. Liab. Co. v. Shandong*
    *Linglong Rubber Co.,*
    682 F.3d 292 (4th Cir. 2012).........................................................25, 31

*Tyco Fire & Sec., LLC v. Alcocer,*
    218 F. App'x 860 (11th Cir. 2007) ...............................................1, 4, 5

*UMG Recordings, Inc. v. Kurbanov,*
    963 F.3d 344 (4th Cir. 2020)....................................................21, 23, 24

*Universal Leather, LLC v. Koro AR, S.A.,*
    773 F.3d 553 (4th Cir. 2014) ...........................................................19, 21

*Vape Guys, Inc. v. Vape Guys Distribution,*
    No. 3:19cv298, 2020 U.S. Dist. LEXIS 36117 (E.D. Va.
    Mar. 2, 2020) ......................................................................................25

*Vapotherm, Inc. v. Santiago,*
    38 F.4th 252 (1st Cir. 2022)..............................................................29

*Wallace v. Yamaha Motors Corp., U.S.A.,*
    2022 U.S. App. LEXIS 447 (4th Cir. 2022) ......................................29

*Wong v. PartyGaming, Ltd.,*
    589 F.3d 821 (6th Cir. 2009)...............................................................6

*World-Wide Volkswagen, Corp. v. Woodson,*
    444 U.S. 286 (1980) ...........................................................................26

## Statutes and Rules

28 U.S.C § 1404(a) ...........................................................................6, 7

28 U.S.C. § 1602.................................................................................32

Fed. R. Civ. P. 12(b)(3) .......................................................................6

## Other Authorities

U.S.-Saudi Business Council, About Khalid Al Zamil,
    https://ussaudi.org/team/khalid-al-zamil/.........................................20

Zamil Offshore, About Us,
    https://www.zamiloffshore.com/page/About__us ................................ 20

INTRODUCTION

In its opening brief, AdvanFort showed that the district court erred in dismissing the Complaint on the basis of *forum non conveniens* for multiple, independent reasons. To begin with, the Saudi Ports Authority ("Ports Authority") was in default when the district court entered judgment and never sought any relief based on *forum non conveniens* or otherwise. This foreclosed dismissal on *forum non conveniens* grounds. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863-64 (11th Cir. 2007).

Dismissal was also improper because no single court in Saudi Arabia can adjudicate the entirety of the case, as the claims against the Ports Authority cannot be heard in the same Saudi court as the claims against Zamil Offshore Services Company ("Zamil"). Such case-splitting precluded a *forum non conveniens* dismissal, a doctrine predicated on the promotion of efficiency and convenience. *Dirtt Env't Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 555 (10th Cir. 2023).

Moreover, the allegations that AdvanFort makes against Saudi government entities and officials would not permit a fair opportunity to be heard. Recent events make that especially so. In February 2024,

1

Saudi Arabia's sovereign wealth fund, under the chairmanship of Crown Prince Mohammed bin Salman, acquired a 40% stake in Zamil.[1]  The company is now jointly owned and controlled by the Saudi government and a family closely aligned with the Royal Family.

The reality that AdvanFort's claims cannot be fairly adjudicated in Saudi Arabia is confirmed by AdvanFort's prior experience litigating against Zamil, which even before the Saudi government's share acquisition was marred by serial improprieties, including witness tampering, false government reports, and the Saudi judiciary's refusal to credit the testimony of AdvanFort's non-Muslim witnesses.  J.A.030-032; J.A.108.  And, it is reinforced by the findings of the State Department that the Saudi courts lack independence and are loath to rule against the government or aligned interests.  J.A.250-262.

Finally, the district court failed to afford the required deference to Virginia-based AdvanFort's choice of forum in the balancing of public and private factors.  That, too, requires reversal.  *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 803 (4th Cir. 2013).

---

[1] For the Crown Prince's significance in Saudi Arabia, see J.A.232-241.

Nothing in Zamil's brief provides any cogent reason for affirming the district court's decision. AdvanFort could not have waived its argument that the district court was precluded from *sua sponte* dismissing the case in view of the Ports Authority's default because AdvanFort had no earlier opportunity to raise that argument. Zamil fails to engage with AdvanFort's evidence concerning the availability and adequacy of the Saudi Arabian fora. Its defense of the balancing of the public and private factors distorts the record and mischaracterizes AdvanFort and its operations. And, there was no basis for the district court's discounting of AdvanFort's forum choice, which is reversable error in its own right. *Id*.

Zamil's proposed alternative ground for affirmance – that the district court purportedly lacks jurisdiction over it – is equally flawed. Zamil engaged in marketing targeted at marine services companies in Virginia. AdvanFort was one of those companies. Zamil's efforts involved, *inter alia*, utilizing the Virginia-based U.S.-Saudi Business Council as an in-forum business development arm. They also entailed advertising in Virginia both in print and via a web-based platform housed in Virginia. AdvanFort's claims concern the activity that Zamil marketed

3

to Virginia companies.  The requirements for personal jurisdiction are thus satisfied.

**ARGUMENT**

## I.  The Ports Authority's Default Precluded *Forum Non Conveniens* Dismissal.

The district court erred when it dismissed for *forum non conveniens*. AdvanFort Br. 20-21.  The Ports Authority was in default.  It is black letter law that "procedural defenses, such as a motion to dismiss for *forum non conveniens* … are lost" to defaulted defendants.  *Tyco*, 218 F. App'x at 864.

While Zamil attempts to deflect from *Tyco*, Zamil Br. 13, the decision is on all fours with this case.  *Tyco* held that *forum non conveniens* is unavailable to defaulting defendants like the Ports Authority.  *Tyco*, 218 F. App'x at 863.  The fact that the Ports Authority's co-defendant moved for a *forum non conveniens* dismissal makes no difference; nothing in *Tyco* or any other case holds otherwise.  The rule is simple: once a defendant has defaulted, *forum non conveniens* is "lost" as a defense.  *Id.* at 864.

Nor is Zamil correct in insinuating that its motion to dismiss for *forum non conveniens* permitted the district court to apply the doctrine

4

to the Ports Authority despite that party's non-appearance and default. Zamil Br. 13. Procedural defenses such as *forum non conveniens* are personal to the party asserting them. *See, e.g.*, *Blockowicz v. Williams,* 630 F.3d 563, 570 (7th Cir. 2010) ("As a general principle, affirmative defenses, like claims, are personal. A person can no more assert someone else's affirmative defense than he can someone else's cause of action."); *Sterling Fin. Servs. Co. v. Franklin*, 259 F. App'x 367, 369 (2d Cir. 2008) (rejecting attempt to assert a third party's defense). Unsurprisingly, Zamil fails to identify any case in which a court applied a defendant's procedural defense to a non-appearing co-defendant, much less one in default. Zamil Br. 16-17.

Zamil is mistaken in arguing that the district court could "dismiss the Complaint based on *forum non conveniens sua sponte*." *Id*. at 14. Again, Zamil fails to identify any case in which a court *sua sponte* used a "lost" *forum non conveniens* defense to dismiss claims against a defaulted party. *Tyco*, 218 F. App'x at 864. That is not surprising. Prior *sua sponte* dismissals on *forum non conveniens* grounds involved *appearing* defendants that moved to dismiss in favor of alternative fora but did not request *forum non conveniens* dismissal "in so many words." *Precision*

*Weather Sols. Inc. v. Farmers Edge Inc.*, No. 22-1070, 2023 U.S. App. LEXIS 4100, at *7 (4th Cir. Feb. 22, 2023); *see also Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009) (affirming dismissal on *forum non conveniens* grounds where defendant had moved to enforce forum selection clause under Fed. R. Civ. P. 12(b)(3)).

*Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215 (5th Cir. 2020), involved such a scenario. The district court simply recast an appearing defendant's argument regarding improper venue under Rule 12(b)(3) as a request for *forum non conveniens* dismissal. *See Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1027 (S.D. Tex. 2018). That is not what happened here. The Ports Authority was in default; it did not move for any form of relief, let alone relief akin to *forum non conveniens*.

Finally, Zamil is not aided by trying to analogize to the federal venue statute, 28 U.S.C § 1404(a). Zamil Br. 16. "The *forum non conveniens* doctrine is quite different from Section 1404(a)." *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955). While a district court may have the authority to *sua sponte* transfer a case under § 1404(a), that is because "[t]he language of the statute" does *not* require a motion and is therefore "broad enough that a district court can order transfer on its own

initiative." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 706 n.5 (7th Cir. 2020).

Inasmuch as *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321 (11th Cir. 2011), addressed § 1404(a) in *dicta*, this was to "buttress" the conclusion that reversal of a *sua sponte* dismissal on *forum non conveniens* grounds was necessary. *Id*. at 1336. Indeed, *Tazoe* helps AdvanFort, not Zamil. In explaining the reversal, the Eleventh Circuit highlighted the fact that, as is the case with the Ports Authority, the defendants had "made no appearances in [the plaintiff's] action and filed no motion to dismiss against [the plaintiff]." *Id*. And the Court of Appeals reversed even though the defendants, in actions consolidated with the plaintiff's, had stipulated their consent to the jurisdiction of the alternative forum, *id*. at 1335, an averment that the defaulted Ports Authority has not made here.

## II. AdvanFort Did Not Waive Its Challenge to the District Court's *Sua Sponte* Dismissal of the Ports Authority.

Unable to justify the district court's dismissal in view of the Ports Authority's default, Zamil seeks refuge in arguing that AdvanFort somehow "waived" its objection to such a dismissal. Zamil Br. 11-12. But AdvanFort had no opportunity to raise this argument below. When AdvanFort filed its opposition to Zamil's motion to dismiss, the Ports

Authority's deadline to answer had not passed. J.A.004; J.A.352. AdvanFort made clear in its opposition that the Ports Authority would, at minimum, have to appear and "move[] to dismiss on *forum non conveniens* grounds" for dismissal to be proper. J.A.152. AdvanFort could not have argued that the Ports Authority's default precluded *forum non conveniens* dismissal when the Ports Authority had not yet defaulted.

Nor did AdvanFort have an opportunity to object later in the proceedings. By the time the Ports Authority's deadline to respond had passed, briefing on Zamil's motion to dismiss had concluded. J.A.005. At the time of the hearing, the Clerk had yet to enter default against the Ports Authority; thus, the posture was not ripe for objection to a *forum non conveniens* dismissal in light of the default.[2] And, contrary to Zamil's attempt to argue otherwise, Zamil Br. 11-12, AdvanFort could not have raised the Ports Authority's default "at oral argument," because there was no oral argument. The district court announced its decision at the outset of the hearing without allowing counsel for either party to present argument. J.A.359-362.

---

[2] The hearing was held at 10:06 a.m. on December 1, 2023; the Clerk entered default at 1:10 p.m.; the district court dismissed the case at 3:54 p.m. J.A.005.

AdvanFort thus cannot be deemed to have waived the argument. *Paris v. United States Dep't of Hous. & Urban Dev.*, 713 F.2d 1341, 1347 (7th Cir. 1983) (no waiver when the "appeal is, in effect, the plaintiff['s] first opportunity to object"); *Corporate Synergies Group, LLC v. Andrews*, 775 F. App'x 54, 59 (3d Cir. 2019) ("argument … not waived when a defendant's first opportunity to challenge a district court proceeding is on appeal").

## III. Defendants Did Not Establish an Available Forum.

"A foreign forum is available when the entire case and all parties can come within the jurisdiction of the forum." *Alpha View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000); AdvanFort Br. 26-27. Because AdvanFort's claims against Zamil must be heard by Saudi Arabia's Commercial Court, while the claims against the Ports Authority must be heard by the Administrative Court (also known as the Board of Grievances), Zamil did not, and cannot, meet its burden to show that an available alternate forum exists. AdvanFort Br. 26-27 (citing *Galustian v. Peter*, 591 F.3d 724, 730-31 (4th Cir. 2010)).[3]

---

[3] Zamil does not contest that because a *forum non conveniens* dismissal cannot result in case-splitting, should dismissal of the claims against the

Zamil argues that it met its burden because the Commercial and Administrative Courts are both located in Saudi Arabia.[4] Zamil Br. 19-22. But there is no way around the fact that Zamil must identify "the alternative forum," not simply "suggest[] the country." *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 316 (4th Cir. 1984); *see* AdvanFort Br. 28-30. That is because the sort of case-splitting Zamil urges "fundamentally contradicts the 'central purpose' of *forum non conveniens*," which is to avoid "overlapping, piecemeal litigation[.]" *Dirtt*, 65 F.4th at 555 (quoting *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998)).

Zamil argues that cases like *Dirtt* do not apply because the litigation in Saudi Arabia would be split between different courts in that country. Zamil Br. 20-22. Unsurprisingly, Zamil points to no case allowing a *forum non conveniens* dismissal that would result in parallel

---

Ports Authority be reversed, dismissal of the claims against Zamil must be reversed as well. Otherwise, the claims would be split between Saudi and U.S. courts. AdvanFort Br. 24-26.

[4] Zamil argues that the Administrative Court "has discretion to hear claims against both the Ports Authority and Zamil." Zamil Br. 19. However, that is insufficient. AdvanFort Br. 27 n.12. Regardless, as AdvanFort explained, it could not sue both the Ports Authority and Zamil in the same Saudi court. *Id.* at 27.

actions in another country. *See id.* Splitting cases across multiple fora, even if the courts are in the same country, necessarily results in "piecemeal litigation that is inherently inconvenient for both the parties and the courts" and inconsistent with the purpose of *forum non conveniens*. *Dirtt,* 65 F.4th at 555; *see* AdvanFort Br. 26 n.11. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 744 (4th Cir. 2002). That remains true whether the fora are located in the same or different countries. Here, AdvanFort would have to prosecute cases in two different courts, significantly increasing expense and hardship. AdvanFort would be constrained to shepherd each case through separate pretrial proceedings; if the cases proceed to trial, its witnesses would face the possibility of testifying twice. That is the opposite of "ensur[ing] that the trial is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

## IV.  Defendants Did Not Establish an Adequate Forum.

Nothing in Zamil's brief contradicts the fact that it failed to establish the adequacy of Saudi Arabia's courts for AdvanFort's claims.

Establishing adequacy requires looking to factors such as the level of government interference in lawsuits; discrimination and harassment of witnesses; concerns for the litigants' personal safety; difficulty in obtaining counsel in the jurisdiction to act against the government; lack of meaningful remedies, and improper influence in legal proceedings. AdvanFort Br. 30-39.

The unrebutted evidence established that each factor is present:

- Saudi courts discount the testimony of women and non-Muslims on the basis that their testimony lacks *adalah* (credibility).  J.A.238.

- Saudi Arabia retaliates against litigants who bring claims against the government, including against their families. J.A.235-237.

- During the prior litigation, Zamil attempted to influence witness testimony, J.A.030-031, coordinated with governmental authorities to create falsely exculpatory reports, J.A.024-027, and the court credited government witnesses as "expert[s]," deferring to them instead of weighing the evidence, J.A.108.

- Saudi Arabia both retaliates against judges who rule against the government's interests, including by arrest and imprisonment, and persecutes, surveils and imprisons lawyers; thus, retaining counsel would be difficult, and even if successful, would result in hardship and risk. J.A.230-231; J.A.235-237; J.A.242.

- Damages are rarely awarded against the Saudi government and are nominal at most.  J.A.240-241.

12

Contrary to Zamil's attempt to suggest otherwise, Zamil Br. 28, 34-35, the concerns highlighted by AdvanFort are not generalized condemnations of Saudi Arabia as a jurisdiction; they are specifically and concretely tied to improper influence and coercion that AdvanFort and other individuals litigating against the Saudi government have endured. Those concerns are now even more acute given the Crown Prince-chaired sovereign wealth fund's acquisition of a 40% stake in Zamil. AdvanFort Br. 42-43 n.13.

The courts of Saudi Arabia are also inadequate because the Ports Authority could invoke the "sovereign acts" doctrine with respect to AdvanFort's claims, rendering it immune.[5] *Id.* at 37-38. Zamil does not contest that the Ports Authority's invocation of the "sovereign acts" doctrine would preclude adjudicating AdvanFort's claims. Zamil Br. 23-26. Zamil instead argues that the district court credited the opinion of its expert that the Ports Authority would not be entitled to *sovereign immunity* over the opinion of AdvanFort's expert. *Id.* at 25-26.

But sovereign immunity is not the same as the "sovereign acts" doctrine. The district court never addressed whether the Ports

---

[5] This also makes the Saudi fora unavailable. AdvanFort Br. 28.

Authority, even if not entitled to sovereign immunity, could invoke the "sovereign acts" doctrine with respect to AdvanFort's claims. *See* J.A.372.

In fact, the district court's failure to account for the "sovereign acts" doctrine underscores a more fundamental error. The only way for the district court to determine that the Ports Authority would not immunize itself from AdvanFort's claims by invoking the doctrine was for it to appear and stipulate that it would not do so. In its absence, the district court could not determine whether the "sovereign acts" doctrine might bar the claims. *Forum non conveniens* dismissal under these circumstances was thus an abuse of discretion. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234 (9th Cir. 2011) (abuse of discretion to unconditionally dismiss for *forum non conveniens* where "there is a justifiable reason to doubt that a party will cooperate with the foreign forum").

Unable to defend the district court's approach, Zamil argues that AdvanFort somehow waived its argument about the "sovereign acts" doctrine. According to Zamil, AdvanFort only made a "vague, passing reference to the issue" in a "single-sentence footnote." Zamil Br. 24

14

(citing J.A.153).  Not so.  AdvanFort advanced the argument in the body of its brief, arguing that it "cannot receive a fair trial in Saudi Arabia" because "[t]he government defendant would be afforded essentially total immunity."  J.A.157; J.A.159.  Moreover, AdvanFort cited to its Expert Report on Saudi law, which detailed the doctrine's applicability to the Ports Authority and the likelihood that it would be invoked to defeat any attempt to litigate against it in Saudi Arabia.  *See* J.A.159; J.A.243.

Beyond the obstacle presented by the "sovereign acts" doctrine, the Saudi courts would not afford AdvanFort a fair and impartial hearing with respect to AdvanFort's claims.  AdvanFort Br. 31.  Zamil's response largely repeats the same arguments regarding the adequacy of the Saudi judicial system as a whole that it made below.  Zamil Br. 27-39.  But Zamil misses the essential point: AdvanFort is unlikely to receive a fair hearing *on these specific claims*, which implicate malfeasance by Zamil (now 40% owned by the Saudi government), the Ports Authority, and other government entities and individuals.[6]

---

[6] Zamil's principal support for arguing that the Saudi courts can fairly adjudicate sensitive issues is a 43-year-old district court decision that has minimal bearing on current conditions.  Zamil Br. 30 (citing *Shields v. Mi Ryung Constr. Co.*, 508 F. Supp. 891 (S.D.N.Y. 1981)).  Saudi Arabia's

The district court made the same error. AdvanFort Br. 39-46. It misconstrued AdvanFort's argument as being "that the Saudi judicial system, as a whole, is corrupt and thus incapable of adjudicating disputes fairly." J.A.373. This ignores AdvanFort's actual argument and the specific evidence of unfairness that AdvanFort had already experienced or was likely to experience. *Id*.; *see* AdvanFort Br. 45-46.

Zamil is also wrong to suggest that AdvanFort "does not contest" that "Saudi law offers an adequate remedy for its claims." Zamil Br. 27. The remedies afforded by Saudi courts in suits against the government are nominal at best. AdvanFort Br. 38 (citing J.A.240-241).

In short, AdvanFort does not denigrate the Saudi judiciary in general. It simply calls attention to the fact that, due to the nature of the claims it makes, Saudi Arabia does not provide fair and impartial fora for adjudicating them. In these circumstances, the courts of that country cannot be deemed adequate. *Id*. at 30-46.

---

recent reprisal against a commercial litigant, arrest of judges and lawyers who acted adversely to the government, and AdvanFort's own experience, are much more instructive. AdvanFort Br. 35.

16

**V.    The District Court Abused Its Discretion in Its Weighing of the Public and Private Interest Factors.**

The district court abused its discretion in weighing the public and private interest factors. *Id*. at 48-62. Among other errors, it failed to afford the required deference to AdvanFort's choice of forum. *Id*. at 49-51 (citing *DiFederico*, 714 F.3d at 803). Instead of recognizing that a "real showing of convenience" by a citizen plaintiff should "normally outweigh" any inconvenience to foreign defendants, *DiFederico*, 714 F.3d at 803, the district court erroneously stated that this principle was "inapplicable 'where the plaintiff is a corporation doing business abroad.'"  J.A.375 (quoting *DiFederico*, 714 F.3d at 807); *see* AdvanFort Br. 51-55. Compounding the error, the opinion is devoid of the necessary "affirmative evidence" that the court applied the "partially discount[ed]" deference (itself insufficient) that the court said it would afford AdvanFort's choice of forum. AdvanFort Br. 49-51. That alone requires reversal. *DiFederico*, 714 F.3d at 803 (district court abused discretion where opinion contained no "affirmative evidence" that heightened deference standard was considered).

Regardless, Zamil is mistaken in arguing that reduced deference was appropriate because AdvanFort's contacts with Saudi Arabia – its

17

vessel's presence in Jeddah – lasted for a lengthy period of time.  Zamil Br. 46.  This ignores the fact that the vessel was not there by choice. Zamil effectively held it hostage by conditioning release on AdvanFort's payment of the judgment that Zamil had received through its perversion of the judicial process, a judgment valued in the millions of dollars. J.A.032.  AdvanFort thus did not engage in the type of sustained foreign business operations that permitted the district court to reduce the otherwise required high degree of deference to its forum choice. AdvanFort Br. 53-55.

The remainder of Zamil's brief largely repeats the arguments it made below.  None is availing.  Litigating in the United States is much more convenient for AdvanFort and would pose only minor inconvenience for Zamil.  *Id*. at 56-58.  And, in light of the defendants' active solicitation of business in Virginia – efforts that led directly to the parties' dispute – Virginia has a strong interest in providing a forum for its adjudication. *Id.* at 58-60.

## VI.  There Is Personal Jurisdiction Over Zamil.

Zamil devotes much of its brief to a proposed alternative ground for affirmance: the supposed lack of personal jurisdiction.  However, Zamil

engaged in extensive marketing efforts directed at Virginia to solicit Virginia businesses. Zamil was successful; it secured business with AdvanFort, a Virginia company, and committed the wrongful acts alleged in the Complaint in connection with those services. Personal jurisdiction is firmly established.

A. Zamil's Contacts with Virginia.

Even without the aid of jurisdictional discovery,[7] it is evident that Zamil engaged in a marketing campaign aimed at soliciting business in the United States, including Virginia specifically. Applying the *prima facie* standard and construing all evidence in the light most favorable to AdvanFort, *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014), the record supports personal jurisdiction over Zamil:

- ***Advertising in Virginia***: Zamil targeted marine companies in Virginia by placing advertisements for its services in publications that are distributed in Virginia, such as *The*

---

[7] AdvanFort sought discovery to show, *inter alia*, additional efforts in Virginia by Zamil and the U.S.-Saudi Business Council to promote Zamil. J.A.273-277. The district court denied the request when it dismissed for *forum non conveniens*. J.A.364. AdvanFort has appealed that decision. AdvanFort Br. 62-64. To the extent a fuller understanding of these issues is needed, the case should be remanded to allow discovery and the district court's evaluation in the first instance. *Harrell v. Deluca*, 97 F.4th 180, 188-89 (4th Cir. 2024); *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("a federal appellate court does not consider an issue not passed upon below.").

19

*Baltic Exchange*, *Maritime Executive Magazine*, *Seatrade Maritime News*, *TradeWinds*, and *Offshore Journal*.  J.A.018-019.

- ***Utilizing the Virginia-based U.S.-Saudi Business Council to promote Zamil and its business interests***:  Zamil uses the Council for on-the-ground marketing in Virginia.  In April 2019, for example, the Council boasted that Zamil had signed a joint venture agreement with the American company McDermott International, Inc.  J.A.020.  A board member of Zamil also serves on the board of the Council, which Zamil uses to promote its interests.  J.A.009-010; J.A.020.[8]

- ***Establishing a website based in Virginia targeting American companies***:  Zamil's website, Zamiloffshore.com is hosted in Virginia and uses a ".com" domain.  J.A.181-184.  The domain is administered by Verisign, Inc., a Virginia company; and Zamil registered the domain names for the website with GoDaddy.com, a United States domain name registrar.  J.A.208-215; J.A.221-226.  The website is available in English and to Virginia residents; it invites visitors to enter contact information to engage Zamil for business.  J.A.224.

- ***Employing individuals in Virginia***:  According to publicly available LinkedIn accounts, Zamil employs individuals in the United States and Virginia specifically.  J.A.185-201.[9]

---

[8] *See* U.S.-Saudi Business Council, About Khalid Al Zamil, https://ussaudi.org/team/khalid-al-zamil/ (last accessed June 14, 2024) (noting Khalid Al Zamil serves on the boards of both Zamil Operations & Maintenance Co. and the U.S.-Saudi Business Council); Zamil Offshore, About Us, https://www.zamiloffshore.com/page/About__us (last accessed June 14, 2024) (noting Zamil was previously known as Zamil Operations & Maintenance).

[9] While Zamil disputes having "employees" in Virginia, Zamil Br. 52-53 (citing J.A.319-320), the relevant inquiry is not whether a defendant

- ***Publicizing adherence to U.S. standards and its work with other American companies***: Zamil represents that it meets U.S. safety standards.  It prominently displays its certification with the U.S.-based classification society American Bureau of Shipping in multiple places.  J.A.017-018; J.A.224-225.  Zamil also refers to its work for American companies in the maritime sector.  J.A.217-218.  Zamil counts numerous American companies as its customers and partners.  J.A.020; J.A.206; J.A.217-218.  For example, Seacor Marine Holdings Inc.'s 2019 10-k disclosed that Zamil is one of its major customers, accounting for millions of dollars of revenue per year.  J.A.204-206.

- ***Engaging in in-person marketing in the U.S***.:  Zamil regularly participates in United States conferences for servicing companies that rely on the maritime industry to transport hydrocarbons.  J.A.019.

Zamil's extensive U.S.- and Virginia-targeted activities led to AdvanFort finding and contracting with Zamil.  J.A.018-021.  AdvanFort, whose vessel operated in the Red Sea, sought a shipyard for repair work.  J.A.016.  After viewing the advertisements that Zamil distributed in Virginia and examining its Virginia-based website from AdvanFort's offices in Virginia, AdvanFort engaged in a business relationship with Zamil to perform those repairs, believing that Zamil's compliance with

---

employs individuals in the forum but whether it has "offices or agents" there.  *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).  Zamil thus sidesteps the relevant question.  Regardless, in the absence of an evidentiary hearing, the Court must construe all evidence in favor of AdvanFort.  *Universal Leather*, 773 F.3d at 561.

21

American standards and prior history with other U.S. companies indicated it would perform quality work. J.A.020; J.A.227. Zamil engaged in numerous communications by telephone and email with AdvanFort in Virginia; and Zamil received payment from AdvanFort's Virginia-based bank account. J.A.020-022. As part of this relationship, Zamil took possession of the vessel, ultimately causing it damage and giving rise to this suit. J.A.021; J.A.033-040.

B. <u>Zamil's Virginia Contacts Establish Personal Jurisdiction.</u>

These facts establish personal jurisdiction over Zamil in Virginia. A court may exercise jurisdiction over a defendant that has (1) purposefully availed itself of the privilege of conducting activities in Virginia, where (2) the plaintiff's claims arise out of the defendant's contacts with Virginia, and (3) exercising jurisdiction would be constitutionally reasonable. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 294 (4th Cir. 2009). Each requirement is satisfied.

1. *Zamil Purposefully Availed Itself of the Privilege of Conducting Business in Virginia.*

Application of this Court's non-exclusive list of factors for assessing purposeful availment makes clear that Zamil did so with respect to Virginia. Those factors are:

22

(1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020).

Zamil satisfies at least factors 1, 2, 3, 4, 7 and 8. Zamil actively solicited business in Virginia and used infrastructure in the Commonwealth for advancing that objective. This included:

- an advertising campaign directed at and distributed in Virginia (factor #3), J.A.018-019;

- in person promotion of Zamil through the Virginia-based U.S.-Saudi Business Council (factors #1 and 3) and through other United States-based activities, J.A.010; J.A.019-020;

- employing individuals and using agents in Virginia (factor #1), J.A.185-201;

- establishing a Virginia-based English language website to attract Virginia businesses by highlighting American certifications and with a "Contact Us" page collecting visitor

information (factors #2 and 3); J.A.017-018; J.A.181-184; J.A.224-225.[10]

Zamil was successful. Zamil counts many American businesses as its partners and customers, J.A.020; J.A.206; J.A.217-218. These include Virginia-based AdvanFort, with whom Zamil engaged in email and telephone communications (factor #8). J.A.020-023; J.A.027-029; J.A.032. Zamil knew it was engaged with a Virginia company and AdvanFort communicated using a Virginia-based server and telephone lines (factor #8). J.A.020-021. Those contacts spanned years, encompassing the parties' business discussions in 2013 and 2014, when Zamil was soliciting AdvanFort's business, and more recently, when Zamil again reached into Virginia to contact AdvanFort (factors #4 and 8). J.A.032. AdvanFort's communications from Virginia involved negotiations and financial solicitations that resulted in wiring Zamil monies from its Virginia-based bank account (factor #7). J.A.021-022.

These facts demonstrate Zamil's deliberate engagement in significant activities within the forum that "created continuing

---

[10] The Fourth Circuit recognizes that having a website that engages citizens of the forum favors a finding that the defendant purposefully availed itself to the privileges of conducting business in Virginia. *UMG Recordings.*, 963 F.3d at 353.

obligations between [itself] and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal quotation marks omitted). Personal jurisdiction is routinely found in such circumstances. *See, e.g.*, *Tire Eng'g & Distribution, Ltd. Liab. Co. v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 304 (4th Cir. 2012).[11]

For instance, *Khan v. Ranjha*, 53 Va. Cir. 530 (Va. Cir. Ct. 1999) involved the purchase of a Maryland gas station by a Virginia resident after the defendant placed advertisements targeting Virginia. The Circuit Court found personal jurisdiction on the basis that the defendant had "intentionally placed an advertisement in a newspaper they knew to circulate in Virginia." *Id.* at 534-35. Those contacts, combined with the purchase, sufficed to establish jurisdiction. *Id.* Zamil's contacts are

---

[11] *See also*, *e.g.*, *Vape Guys, Inc. v. Vape Guys Distribution*, No. 3:19cv298, 2020 U.S. Dist. LEXIS 36117, at *22–23 (E.D. Va. Mar. 2, 2020) (out-of-state resident's online and email attempts to solicit Virginia businesses "readily support the Court's conclusion that Defendant has sufficient minimum contacts with Virginia" because they were directed at the forum); *Fridinger v. Stonegate Wealth Mgmt.*, LLC, No. 1:10CV906, 2013 U.S. Dist. LEXIS 109686, at *21 (M.D.N.C. Aug. 5, 2013) (defendant's maintenance of representatives in the forum unrelated to the plaintiff's claims supported jurisdiction); *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 563 (Va. 1999) (telephone communications with Virginia plaintiff and partial contract performance in Virginia supported jurisdiction).

25

much more far reaching; they include not only advertising in the forum, but also communications with AdvanFort in Virginia over a prolonged period of time and Zamil's utilization of marketing infrastructure in Virginia.

Zamil's brief addresses the Fourth Circuit's factors in isolation in an apparent effort to obscure the forest for the trees. The cases it cites serve only to demonstrate that isolated or insubstantial contacts touching on individual factors does not confer jurisdiction. *See, e.g., Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020) (finding no jurisdiction where only connections with forum were national publication and publicly available website). But the jurisdictional inquiry is a holistic one that focuses on whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). That holistic inquiry demonstrates Zamil's conduct surpasses the bar.

The principal cases on which Zamil relies are distinguishable. In *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009),

the defendants had no advertisements circulated in or targeted to the forum (factor #3); no website hosted in the forum (factor #4); no employees or agents in the forum (factor #1); and did not have a contract that required payment from the forum (or subsequently receive that payment) (factor #7). Further, the parties' business relationship only lasted around three months. *Id.* at 275-76. By contrast, the relationship between Zamil and AdvanFort spans years (factors #4 and 8).[12]

Zamil's reliance on *Ellicott Machinery Corp. v. John Holland Party, Ltd.*, is likewise unavailing. The defendant had no widespread advertisements circulated in or targeted to the forum (factor #3); no website hosted in the forum (factor #4); no employees in the forum (factor #1); and the parties' four-month business relationship only concerned the delivery and assembly of a piece of machinery (factors #4 and 8). 995 F.2d 474, 476-77 (4th Cir. 1993). The case thus bears no resemblance to the one here.

---

[12] Zamil argues that this factor is inapplicable because the contracted-for repairs were not intended to be ongoing. Zamil Br. 54. However, AdvanFort was conducting ongoing business in international waters near Jeddah and was seeking a "commercial relationship" to maintain its vessels on an ongoing basis. J.A.227.

>    *2.   AdvanFort's Claims Arise Out of and Are Related to Zamil's
>        Contacts with Virginia.*

The inquiry's second prong is satisfied because the claims arise out of and are related to Zamil's contacts with Virginia.  *Consulting Eng'rs Corp.*, 561 F.3d at 278-79.   AdvanFort's claims concerning Zamil's possession and destruction of the vessel are a direct result of its solicitation of business in Virginia.  AdvanFort, a Virginia company, from its headquarters in Virginia, saw Zamil's advertisements in publications distributed to Virginia and viewed Zamil's website from Virginia.  AdvanFort then engaged with Zamil from Virginia, via phone lines and servers based in Virginia, and via correspondence that indicated the company was based in Virginia, resulting in Zamil's solicitation of funds from Virginia.   J.A.020-022; J.A.227.   These contacts brought about AdvanFort's utilization of Zamil's services, with the consequence that Zamil took custody of AdvanFort's vessel and then destroyed and looted it – the very basis for its claims.  Zamil is thus wrong to argue that its contacts with Virginia have "nothing to do with AdvanFort's claims." Zamil Br. 56.

Zamil suggests that only Zamil's direct contacts with AdvanFort in the forum are relevant.  *Id.*  But that approach cannot be squared with

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).  A strict causal relationship "between the defendant's in-state activity and the litigation" is not required.  *Id.* at 1026.  *Ford* considered whether personal jurisdiction over Ford Motor Company could be exercised over claims where the car accidents at issue involved automobiles purchased, manufactured, and sold outside the forum states but where the company had promoted its vehicles in those states.  The Supreme Court held that for establishing personal jurisdiction, there need only be a sufficient "relationship among the defendant, the forum, and the litigation"; it rejected the argument that a causal relationship between the forum conduct and the claims is necessary.  *Id.* at 1028.

Consistent with *Ford*, this Court has rejected the type of strict causal nexus proposed by Zamil.  *Wallace v. Yamaha Motors Corp., U.S.A.*, 2022 U.S. App. LEXIS 447, *11 (4th Cir. 2022) ("The Court [in *Ford*] noted that the specific jurisdiction inquiry does not 'requir[e] proof of causation – *i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct[.]'").  So have other Circuits.  *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1226 (10th Cir. 2021); *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022) ("[Under *Ford*,] 'a strict

causal relationship between the defendant's in-state activity and the litigation' is not necessary[.]"); *B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 862 (7th Cir. 2024) ("[Under *Ford*,] a defendant's contacts with the forum may 'relate to' the plaintiff's claims even in the absence of a 'strict causal relationship' between the contacts and claims.").

Thus, as AdvanFort's claims unquestionably arise out of and are related to Zamil's contacts with Virginia, personal jurisdiction is established. *Ford*, 141 S. Ct. at 1024.

### 3. Exercising Personal Jurisdiction Is Constitutionally Reasonable.

Exercising personal jurisdiction is constitutionally reasonable. In determining reasonableness, courts consider (1) the burden on the defendant, (2) the interests of the forum state, and (3) the plaintiff's interest in obtaining relief. *See CFA Inst.*, 551 F.3d at 296. The reasonableness requirement "likely will be met unless the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Dunlap v. Cottman Transmissions Sys., LLC*, No. 2:11CV272, 2015 U.S. Dist. LEXIS 184224, at *9 (E.D. Va. Nov. 5, 2015) (quoting *Burger King*, 471 U.S. at 477). Zamil presents no such compelling case here.

There is no merit to Zamil's suggestion, Zamil Br. 57-59, that inconvenience associated with litigating in Virginia somehow violates due process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171, 173 (2d Cir. 2010). Indeed, foreign defendants who are able to secure counsel to represent their interests in the forum (as Zamil has done) have a "litigation burden … no more substantial than that encountered by other entities that choose to transact business in Virginia." *CFA Inst.*, 551 F.3d at 296; *see also Tire Eng'g,* 682 F.3d at 304-05.

Moreover, Virginia has an interest in protecting its citizen's rights. *Lee v. Walworth Valve Co.*, 482 F.2d 297, 299-300 (4th Cir. 1973) (recognizing forum state's "paternal interest in the recovery by one of its citizens of appropriate compensation, if there is a substantive cause of action"). And AdvanFort has an equally substantial interest in obtaining relief in Virginia because it suffered substantial harm in the Commonwealth. *Calder v. Jones*, 465 U.S. 783, 790 (1984) (individual injured in forum need not go elsewhere to seek redress). At bottom, Zamil engaged with AdvanFort in Virginia and benefited from AdvanFort's business in the Commonwealth. It was therefore "reasonably foreseeable" that Zamil could be haled into a court in Virginia. *CFA Inst.,*

31

551 F.3d at 296 (holding that being haled into Virginia court was foreseeable because defendant "repeatedly reached into the Commonwealth to transact business").

C. Zamil Is Subject to Jurisdiction Under the Foreign Sovereign Immunities Act.

In the alternative, Zamil is subject to personal jurisdiction because it is an agent of the Ports Authority for purposes of its business transactions with AdvanFort, as the Ports Authority is subject to personal jurisdiction under the Foreign Sovereign Immunities Act. 28 U.S.C. § 1602 *et seq.*; J.A.176.

Zamil argued below that it was not the Ports Authority's agent and that AdvanFort failed to satisfy its burden to overcome the "presumption of juridical separateness" of Zamil and the Ports Authority. J.A.308. The Complaint, however, provides the factual basis for the relationship in respect of those entities' operation of the Jeddah Shipyard. J.A.015-016. If more evidence regarding the nature of the relationship were needed, AdvanFort should have been permitted jurisdictional discovery.

## CONCLUSION

We respectfully request this Court reverse the judgment below.

32

SUBMITTED BY:

*/s/ Peter A. Sullivan*

Benjamin L. Hatch
MCGUIREWOODS LLP
101 West Main Street
Norfolk, VA 23510
Tel. (757) 640-3700

Andrew B. Loewenstein
Roseanna K. Loring
Matthew F. Casassa
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel. (617) 832-1000

Clara Brillembourg
FOLEY HOAG LLP
1717 K Street N.W.
Washington, D.C. 20006
Tel. (202) 261-7334

Peter A. Sullivan
FOLEY HOAG LLP
1301 Ave. of the Americas
New York, NY 10019
Tel. (212) 812-0310

*Attorneys for Plaintiff-Appellant AdvanFort Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B)(i) and Local Rule 32(b) because it contains 6,469 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word version 2401 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: June 14, 2024

*/s/ Peter A. Sullivan*

*Attorney for Plaintiff-Appellant AdvanFort Company*

34

## CERTIFICATE OF SERVICE

I, Peter A. Sullivan, a member of the Bar of this Court, hereby certify that on June 14, 2024, I caused the foregoing document to be filed with the Clerk of the United States Court of Appeals for the Fourth Circuit. I certify that service on all case participants will be accomplished through the Court's CM/ECF system or, for case participants not registered for service through the CM/ECF system, by third-party commercial carrier to the address(es) listed in the docketing statement.

Dated: June 14, 2024

*/s/ Peter A. Sullivan*

*Attorney for Plaintiff-Appellant AdvanFort Company*